Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, California 94025-1105
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brendan E. Radke (SBN 275284)
bradke@goodwinlaw.com
Hayes P. Hyde (SBN 308031)
hhyde@goodwinlaw.com
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, California
Tel.: +1 415.733.6000
Fax.: +1 415.677.9041

Todd A. Boock (SBN 181933)
tboock@goodwinlaw.com
Hong-An Vu (SBN 266268)
hvu@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 S. Figueroa Street,
41st Floor
Los Angeles, California 90017-5704
Tel.: +1 213.426.2500
Fax.: +1 213.623.1673

Attorneys for Defendant
EVELOZCITY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| FARADAY&FUTURE, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>EVELOZCITY, INC.,<br><br>    Defendant. | Case No. 2:18-cv-00737-DMG<br><br>**DEFENDANT EVELOZCITY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET CLAIM**<br><br>Hearing Date:  March 30, 2018<br>Time:  9:30 a.m.<br>Courtroom:  8C, 8th Floor<br>Judge:  Honorable Dolly M. Gee<br><br>Concurrently Filed/Lodged With:<br>  1. Memorandum of Points and Authorities;<br>  2. Decl. of Todd A. Boock, Esq.;<br>  3. [Proposed] Order. |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT ON** Friday, March 30, 2018 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, United States Courthouse, located at 350 West 1st Street, Los Angeles, CA, in Courtroom 8C, before the Honorable Dolly M. Gee, Defendant EVelozcity, Inc. ("Defendant" or "EVelozcity") will and hereby does move the Court pursuant to 9 U.S.C. § 4 for an order compelling arbitration of Plaintiff Faraday & Future, Inc.'s ("Plaintiff" or "FF") lawsuit against EVelozcity. Defendant also requests a stay of these proceedings during the pendency of the arbitration pursuant to 9 U.S.C. § 3.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 13, 2018.

Defendant's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declaration of Todd A. Boock and all exhibits thereto, all other documents in the Court's file, any matters of which the Court may take judicial notice, and on such other written and oral argument as may be presented to the Court.

Dated:  February 20, 2018

Respectfully submitted,

By:   */s/  Neel Chatterjee*
Neel Chatterjee (SBN 173985)
*nchatterjee@goodwinlaw.com*
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, California 94025-1105
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Todd A. Boock (SBN 181933)
*tboock@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 S. Figueroa Street, 41st Floor
Los Angeles, California 90017-5704
Tel.: +1 213.426.2500
Fax.: +1 213.623.1673

*Attorneys for Defendant:*
EVELOZCITY, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# Table of Contents

2                                                                                                    **Page**

3  **I.**    **INTRODUCTION** ..................................................................................1

4  **II.**   **FACTUAL BACKGROUND** ..................................................................2

5         A.    FF's Allegations against EVelozcity are Based upon the Actions

6               of Five Former FF Employees, All of Whom Agreed to Arbitrate

7               this Conduct. ...................................................................................2

8         B.    The Allegations in the Lawsuit are Copied Directly from the

9               Claims Made in the Arbitration. ....................................................5

10              1.    FF's Allegations in this Lawsuit..................................5

11              2.    FF's Allegations in the Arbitration Demands ...........6

12 **III.**  **ARGUMENT** ........................................................................................8

13        A.    Equitable Estoppel Requires FF's Trade Secret Claim be

14              Arbitrated against EVelozcity.........................................................8

15              1.    FF Must Rely on the Terms of the Employment

16                    Agreements to Assert its Claim Against EVelozcity,

17                    because the Claim is Intimately Founded In and

18                    Intertwined with the Underlying Agreements. ...........9

19              2.    FF Alleges Substantially Interdependent and Concerted

20                    Misconduct by EVelozcity and the Former Employees,

21                    which is Founded In and Intimately Connected with the

22                    Obligations of the Employment Agreements. .........10

23 **IV.**   **CONCLUSION** ..................................................................................11

24

25

26

27

28

1
## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4
*All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*,

