QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700

  Duane Lyons (Bar No. 125091)
  duanelyons@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Faraday&Future, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FARADAY&FUTURE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>EVELOZCITY, INC.;<br><br>Defendant. | **Case No. 2:18-cv-00737**<br><br>**PLAINTIFF FARADAY&FUTURE, INC.'S OPPOSITION TO DEFENDANT EVELOZCITY, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date: March 30, 2018<br>Time: 9:30 a.m.<br>Courtroom: 8C, 8th Floor<br>Judge: Honorable Dolly M. Gee |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................. 1

II. FACTUAL BACKGROUND .............................................................. 4

    A.  FF Asserts a Single DTSA Claim Against EVelozcity ......................... 4

    B.  FF's Separate Arbitration Demand Against Former FF Executives and Employees ............................................................... 5

III. ARGUMENT ...................................................................................... 7

    A.  FF Is Not Required To Arbitrate Its DTSA Claim Against Non-Signatory EVelozcity ...................................................................... 7

        1.  The General Rule Is That A Non-Signatory Cannot Compel Arbitration, And FF Did Not Agree To Arbitrate With EVelozcity. .............................................................. 7

        2.  California's Doctrine Of Equitable Estoppel Is A Narrow Exception That Applies Only When A Plaintiff's Claims Against A Non-Signatory Defendant Rely On The Terms Of An Arbitration Agreement ..................................... 7

        3.  Equitable Estoppel Does Not Apply Here Under Either Prong of the *Goldman* Test ...................................... 10

            a.  FF Does Not Rely On The Terms of Its Agreements With Former FF Employees for Its DTSA Claim. .......... 10

                (i)  The *Waymo v. Uber* Case has Analogous Relevant Facts ...................................... 12

                (ii)  EVelozcity's Cases Are Inapposite ................... 14

            b.  Likewise, FF Does Not Allege Misconduct Which Is Founded In And Intimately Connected With The Obligations Of The Employment Agreements ................. 15

IV. CONCLUSION .................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*,
 No. C13-2001RAJ, 2014 WL 1870821
 (W.D. Wash. May 8, 2014) ........................................................... 14

*Arthur Andersen LLP v. Carlisle*,
 556 U.S. 624 (2009) ............................................................... 7, 14

*Blackbird Techs., Inc. v. Joshi*,
 No. 5:15-CV-04272-EJD, 2015 WL 5818067
 (N.D. Cal. Oct. 6, 2015) ............................................................. 11

*Boucher v. Alliance Title Co., Inc.*,
 127 Cal. App. 4th 262 (2005) ...................................................... 14

*Comedy Club, Inc. v. Improv West Associates*,
 553 F.3d 1277 (9th Cir. 2009) ....................................................... 7

*Goldman v. KPMG LLP*,
 173 Cal. App. 4th 209 (2009) ................................................. passim

*Huong Que, Inc. v. Luu*,
 150 Cal. App. 4th 400 (2007) ...................................................... 11

*Kramer v. Toyota Motor Corp.*,
 705 F.3d 1122 (9th Cir. 2013) ................................................. passim

*Mohamed v. Uber Techs., Inc.*,
 848 F.3d 1201 (9th Cir. 2016) ..................................................... 11

*Murphy v. DirecTV, Inc.*,
 724 F.3d 1218 (9th Cir. 2013) ................................................. passim

*Rajagopalan v. NoteWorld, LLC*,
 718 F.3d 844 (9th Cir. 2013) ................................................... 2, 11

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
 559 U.S. 662 (2010) ................................................................... 1

*Waymo LLC v. Uber Technologies, Inc.*,
 870 F.3d 1342 (Fed. Cir. 2017) ............................................... passim

*Whole Space Indus., Ltd. v. Lewis Hyman, Inc.*,
 No. CV 10-731 PSG (JCX), 2010 WL 11549574
 (C.D. Cal. Aug. 2, 2010) .............................................................. 4

### <u>Statutes</u>

9 U.S.C. § 3 ................................................................................ 4

# I.     __INTRODUCTION__

This is a dispute between two competitors in the artificial intelligence electric vehicle space.   Plaintiff Faraday&Future, Inc. ("FF") alleges that the Defendant, EVelozcity, Inc. ("EVelozcity"), wrongfully misappropriated FF's trade secrets.   FF and EVelozcity have no contractual relationship, and have never had one.   FF has not consented to arbitrate this (or any) dispute with EVelozcity.   Nor would it agree to arbitrate a dispute such as this with a competitor.   It is black letter law that "arbitration is a matter of consent, not coercion."   *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 681 (2010) (citation omitted).   This is why only parties to an arbitration agreement may invoke arbitration under the Federal Arbitration Act (FAA), with very limited exceptions.