5
    No. C13-2001RAJ, 2014 WL 1870821 (W.D. Wash. May 8, 2014)................. 10

6
*Amergence Supply Chain Mgmt., Inc. v. Changhong (Hong Kong)*

7
    *Trading Ltd.*,

8
    No. CV159976MWFAFMX, 2016 WL 8234652 (C.D. Cal. Apr. 21,

9
    2016) .................................................................................................................... 8

10
*Arthur Andersen LLP v. Carlisle*,

11
    556 U.S. 624 (2009) .......................................................................................... 8

12
*Boucher v Alliance Title Co., Inc.*,

13
    127 Cal. App. 4th 262 (2005) ........................................................................... 9

14
*Brock v. Kaiser Foundation Hospitals*,

15
    10 Cal. App. 4th 1790 (1992) ........................................................................... 9

16
*Dell'Oro Group, Inc. v. Alan Weckel, et al.*,

17
    Case No. 3:17-cv-000750, Dkt. No. 53 (N.D. Cal. Aug. 14, 2017)...................... 9

18
*First Options of Chicago, Inc. v. Kaplan*,

19
    514 U.S. 938 (1995) .......................................................................................... 9

20
*Goldman v. KPMG LLP*,

21
    173 Cal. App.4th 209 (2009) .................................................................. 8, 9, 10

22
*Kramer v. Toyota Motor Corp.*,

23
    705 F.3d 1122 (9th Cir. 2013) ................................................................. 1, 8, 10

24
**Statutes**

25
9 U.S.C. § 3.......................................................................................................... 1

26
9 U.S.C. § 4.......................................................................................................... 1

27

28

# I.      INTRODUCTION

Defendant EVelozcity, Inc. ("EVelozcity") requests that this Court compel Plaintiff Faraday & Future, Inc. ("FF") to arbitrate under 9 U.S.C. § 4 and to stay this case during the pendency of the arbitration under 9 U.S.C. § 3.

This is an employee mobility case.  A number of FF employees left the company and joined various entities, including EVelozcity.  The contracts for these employees contain broad arbitration clauses calling for all employee-related disputes to be arbitrated.  FF has made arbitration demands against several of those former FF employees who joined EVelozcity, alleging numerous claims, including breach of non-solicitation agreements, breach of confidentiality provisions, and trade secret misappropriation.

The arbitration demand and the former FF employees' contractual obligations are inextricably intertwined with the claims in this litigation.  The core allegations in this lawsuit are word-for-word identical to allegations in the arbitration demands. The demands include a claim for trade secret misappropriation, the same cause of action alleged in this lawsuit.  In fact, the claim against EVelozcity boils down to nothing more than alleged violations of the former FF employees' confidentiality and non-solicitation clauses that have been restyled into a trade secret claim.

FF cannot have it both ways – on the one hand reaping the benefits of arbitration due to the agreements with the Former Employees; but on the other, using this Court to make a public spectacle of its grievances against EVelozcity. Because FF alleges misconduct by EVelozcity that arises through and from alleged actions taken by former FF employees as a result of their employment relationship with FF, this matter also should be heard in arbitration under the doctrine of equitable estoppel.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

## II.     FACTUAL BACKGROUND

### A.     FF's Allegations against EVelozcity are Based upon the Actions of Five Former FF Employees, All of Whom Agreed to Arbitrate this Conduct.

The allegations in FF's complaint ("Complaint") focus on the purported actions of five former FF employees.  At its core, FF's Complaint is a claim for breach of contract against these employees restyled as a trade secret claim against EVelozcity.