The only exception that EVelozcity argues applies is the doctrine of equitable estoppel.   It does not.   Equitable estoppel "reflects the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'"   *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 220 (2009)).   In other words, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement."   *Goldman*, 173 Cal. App. 4th at 220.   But FF is not "rely[ing] on the terms of" any of its employment agreements to assert its trade secret misappropriation claim against non-signatory EVelozcity.   Nor is FF seeking to hold non-signatory EVelozcity "liable pursuant to duties imposed by" those agreements.   *Id.*   Accordingly, the policy considerations underlying the doctrine of equitable estoppel are completely absent in this case.   It simply has no application here.

Under binding Ninth Circuit precedent, the application of equitable estoppel under California law is "narrowly confined" to "two very specific conditions."

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1    *Murphy*, 724 F.3d at 1229.  Those conditions are so specific and narrowly confined

2    that, as recently as 2013, the Ninth Circuit recognized that it had "never previously

3    allowed a non-signatory defendant to invoke equitable estoppel against a signatory

4    plaintiff[.]" *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013).  That

5    remains true to this day.  Indeed, EVelozcity's motion fails to cite a single published

6    decision that grants a motion to compel arbitration under California's equitable estoppel

7    doctrine on even loosely similar facts.  But, as explained below, numerous cases –

8    including the recent and analogous *Waymo* decisions by the Federal Circuit and

9    Northern District of California (which EVelozcity conspicuously fails to bring to this

10   Court's attention[1]) – have squarely denied such motions.  *Waymo LLC v. Uber*

11   *Technologies, Inc.*, 870 F.3d 1342, 1345-48 (Fed. Cir. 2017) (affirming district court's

12   denial of motion to compel arbitration of trade secret claims, despite the existence of an

13   arbitration agreement between plaintiff and the former employee alleged to have

14   brought the trade secrets to defendants, because "California law establishes that reliance

15   on the contract bearing the arbitration clause is fundamental to compulsion by a non-

16   party to arbitrate" and the plaintiff did not need to rely on the arbitration agreement for

17   its trade secret claims).

18        As the case law makes clear, this action for federal trade secret misappropriation

19   is not one of the "very specific" situations where equitable estoppel applies.  This is not

20   a breach of contract case, nor is it a case alleging a non-signatory's interference with

21   contract.  FF's claim in this case is based on EVelozcity's wrongful conduct in

22   violating FF's statutory rights under a federal law, the Defend Trade Secrets Act

23   ("DTSA").  FF would still have a DTSA claim against EVelozcity irrespective of the

24   existence of the contracts with FF's former employees.  The DTSA claim neither arises

25   from nor depends upon the contracts.  FF's First Amended Complaint ("Complaint")

---

26   [1]   EVelozcity's counsel was counsel of record for defendant Otto Trucking, LLC in

27   *Waymo.  See, e.g.*, *Waymo LLC v. Uber Technologies et al.*, Case No. 3:17-cv-000939,

28   Dkt. No. 257 (Notice of Appearance for Counsel I. Neel Chatterjee).

does refer in passing to the employment contracts, as evidence of FF's reasonable efforts to maintain the secrecy of its trade secrets.[2]  But as *Waymo* and other cases explain, **referring** to a contract with an arbitration provision is not the same thing as **relying** on that contract to bring a claim in the sense necessary to invoke equitable estoppel.  *Id.* at 1348.  Simply put, FF is not and will not be relying on any of the employment agreements or seeking to impose liability against EVelozcity based upon any contract.

Unable to meet the elements of equitable estoppel under governing authority, EVelozcity resorts to misdirection.  For example, EVelozcity invokes policies concerning employee mobility that are simply inapplicable here.  EVelozcity, a competitor of FF, did not even exist at the time FF entered into employment agreements with the departed FF executives.  Nor is EVelozcity correct in urging this Court to leave it to the arbitrator to decide this issue, or in arguing that FF should be compelled to arbitrate because FF had "broad" arbitration provisions with its former employees.  These arguments are wrong as a matter of law, and have been specifically rejected by prior courts.  Finally, EVelozcity tries to mix and match terms that appear in the tests for equitable estoppel ("intertwined," "interdependent and concerted misconduct," "intimately connected") out of their contexts to incorrectly suggest that overlap between, for example, the facts of the pending arbitration and this litigation require application of the doctrine here.  But the prohibition against "having it both ways" in the context of equitable estoppel does not mean that a plaintiff may not – as FF is here – simultaneously arbitrate against signatories and litigate against non-signatories.  Rather, the equitable principle that "a signatory to an agreement with an arbitration