FF hired Stefan Krause, a well-known and respected leader in the automotive and banking industries (formerly of BMW and Deutsche Bank) in March 2017 to be its Chief Financial Officer.  Compl., ¶ 6.  In June 2017, FF hired Ulrich Kranz, another well-respected former BMW executive, to be its Chief Technology Officer.  Compl., ¶ 7.  FF hired William Strickland in September 2016, as Vehicle Line Engineer.  Declaration of Todd A. Boock ("Boock Decl."), ¶ 2, Ex. 1 (the "Amended Arbitration Demand"), ¶ 17.  FF hired Christoph Kuttner in June 2015, to serve as the Director of Interior and Exterior Trim, whose purpose was to design the aesthetic of the vehicle.  *Id.*, ¶ 18.  FF hired Sohel Merchant in March 2015, as Senior Director of Vehicle Packaging and Seating.  *Id.*, ¶ 16.  Messrs. Krause, Kranz, Strickland, Kuttner, and Merchant (the "Former Employees"), as well as numerous others, have since left FF and joined various other companies, including EVelozcity.

FF's allegations of misconduct in the Complaint trace directly back to provisions in the Former Employees' employment agreements with FF, all of which contain arbitration clauses.  In fact, FF claims in the Amended Arbitration Demand that the Former Employees "signed substantially similar employment agreements," which "required each of them:  (1) to protect and not to misuse FF's confidential information and trade secrets, (2) not to solicit any of FF's employees for a period of one-year after their employment with FF ended, and (3) to resolve any disputes

2

relating to their employment with FF in binding arbitration before JAMS."  Boock
Decl., ¶ 2, Ex. 1, ¶ 19.

FF asserts that "all FF employees are required to sign robust confidentiality
agreements as conditions of their employment at FF." Compl., ¶ 18.  These
agreements state that each employee "will hold in the strictest confidence, and take
all reasonable precautions to prevent any unauthorized use or disclosure of
Company Confidential information."  Boock Decl., ¶¶ 3-7, Exhs. 2-6 (Employment
Agreements of Krause, Kranz, Strickland, Kuttner, and Merchant), Section 2(B).
The employment agreements also contain a provision for "Return of Company
Materials" that provide the Former Employees "will not keep in my possession,
recreate, or deliver to anyone else, any and all Company property, including, but not
limited to, Company Confidential Information. . . ."  *Id.*, Section 5.  "Company
Confidential Information" is defined as "without limitation . . . all non-public
information that relates to the actual or anticipated business and/or products,
research or development of the Company, or the Company's technical data, trade
secrets, or know-how. . . ."  *Id.*, Section 2(A).

FF points to Mr. Strickland, Mr. Kuttner, and Mr. Merchant—current
EVelozcity employees—as "examples" in its Complaint of former FF employees
who allegedly violated their confidentiality agreements and misappropriated FF
trade secrets and confidential information.  FF claims that Mr. Strickland
purportedly "copied substantial amounts of FF trade secret information" (Compl.,
¶ 25); that Mr. Kuttner allegedly took "several files and folders containing trade
secret and confidential FF information" (*Id.*, ¶ 27); and that Mr. Merchant
supposedly "copied and took a large amount of confidential and proprietary
technical information and FF materials" (*Id.*, ¶ 28).  This conduct is proffered in
support of FF's trade secrets claim in the lawsuit, but it could also be construed as a
breach of the Former Employees' employment agreements.

As noted above, each of the five Former Employees' FF employment

1   contracts also contains a non-solicitation provision, stating "during my employment

2   and for a period of twelve (12) months immediately following the termination of my

3   relationship with the Company. . . I will not directly or indirectly solicit any of the

4   Company's employees to leave their employment at the Company."  Boock Decl.,

5   ¶¶ 3-7, Exhs. 2-6, Section 8.  FF acknowledges the non-solicitation term in the

6   Complaint, noting that Messrs. Krause and Kranz each agreed "for a period of one-

7   year after his employment ended he would not solicit any FF employees to join him

8   at any subsequent venture."  Compl., ¶¶ 6, 7.

9        In the Complaint, FF attempts to state a violation of the non-solicitation

10   clause, alleging that, beginning in November 2017, "EVelozcity and the former FF

11   executives who started it have surreptitiously solicited at least 20 or more FF

12   employees (many of whom were relatively senior) to leave FF and join EVelozcity."