---

[2]  FF's original Complaint mentioned the employment agreements for that purpose in three paragraphs. Dkt. 1 ¶¶ 6, 7, 18. For the avoidance of any possible doubt that these references to the employment agreements were limited to the purpose of providing non-exclusive examples of FF's reasonable measures to protect its trade secrets, FF has amended the Complaint to remove any reference to the employment agreements from Paragraphs 6 and 7.

clause cannot 'have it both ways'" means that "the signatory cannot, on the one hand, seek to hold the non-signatory liable **pursuant to duties imposed by the agreement**, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Goldman*, 173 Cal. App. 4th at 220 (emphasis added, internal quotation marks and citation omitted).  That is simply not happening here.

Accordingly, FF respectfully submits that this Court should deny EVelozcity's Motion in its entirety.[3]

## II.   FACTUAL BACKGROUND

### A.   FF Asserts a Single DTSA Claim Against EVelozcity

Since its formation in May 2014, FF has invested hundreds of thousands of work hours and approximately $1 billion in developing the next generation of AI electric vehicles.   Complaint ¶¶ 1, 17.   FF has developed highly valuable trade secret technologies and financial business information.  *Id.* ¶ 17.  These trade secrets include FF's proprietary variable platform architecture ("VPA") and VPA2 technology, battery technology, power-train, safety features, autonomous driving, internet of vehicles technology, and proprietary software and source code.  FF also has valuable trade secrets in its financial and business information such as confidential information regarding FF's costs, materials, vendors, and business plans.  *Id.* ¶ 17.

Defendant EVelozcity was incorporated with the Delaware Secretary of State by FF's former Senior Corporate Counsel, Andrew Wolstan, in early November 2017.

---

[3] EVelozcity requests a stay of proceedings under 9 U.S.C. § 3.  *See* Notice of Motion ("Defendant also requests a stay of these proceedings during the pendency of the arbitration pursuant to 9 U.S.C. § 3.").  This request must be denied if the Court does not compel arbitration of FF's DTSA claim against EVelozcity.  *See Whole Space Indus., Ltd. v. Lewis Hyman, Inc.*, No. CV 10-731 PSG (JCX), 2010 WL 11549574, at *2 (C.D. Cal. Aug. 2, 2010) ("By its terms, Section 3 of the Federal Arbitration Act provides only for the stay of an action pending arbitration of arbitral claims.") (citing 9 U.S.C. § 3).

Complaint ¶ 22.  Since its incorporation, EVelozcity has misappropriated FF's valuable trade secrets and is using them to unfairly compete with FF.  *Id.* ¶¶ 29, 30.  EVelozcity wrongfully obtained FF's trade secrets from certain former FF executives and employees who recently separated from FF and now work at EVelozcity.  *Id.* ¶ 29.

On January 29, 2018, FF sued EVelozcity for its unlawful conduct by filing its Complaint asserting a single claim under the DTSA.  Complaint ¶ 33.  The Complaint alleges that EVelozcity's misappropriation of FF's trade secrets violates FF's federal statutory rights under the DTSA.  18 U.S.C. §§ 1836(b)(1), 1839(5)(A), (B) ("the term 'misappropriation' means—acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent….").  Contrary to various suggestions in EVelozcity's moving papers, FF has not sued EVelozcity for breach of contract, improper solicitation of FF's employees, interference with contract, unfair competition, or any other cause of action besides misappropriation of trade secrets in violation of FF's statutory rights under the DTSA.  *See* Complaint.

## B.    FF's Separate Arbitration Demand Against Former FF Executives and Employees

FF has initiated a separate arbitration proceeding against six former FF executives and employees.  Unlike EVelozcity, each one of those former FF executives and employees has an employment agreement with FF that contains an arbitration provision.  *See*, *e.g.,* Dkt. 19-4 at 6 ("[I]n consideration of my employment with the company…I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer director, shareholder, or benefit plan of the company, in their capacity as such or otherwise)…arising out of, relating to, or resulting from my employment with the company…shall be subject to binding arbitration…. I further understand that this agreement to arbitrate also applies to any disputes that the company may have with me.").  FF's employment agreements with the

employees who are parties to the separate arbitration specifically incorporate the California Arbitration Act.[4]

In accordance with the obligations of those arbitration agreements, FF brought its claims against the former FF executives and employees in arbitration before JAMS.  FF initiated the arbitration on or about January 30, 2018, and then filed an amended arbitration demand on or about February 9, 2018.  However, as of the date this Opposition is filed, no arbitrator has been officially confirmed and, as a practical matter, the arbitration is effectively stayed until an arbitrator is officially confirmed – something that at the very earliest will not happen until after EVelozcity files its Reply brief.