13   *Id.*, ¶ 9; *see also id.*, ¶¶ 23, 29.  FF further contends that "Krause and Kranz, along

14   with a handful of other FF executives who were loyal to them, began covertly

15   soliciting multiple FF employees to leave with them and work at defendant

16   EVelozcity."  *Id.*, ¶ 20.  EVelozcity denies each of the above allegations, as well as

17   any other claims of wrongdoing by EVelozcity or its employees.

18        FF insisted upon a very broad arbitration provision which encompassed any

19   sort of employment dispute.  The breathtaking breadth of the provision is reflected

20   in Section 12 of the agreement which states:

21        [I]n consideration of [the employee's] employment with
         [FF], **its promise to arbitrate all employment-related**
22        **disputes,** and [the employee]'s receipt of compensation,
         pay raises, and other benefits paid to [the employee] by the
23        company…**I agree that any and all controversies,**
         **claims, or disputes with anyone** (including the company
24        and any employee, officer, director, shareholder, or benefit
         plan of the company, in their capacity as such or
25        otherwise, whether brought on an individual, group, or
         class basis, **arising out of, relating to, or resulting from**
26        **my employment with the company** or the termination of
         my employment with the company, including any breach
27        of this agreement, **shall be subject to binding arbitration**
         . . . .
28

4

1    Boock Decl., ¶¶ 3-7, Exhs. 2-6, Section 12 (emphases added).  The parties are

2    bound to arbitrate "any statutory claims under local, state, or federal law" and

3    include "any disputes that the company may have" with the employee.  *Id.*  The

4    agreements further note that "this agreement to arbitrate also applies to any disputes

5    that the company may have with me."  *Id.*

6        **B.     The Allegations in the Lawsuit are Copied Directly from the**
             **Claims Made in the Arbitration.**
7

8            As described in further detail below, FF set forth the same core allegations in

9    the five arbitration demands against the Former Employees as it did in the

10   Complaint in this Court.  EVelozcity's purported liability arises out of these claims,

11   which pertain to the Former Employees' alleged breaches of their employment

12   agreements, all of which are the subject of the concurrent arbitration.  EVelozcity

13   disputes each and every one of these allegations against the former FF employees.

14            **1.     FF's Allegations in this Lawsuit**

15           FF's Complaint is largely a copy of its arbitration demand against the

16   individual employees and is simply a restyled version of the breach of contract

17   claim asserted against the Former Employees.  At the center of FF's Complaint, FF

18   contends that just before leaving its employ, Strickland "copied and took potentially

19   *thousands* of FF's most sensitive electronic documents from his FF computer and

20   FF's servers."  Compl., ¶ 25 (emphasis in original); *see also* Boock Decl., ¶ 2, Ex. 1,

21   ¶ 36.  FF further contends that Mr. Strickland "accessed and apparently copied onto

22   a portable USB drive and/or a personal Google drive substantial amounts of FF

23   trade secret information."  Compl., ¶ 25; *see also* Boock Decl., ¶ 2, Ex. 1, ¶ 36.

24   Shortly before leaving FF, Mr. Kuttner allegedly "plugged multiple external storage

25   devices into his FF computer and, while they were inserted, accessed (and

26   apparently copied and took) several files and folders containing trade secret and

27   confidential FF information . . . ."  Compl., ¶ 27; *see also* Boock Decl., ¶ 2, Ex. 1,

28   ¶ 38.  According to FF, Mr. Merchant, "yet another former FF employee," allegedly

researched how to "wipe" FF files "soon before leaving FF" and then performed "targeted wipes of both his FF laptop and desktop computer."  Compl., ¶ 28; *see also* Boock Decl., ¶ 2, Ex. 1, ¶ 39.  Based upon all of these facts arising from the former FF employees' alleged conduct, FF claims that the information taken by Messrs. Strickland, Kuttner, and Merchant, among others, was used by EVelozcity "to unfairly compete with FF," and the employees allegedly took the information for EVelozcity to "use FF's trade secrets" and to "benefit EVelozcity and/or to harm FF."  Compl., ¶¶ 25-28.