Some of FF's factual allegations in the arbitration overlap with factual allegations in FF's Complaint in this case.  But, as explained below, the existence of overlapping allegations is not the standard for equitable estoppel and is, standing alone, irrelevant.[5]  Rather, the question for the Court is whether EVelozcity has shown that FF's DTSA claim against non-signatory EVelozcity relies on FF's employment contracts – a burden EVelozcity does not and cannot meet.

---

[4] The employment agreements between FF and its former employees provide that "all controversies, claims, or disputes . . . shall be subject to binding arbitration under the arbitration rules set forth in California code of civil procedure section 1280 through 1294.2, including section 1281.8 (The 'act'), and pursuant to California law.  The federal arbitration act shall continue to apply with full force and effect notwithstanding the application of procedural rules set forth in the act."  *See*, *e.g.*, Dkt. 19-4 at 6.

[5] Although not legally relevant to any issues in the pending Motion, to the extent the Court has concerns about judicial economy and the existence of overlapping parallel proceedings, FF is willing to amend its arbitration demand to withdraw the trade secret-related allegations.  It is important to FF, in the interest of enforcing its statutory right to protect its highly valuable proprietary information against wrongful acquisition and use by competitors in the federal courts that FF's trade secret claim against EVelozcity proceed expeditiously in this Court.

## III.  ARGUMENT

### A.  FF Is Not Required To Arbitrate Its DTSA Claim Against Non-Signatory EVelozcity

#### 1.  The General Rule Is That A Non-Signatory Cannot Compel Arbitration, And FF Did Not Agree To Arbitrate With EVelozcity.

"Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks omitted); *see also Waymo*, 870 F.3d at 1345 (same). So the "strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1287 (9th Cir. 2009) (internal quotations and citations omitted); *see also Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 937 (N.D. Cal. 2017), *aff'd*, 870 F.3d 1342 (Fed. Cir. 2017) ("Nor does the liberal federal policy favoring arbitration help defendants here, because 'where the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is best understood as concerning the scope of arbitrable issues, is inapposite.'") (quoting *Goldman*, 173 Cal. App. 4th at 220).

It is undisputed that FF never agreed to arbitrate with EVelozcity.   Nor would FF have agreed to arbitrate its DTSA claim with a competitor such as EVelozcity.

#### 2.  California's Doctrine Of Equitable Estoppel Is A Narrow Exception That Applies Only When A Plaintiff's Claims Against A Non-Signatory Defendant Rely On The Terms Of An Arbitration Agreement

Because EVelozcity never signed any arbitration agreement with FF, it may compel arbitration only "if the relevant state contract law allows a non-signatory litigant to enforce the agreement."   Motion at 8 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).   EVelozcity concedes this point.   *Id.*   The **sole** purportedly "relevant state contract law" that EVelozcity relies on is California's

doctrine of equitable estoppel.   Motion at 8.  EVelozcity bears the burden of proving that the doctrine applies.  *Murphy*, 724 F.3d at 1233-34.

As an equitable doctrine, equitable estoppel is rooted in principles of fairness. *See Goldman*, 173 Cal. App. 4th at 220 ("[T]he linchpin for equitable estoppel is equity—fairness.") (citation and internal quotation marks omitted).  It is intended to prevent the unfairness of allowing a party to enforce contractual obligations against a non-signatory while simultaneously seeking to avoid an arbitration clause in that very same contract.  As the California Court of Appeal has explained:

> The rationale for permitting a nonsignatory to enforce an arbitration agreement—that is, compelling arbitration between parties who have not agreed to arbitrate—on equitable estoppel grounds has been enunciated in many cases. Equitable estoppel generically "'precludes a party from asserting rights "he otherwise would have had against another" when his own conduct renders assertion of those rights contrary to equity.'"

> So, if a plaintiff **relies** on the terms of an agreement **to assert his or her claims against a nonsignatory defendant**, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement. In other words, a signatory to an agreement with an arbitration clause cannot "'have it both ways'"; the **signatory "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement,** which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."

*Id.* (citations omitted; emphasis added).