### 2.    FF's Allegations in the Arbitration Demands

FF filed its original arbitration demand ("Original Arbitration Demand") on the same day as its Complaint against EVelozcity.  Boock Decl., ¶ 8, Ex. 7.  The Original Arbitration Demand named Mr. Krause and Mr. Kranz as sole respondents and asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, misappropriation of trade secrets, and unfair competition.  *Id.*

The Original Arbitration Demand intertwines EVelozcity and the respondents extensively.  The Demand makes clear that the allegations of misappropriation were to "benefit Evelozcity."  *Id.*, ¶ 35.  FF even notes in its initial arbitration demand that it has filed the lawsuit against EVelozcity to address this alleged misappropriation of trade secrets, further establishing the arbitration's tie to the instant case.  *Id.*, ¶ 11.  The Original Arbitration Demand further says:

> [I]t appears that Respondents and E[V]elozcity are attempting to hire as many senior FF personnel as possible, have them copy and take FF's proprietary information that has been developed at great trouble and expense by FF, and then use those trade secrets to unfairly compete with FF.  In this regard, Respondents and their new venture apparently not only encourage departing FF employees to take trade secret information, but have also coached the departed employees to falsely deny to FF personally….that they intend to join Respondents at E[V]elozcity.

6

1    *Id.*, ¶ 34; *see also id.*, ¶ 28.

2        The Original Arbitration Demand alleges that "Respondents' business plan

3    for E[V]elozcity is to hire as many senior FF personnel as possible, have them copy

4    and take FF's proprietary information…and then use those trade secrets to unfairly

5    compete with FF." *Id.*, ¶ 10.  In the Original Arbitration Demand, FF alleges that

6    Krause "had been secretly working on behalf of E[V]elozcity while still employed

7    by FF," allegedly engaging in trade secret misappropriation, and "'pitching' [ ]

8    investors . . . on technology that Krause and Kranz learned at FF, and that [the

9    Former Employees] and E[V]elozcity have stolen from FF." *Id.*, ¶¶ 26-27.  All of

10   the former FF employees' alleged misconduct was purportedly done at

11   "Respondents' and E[V]elozcity's encouragement and direction. . . ." *Id.*, ¶ 29; *see*

12   *also id.* ¶ 30 (Former Employee Bill Strickland's alleged misconduct resulted in

13   "Respondents and E[V]elozcity [ ] wrongfully possess[ing], disclos[ing], and

14   us[ing] FF's trade secrets"); ¶ 32 ("Respondents and [EVelozcity] encouraged and

15   directed Mr. Kuttner to copy and take FF's trade secrets"); ¶ 33 (Former Employee

16   Sohel Merchant's "actions were undertaken to benefit Respondents and

17   [EVelozcity]").

18       On February 9, 2018, FF amended its Original Arbitration Demand and added

19   Sohel Merchant, Irving Strickland, and Christoph Kuttner as respondents.  *See*

20   Boock Decl., ¶ 2, Ex. 1.  The factual allegations largely remained the same and FF

21   added a count of Civil Conspiracy to Commit Misappropriation of Trade Secrets.

22       The allegations of the Complaint, the Original Arbitration Demand and the

23   Amended Arbitration Demand are identical as to nearly all substantive allegations.

24   In fact, twenty-five of the forty-two paragraphs in the Complaint are directly copied

25   or substantially reproduced from the Arbitration Demands.  *See* Boock Decl., ¶ 9,

26   Ex. 8 (Comparison Chart of Complaint, Arbitration Demand and Amended

27   Arbitration Demand).

28       During the meet and confer process in advance of this motion, EVelozcity's

counsel demanded that FF agree to arbitrate the claims at issue in the Complaint.  FF refused to do so, so EVelozcity was forced to file this Motion.