Under California law, courts have held that equitable estoppel applies only in two narrow circumstances that are "very specific" – the two *Goldman* prongs:  "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against

the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Murphy*, 724 F.3d at 1229 (emphasis added); *Goldman*, 173 Cal. App. 4th at 218; *Waymo*, 870 F.3d at 1345 ("Equitable estoppel to compel arbitration has been limited to narrow situations.").

Under either prong, the plaintiff must **rely** on a contractual obligation to assert its claim against the non-signatory in order to invoke equitable estoppel.  Absent the critical element of reliance on the contractual obligation, neither prong can be established:  "**California law establishes that reliance on the contract bearing the arbitration clause is fundamental to compulsion by a non-party to arbitrate**." *Waymo*, 870 F.3d at 1346 (emphasis added).  Nor can a non-signatory establish its entitlement to arbitrate just by pointing to "broad" language in the arbitration clause, as EVelozcity tries to do.  Motion at 1, 4.  Rather, "California law does not hold that a nonsignatory may enforce the terms of an arbitration agreement merely because the agreement uses broad language….California law recognizes that nonsignatories may enforce arbitration agreements only based on certain enumerated principles, none of which turn on the broadness of an agreement's language." *Waymo*, 252 F. Supp. 3d at 937.[6]

Further, and contrary to EVelozcity's suggestion, whether equitable estoppel entitles a nonsignatory to compel arbitration is a question for the Court to decide – **not** the arbitrator.  *Kramer*, 705 F.3d at 1127-28 ("Given the absence of clear and

---

[6] The scope of the arbitration provision in this case is word for word identical to that of the arbitration provision that was examined in *Waymo v. Uber*, where the district court denied the non-signatory's motion to compel arbitration and the appellate court affirmed the denial of the motion to compel arbitration despite a similar claim of "breadth" of the arbitration clause.

unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable….[A] disagreement between Plaintiffs and Toyota is simply not within the scope of the arbitration agreement.") (internal quotation omitted).   EVelozcity's contention to the contrary in a footnote (Motion at 9, fn. 1) is incorrect as a matter of law.

### 3.   Equitable Estoppel Does Not Apply Here Under Either Prong of the *Goldman* Test

EVelozcity fails to establish the applicability of equitable estoppel under either prong of the *Goldman* test, each of which ultimately requires EVelozcity to show that FF is relying on the obligations of the employment contracts in order to bring its DTSA claim.   EVelozcity cannot make such a showing, because FF need not – and indeed does not and will not – rely on the employment agreements in bringing its statutory claim under the DTSA against a non-signatory to those agreements.

#### a.   FF Does Not Rely On The Terms of Its Agreements With Former FF Employees for Its DTSA Claim.

EVelozcity does not and cannot establish equitable estoppel under the first *Goldman* prong, which only applies when a plaintiff's claims must rely on or depend on the terms of a written agreement with a signatory in asserting its claims against the nonsignatory.   *Goldman*, 173 Cal. App. 4th at 231 ("Ultimately, KPMG and Sidley simply omit the necessary central core of the standard: the plaintiff's allegations must rely on or depend on the terms of the written agreement, not simply on the fact that an agreement exists.") (internal citation and quotation omitted); *see Murphy*, 724 F.3d at 1230.[7]   As discussed above, FF's claim for misappropriation of trade secrets under the

---

[7] The Court of Appeal's affirmance in *Waymo* repeatedly emphasizes that the element of reliance is absolutely essentially to **any** application of California equitable estoppel law.   *See, e.g.*, *Waymo*, 870 F.3d at 1346 ("reliance on a contract containing an arbitration requirement is the key element in the equitable estoppel inquiry;" "the basis for equitable estoppel is reliance on the contract containing the arbitration provision;"

DTSA does not rely on the employment agreements FF has with its former employees. It is a **statutory claim** that exists independently of the agreements themselves.  FF does not seek contract damages from EVelozcity.   Nor does FF assert any contract interference claims against EVelozcity.   FF can and will prove all of the elements of trade secret misappropriation without relying on any obligations in any of those agreements.[8]     Accordingly, FF's DTSA claim "arises independently from the [employment agreements], rather than intimately relying on them." *Kramer*, 705 F.3d at 1131.  *See also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1215-16 (9th Cir. 2016) ("Here, the claims against [the defendant] arise under [a statute] and not out of obligations imposed by the [arbitration agreement]. Therefore, the rule that an arbitration agreement can be enforced by a non-signatory when the allegations against the non-signatory are intimately founded in and intertwined with underlying contract obligations does not apply.") (internal citations omitted); *Rajagopalan*, 718 F.3d at 847-48 (nonsignatory "may not compel [plaintiff] to arbitrate his claims on the basis of equitable estoppel" where plaintiff's RICO and Washington state law claims were "statutory claims that are separate from the contract itself") (internal quotations and citations omitted).