## III.   ARGUMENT

### A.   Equitable Estoppel Requires FF's Trade Secret Claim be Arbitrated against EVelozcity.

This case belongs in arbitration along with the arbitration demand filed against the former FF employees under the doctrine of equitable estoppel.

The Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration if the relevant state contract law allows a non-signatory litigant to enforce the agreement.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009).  Equitable estoppel is built on the principle that it "would be inequitable for [plaintiffs], as party to arbitration agreements with [defendants], to use the substantive terms of those agreements as a foundation for their claims against non-signatories, and at the same time disavow the arbitration clauses of those very agreements."  *Amergence Supply Chain Mgmt., Inc. v. Changhong (Hong Kong) Trading Ltd.*, No. CV159976MWFAFMX, 2016 WL 8234652, at *5 (C.D. Cal. Apr. 21, 2016).  Where a non-signatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory or the claims are "intimately founded in and intertwined with" the underlying contract," (*Goldman v. KPMG LLP,* 173 Cal. App.4th 209, 221 (2009) (quoting *Metalclad Corp. v. Ventana Envtl. Org. P'ship,* 109 Cal.App.4th 1705 (2003))), and (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."  *Goldman,* 173 Cal. App.4th at 219; s*ee also Kramer,* 705 F.3d at 1128.  California law, which is the express choice of law pursuant to the Arbitration Agreements at issue here, expressly allows non-

signatories to enforce an arbitration agreement under equitable estoppel where, as here, the claims against the non-signatory are "dependent on or inextricably bound up with" the arbitration agreement. *Dell'Oro Group, Inc. v. Alan Weckel, et al.*, Case No. 3:17-cv-000750, Dkt. No. 53 at 2 (N.D. Cal. Aug. 14, 2017) (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013)).

This case meets both circumstances outlined in *Goldman*.

### 1. FF Must Rely on the Terms of the Employment Agreements to Assert its Claim Against EVelozcity, because the Claim is Intimately Founded In and Intertwined with the Underlying Agreements.

FF's misappropriation claim against EVelozcity "rel[ies] on and presume[s] the existence of the [employment] contract[s]," and specifically recites the contractual obligations between FF and the Former Employees. *Boucher v Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 269 (2005). The entirety of this claim hinges on the employment relationship between the former FF employees and FF and those employees' associated contractual duties to FF.[1] Specifically, the alleged theft of the trade secrets was purportedly committed by the Former Employees in breach of their employment agreements. Compl., ¶¶ 23-28; *see* Boock Decl., ¶¶ 3-7, Exhs. 2-6, Section 2. FF goes so far as to allege that EVelozcity's *entire business plan* was to hire FF employees with the sole purpose of acquiring FF's trade secrets. Compl., ¶ 9. FF does not allege any wrongful conduct by EVelozcity that is independent from, or additional to, that of the Former Employees. FF's only claim against EVelozcity is based on the exact same factual allegations it brings in its arbitration demand. Indeed, the claims are virtually identical, particularly where allegations from the Arbitration Demand were cut and pasted into the Complaint and form the

---

[1] An assertion by FF that its arbitration agreements do not encompass the trade secret claim against EVelozcity, though incorrect, must be determined in arbitration. Where, as here, an arbitration agreement delegates any dispute between the parties to an arbitrator, the arbitrator, not the Court, should rule on challenges to any threshold issues, such as enforceability or applicability of the arbitration agreement. *Brock v. Kaiser Foundation Hospitals,* 10 Cal. App. 4th 1790, 1796, 1797-81 (1992); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

1    basis of the trade secrets cause of action.  Boock Decl., ¶ 9, Ex. 8.