Rather than address the overwhelming case law against it, EVelozcity instead resorts to misdirection.  For example EVelozcity points to the similarity of language

_____

"reliance 'is the only basis upon which [a party to the agreement] may be equitably estopped from refusing to arbitrate [with a non-signatory] when they have not agreed to do so.") (citations omitted).

[8]   It is undisputed that all six of these former FF executives and employees owed FF a duty of confidentiality under California law, independent of any duties imposed by the specific employment agreements they signed.  *See, e.g.*, *Blackbird Techs., Inc. v. Joshi*, No. 5:15-CV-04272-EJD, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015) (under California law, an employee owes a duty of loyalty to his or her employer, and "may not use the employer's property or confidential information for the employee's 'own purposes or those of a third party'") (quoting *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007)).

found in FF's Complaint and in FF's Arbitration Demand.  But similar language and overlapping factual allegations with claims in a parallel matter do not show that equitable estoppel applies.  Rather, the "key element" is whether FF needs to rely on the agreements containing the arbitration provisions as the basis for the DTSA claim against non-signatory EVelozcity in this case.  *Waymo*, 870 F.3d at 1346.  FF is not relying on the agreements to bring the DTSA claim.  And in its motion EVelozcity does not (and indeed cannot) point to a single allegation in the complaint that demonstrates reliance on any terms of the employment agreements.

> (i)    The *Waymo v. Uber* Case has Analogous Relevant Facts

The recent *Waymo* decision illustrates the lack of merit to EVelozcity's argument.  Plaintiff Waymo brought trade secret misappropriation claims and an unfair competition claim in federal court against a start-up company founded by a former employee and against the company that acquired the former employee's start-up (collectively, "Uber").   The former employee's contract with Waymo had confidentiality provisions and a broad arbitration provision.  Before Waymo filed its complaint in federal court, it initiated a separate arbitration against the former employee asserting claims for breach of contract, breach of fiduciary duties, fraud-deceit, tortious interference with contract, tortious interference with prospective economic advantage, unfair competition, and unjust enrichment.  *Waymo*, 252 F. Supp. 3d at 936.

Just as FF does in its Complaint in this case, Waymo **referred** in its federal complaint to its contracts with its employees as one example of the reasonable efforts Waymo took to preserve the secrecy of its trade secrets.  Importantly, however, **reference** is not the same thing as **reliance** under applicable case law.  *Kramer*, 705 F.3d at 1132 ("In order for Toyota's equitable estoppel argument to succeed, Plaintiffs' claims themselves must intimately rely on the existence of the Purchase Agreements, not merely reference them.").

Uber argued that Waymo "relied" on the confidentiality provisions of its employment agreement with the former employee to make out its trade secret claims against the nonsignatory defendants, and thus argued that Waymo was subject to equitable estoppel. *Waymo*, 252 F. Supp. 3d at 938 ("Specifically, defendants point out that Waymo 'repeatedly invokes the confidentiality provisions of its employment contracts' to show reasonable efforts to maintain secrecy."). EVelozcity makes the same argument in its Motion here. However, the district court in *Waymo* correctly held that such references to the employment contracts in connection with the trade secret claim did not constitute "reliance," and therefore that equitable estoppel did not apply. *See id*. The Federal Circuit affirmed:

> Uber argues that Waymo must necessarily rely on its agreements with Levandowski in order to make out its trade secret claims against the Defendants. However, Waymo stresses that its complaint does not rely on Levandowski's employment agreements, stating that the references to the employment agreements are presented to show that Waymo has taken reasonable measures to safeguard its trade secrets. **Uber argues that these references should be construed as reliance on the agreements** sufficient to compel Waymo to arbitrate this dispute with the Defendants. However, **this is not how California courts have viewed reliance in the context of compelling arbitration by non-parties to an arbitration agreement**.