2         Any adjudication of the claim against EVelozcity must encompass the alleged

3    wrongful acts by the Former Employees and rely on the underlying employment

4    agreements.  *See* Compl., ¶¶ 6, 7; Boock Decl., ¶ 2, Ex. 1, ¶ 46 (Krause and Kranz

5    "have also breached and continue to breach the agreements by taking and using FF's

6    confidential information, and by encouraging others to do so").  Without the

7    purported breaches by the Former Employees, FF has nothing to allege against

8    EVelozcity.

9         FF cannot claim the benefits of the arbitration agreements while attempting to

10   avoid their burdens under identical facts and allegations.  *Kramer*, 705 F.3d at 1128

11   (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)).  Consequently,

12   this Court should compel FF to arbitrate its only cause of action against EVelozcity,

13   which arises from FF's allegations of wrongful conduct by the Former Employees.

14   *See All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*, No. C13-2001RAJ,

15   2014 WL 1870821, at *2 (W.D. Wash. May 8, 2014) (noting that, as a practical

16   matter, the parallel arbitration dealing with the same facts would dispose of all

17   matters in plaintiff's complaint and thus the court refused to "permit [plaintiff] to

18   squander adjudicative resources in this fashion.").

19                    **2.    FF Alleges Substantially Interdependent and Concerted**
20                    **Misconduct by EVelozcity and the Former Employees,**
                      **which is Founded In and Intimately Connected with the**
21                    **Obligations of the Employment Agreements.**

22        FF alleges substantially interdependent and concerted misconduct by

23   EVelozcity, and "the allegations of interdependent misconduct [are] founded in or

24   intimately connected with the obligations of the underlying agreement."  *Goldman,*

25   173 Cal. App.4th at 219; s*ee also Kramer,* 705 F.3d at 1128.  A cursory review of

26   the Complaint, the Original Arbitration Demand and the Amended Arbitration

27   Demand demonstrate this fact.  Each document specifically calls out the contractual

28   obligations of the former FF employees.  Each document also specifically discusses

1  the contractual duties of confidentiality not only as a duty but also as a measure to

2  protect trade secrets.  In addition, each document discusses the non-solicitation

3  obligations of FF employees.  Those, again, are grounded in the contractual

4  relationship between the Former Employees and FF.

5  **IV.    CONCLUSION**

6        The Court should compel FF to arbitrate its trade secret misappropriation

7  claim, which arises entirely out of the actions of its Former Employees, with only

8  sparse and conclusory allegations against EVelozcity.  FF's Complaint reproduces

9  wholesale the claims that it asserts against the Former Employees in its Arbitration

10  Demand, simply adding a few sentences regarding EVelozcity.  FF cannot be

11  allowed to skirt the restrictions imposed by the arbitration clauses it required its

12  Former Employees to sign, while simultaneously seeking to enforce those clauses in

13  separate but identical proceedings in this Court.  For these and the foregoing

14  reasons, EVelozcity requests that this Court compel FF to arbitrate its trade secret

15  claim under the principles of equitable estoppel and stay this case pending the

16  arbitration.

17

18  Dated:        February 20, 2018              Respectfully submitted,

19

20                                        By:        /s/ Neel Chatterjee
                                      Neel Chatterjee (SBN 173985)

21                                        *nchatterjee@goodwinlaw.com*
                                      **GOODWIN PROCTER LLP**

22                                          135 Commonwealth Drive
                                        Menlo Park, California 94025-1105

23                                          Tel.: +1 650 752 3100
                                        Fax.: +1 650 853 1038

24                                          Brendan E. Radke (SBN 275284)

25                                          *bradke@goodwinlaw.com*
                                        Hayes P. Hyde (SBN 308031)

26                                          *hhyde@goodwinlaw.com*
                                        **GOODWIN PROCTER LLP**

27                                          Three Embarcadero Center
                                        San Francisco, California 94111

28                                          Tel.: +1 415 733 6000
                                        Fax.: +1 415 677 9041

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Todd A. Boock (SBN 181933)
*tboock@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 S Figueroa Street
41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673


*Attorneys for Defendant*
*EVELOZCITY, INC.*