*Waymo*, 870 F.3d at 1347 (emphases added). Just as in *Waymo*, EVelozcity's Motion should be denied because EVelozcity cannot carry its burden of showing that FF must rely on the employment contracts to prove its DTSA claim against EVelozcity.[9]

---

[9] EVelozcity may contend that *Waymo* is distinguishable because the plaintiff there brought a trade secret claim in the federal case but not in the separate arbitration against the former employee. But the existence of overlapping claims or facts in the proceedings is not the test for equitable estoppel under the operative case law. *Goldman*, 173 Cal. App. 4th at 233 ("The proposition that a court should compel arbitration to avoid denying the signatory defendant the benefit of his arbitration clause, and merely to avoid duplicative litigation, is, to the extent it purports to be based on principles of equitable estoppel, simply wrong. **Parties who have not agreed to arbitrate may not be compelled to do so simply because two defendants, one with an arbitration agreement and one without, have colluded to defraud the**

(ii)   <u>EVelozcity's Cases Are Inapposite</u>

The two cases that EVelozcity relies upon do not support its position or compel a different result as to the inapplicability of the first *Goldman* prong.  *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262 (2005) was a case where the plaintiff brought a claim for **tortious interference with contract** against a non-signatory.  The court found the plaintiff's tortious interference claim necessarily relied upon the underlying contract that was allegedly interfered with by the non-signatory.  But here, FF is not suing EVelozcity for interference with a contract it did not sign.  Nor is FF seeking contract damages from EVelozcity.  Rather, FF's DTSA claim against EVelozcity exists entirely independently of the underlying employment agreements.  Thus, the finding in *Boucher* that equitable estoppel applied to the plaintiff's tortious interference with contract claim has no relevance to FF's trade secret claim against EVelozcity.  Moreover, *Boucher's* application of federal substantive law on the question of arbitrability (*id.* at 443), rather than state substantive law, is entirely inconsistent with subsequent Supreme Court and Ninth Circuit precedent.  *See*, *e.g.*, *Arthur Andersen LLP*, 556 U.S. at 631-32; *Murphy*, 724 F.3d at 1229.

EVelozcity next cites *All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*, No. C13-2001RAJ, 2014 WL 1870821 (W.D. Wash. May 8, 2014), which is also readily distinguishable.  As an initial matter, *All for Kidz* was decided on principles of agency law, **not** equitable estoppel.  *Id.* at *2 ("The parties focus on whether equitable estoppel applies in this case, but the court focuses on agency law, which provides a straightforward answer: employee defendants sued for acts within the scope of their employment may defensively invoke their employer's agreement to arbitrate disputes encompassing those acts.").  EVelozcity does not even argue its Motion under agency law (nor has any factual basis been established for such an argument).  Moreover, the

**plaintiff**.") (emphasis added).  The question rather is whether FF must **rely** on the employment agreements – which FF does not.

1  *All for Kidz* court relied upon inapplicable Washington law, not California law (which

2  both sides agree applies here).  *Id*. at *3 ("[T]he court concludes that Washington

3  agency law would permit the Employee Defendants to invoke the arbitration clause

4  defensively as to claims based on acts within the scope of their employment.").

5  Accordingly, EVelozcity's suggestion that *All for Kidz* is relevant authority on matters

6  of California's doctrine of equitable estoppel should be completely disregarded.

7                    b.    <u>Likewise, FF Does Not Allege Misconduct Which Is</u>

                              <u>Founded In And Intimately Connected With The</u>

8                                <u>Obligations Of The Employment Agreements</u>

9        EVelozcity also cannot establish equitable estoppel under the second *Goldman*

10  prong because EVelozcity cannot show that FF's DTSA claim against non-signatory

11  EVelozcity is "inextricably bound up with the **contractual obligations** of the

12  agreement containing the arbitration clause." *Murphy,* 724 F.3d at 1232 (emphasis

13  added). "Even where a plaintiff alleges collusion [between a signatory to an arbitration

14  agreement and a nonsignatory], '[t]he *sine qua non* for allowing a nonsignatory to

15  enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff

16  asserts against the nonsignatory are **dependent on** or **inextricably bound up with** the

17  **contractual obligations** of the agreement containing the arbitration clause.'") *Id.*

18  (quoting *Goldman*, 173 Cal. App. 4th at 213) (emphasis added). That *sine qua non* is

19  completely absent here.

20        Courts have repeatedly evaluated the second prong of California's equitable

21  estoppel doctrine to be consistent with the first prong, by focusing on the critical

22  question of whether the plaintiff's claim against the non-signatory **must rely** on a

23  contract with an arbitration provision. *Murphy,* 724 F.3d at 1232 ("As we have already

24  explained, Plaintiffs' claims do not bear the requisite relationship to the Customer

25  Agreement to warrant application of equitable estoppel."); *Waymo*, 252 F. Supp. 3d at

26  939 ("Here, as stated [in reference to the first *Goldman* prong], Waymo's claims

27  against defendants are not dependent on or inextricably bound up with the contractual

28  obligations of the agreements containing the arbitration clause.  At bottom, defendants

have not shown that Waymo relies on [the agreements] to assert its claims against defendants while simultaneously seeking to avoid arbitration clauses of those agreements. The inequities that equitable estoppel is designed to address are simply not present." (internal quotations omitted); *Goldman*, 173 Cal. App. 4th at 232-33 ("KPMG insists the 'concerted misconduct' alleged in the complaints is 'integrally tied up with' the operating agreements, because but for their execution of the operating agreements, Goldman and Haines could not have invested in the funds and generated their tax losses. But this does not satisfy the requirement that the allegations of concerted misconduct be founded in or inextricably bound up with the terms and obligations of the operating agreements."). Therefore, second *Goldman* prong does not apply for the same reasons as the first.

Nevertheless, EVelozcity seeks to establish the second *Goldman* prong by arguing in a cursory paragraph that FF's Complaint "calls out the contractual obligations of the former FF employees," including the "contractual duties of confidentiality not only as a duty but also a measure to protect trade secrets" and that therefore the allegations are "grounded in the contractual relationship between the former Employees and FF." Motion at 10-11. But merely referencing the employments agreements in the Complaint (as is the case here) is not sufficient to establish that the allegations are "intimately connected with the obligations of the underlying agreement." *See Waymo,* 870 F.3d at 1346-48 (allegations of collusion between Uber and Waymo's former employee were not "inextricably bound up with the obligations imposed by the agreement containing the arbitration clause" where Waymo was not asserting that Uber "conspired with [Waymo's former employee] to breach his employment agreements with Waymo.") (internal citations and quotations omitted). Indeed, neither of the two cases cited by EVelozcity hold otherwise – and in both the court found that the second *Goldman* prong did **not** apply. *Goldman*, 173 Cal. App. 4th at 233 (analyzing second prong and holding: "Again, we are returned to the fundamental point: Goldman and Haines are *not* relying in any way on the operating

agreements to make their claims against KPMG and Sidley, while at the same [time] avoiding the arbitration clauses of those agreements – and, at bottom, that is the only basis upon which they may be equitably estopped from refusing to arbitrate when they have not agreed to do so.") (emphasis in original); *Kramer*, 705 F.3d at 1133 ("[E]ven if Toyota were correct that Plaintiffs allege a pattern of concealment between Toyota and the dealerships, these allegations are not connected to the Purchase Agreements. Rather, like the other allegations in the First Amended Complaint, the allegations of collusion are not 'inextricably bound up with the obligations imposed by the agreement containing the arbitration clause.'") (quoting *Goldman*, 173 Cal. App. 4th at 219).

EVelozcity also suggests that the overlap between the factual allegations in the arbitration demand and the Complaint are relevant to showing that FF's DTSA claim is "grounded in the contractual relationship between the Former Employees and FF." Motion at 11.  But overlap between allegations in FF's separate arbitration and this litigation are not in and of themselves legally relevant.  As the Federal Circuit recognized in *Waymo*, "allegations of collusive behavior by signatories and non-signatories, with no relationship to the terms of the underlying contract, [do] not justify application of equitable estoppel to compel arbitration.'" *Waymo*, 870 F.3d at 1348 (quoting *Murphy*, 724 F.3d at 1232).  Where, as here, FF's allegations are not dependent on the obligations of the employment agreements, its DTSA claim against non-signatory EVelozcity cannot be compelled to arbitration.

## IV.   **CONCLUSION**

FF has arbitration agreements with certain of its former employees, and has fully honored those agreements by pursuing claims against the former employees in arbitration.  But FF has no arbitration agreement or other contractual relationship with EVelozcity, and FF's DTSA claim against EVelozcity does not arise under, does not rely upon, and is not inextricably intertwined with any of the employment contracts. Accordingly, EVelozcity has failed to carry its burden of showing that California's "narrow" doctrine of equitable estoppel applies here.  There is nothing unfair about FF

pursuing its DTSA claim against EVelozcity in this Court.  To the contrary, under the circumstances presented here, it would be an injustice to compel FF to submit a federal claim against a competitor to private arbitration.  The Court should deny EVelozcity's Motion in its entirety.

DATED:  March 9, 2018                    QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP


                                         By _____/s/ Charles K. Verhoeven_____
                                             Charles K. Verhoeven
                                             Attorneys for *Faraday&Future, Inc.*