QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  James Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
  50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700
  Duane R. Lyons (Bar No. 125091)
  duanelyons@quinnemanuel.com
865 S. Figueroa St., 10th Street
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
FARADAY&FUTURE, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FARADAY&FUTURE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>EVELOZCITY, INC.,<br><br>Defendant. | **CASE NO. 2:18-cv-00737-DMG**<br><br>**PLAINTIFF FARADAY&FUTURE, INC.'S OPPOSITION TO DEFENDANT EVELOZCITY, INC.'S *EX PARTE* APPLICATION TO EXTEND TIME OR STAY ITS RESPONSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>The Hon. Honorable Dolly M. Gee |

I.      **INTRODUCTION**

There is no basis for this Court to grant Defendant EVelozcity, Inc. ("EVelozcity")'s *ex parte* application (the "Application") for an extension of time to respond to Plaintiff Faraday&Future, Inc. ("FF")'s First Amended Complaint (the "FAC").

As an initial matter, this Court's standing order explicitly and emphatically states that "[c]ounsel shall avoid submitting requests for continuance or extension of time less than five (5) court days prior to the expiration of the scheduled date." Initial Standing Order at 10.  Yet, even though the date it seeks to move was set by rule when FF filed its Amended Complaint on March 9, EVelozcity seeks, by an *ex parte* application, an extension of time to respond to the FAC *two days* prior to the date its response is due.  *See* FRCP 15(a)(3).  Instead of explaining its failure to abide by the Court's standing order, EVelozcity unconvincingly argues that it cannot respond to the FAC within the time required because it may move to disqualify FF's counsel from this action.  Additionally, EVelozcity argues that because it has filed a Motion to Compel Arbitration (the "Motion") that it should not be required to respond until after the Motion is decided.  Neither of these proffered reasons are sufficient for this Court to entertain, let alone grant, an *ex parte* application.

As the standing order makes clear, "[e]*x parte* applications are solely for extraordinary relief."  Initial Standing Order at 9.  EVelozcity does not adequately explain why extraordinary relief is warranted here—nor can it.  Indeed, EVeloczcity ignores and fails to explain why it waited a full week after being served with the FAC to even request a meet and confer regarding its required response.  EVelozcity implausibly contends that because it may, at some point, file a motion to disqualify FF's counsel, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), from this lawsuit, this warrants an extension of time to respond to the FAC.  A motion to disqualify counsel, however, is not related in any way to a party's obligation to respond to the factual allegations of a complaint, particularly given that the original

PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION

complaint – which was largely the same as the amended one – was filed by another firm.

Second, EVelozcity's Application makes clear that it is based, in large part, on counsel's confusion as to whether or not the Court requires a response in light of filing EVelozcity's Motion to Compel Arbitration.  App. at 2. ("If the Court has deemed that the Motion suffices as a response to the FAC, EVelozcity requests, in the alternative, that the Court rule that no further response is necessary pending the outcome of the Motion to Compel Arbitration.").  Counsel's confusion regarding whether or not it satisfied its responsive obligations is hardly good cause for an extension of time.  Indeed, EVelozcity previously chose not to seek an extension of time to respond to the original Complaint at all.  Moreover, EVelozcity does not offer any explanation for why it decided to wait until now, a month after it filed its Motion, to request an extension of time to respond to the pleadings.  EVelozcity's failure to do so evidences that its request for an extension of time to respond is merely an attempt to delay this action.

Last, EVelozcity mischaracterizes its Application as a 30-day extension of time to respond to the FAC.  This is not so.  EVelozcity also asks this Court to rule that a response to the FAC is not required *at all* until EVelozcity's pending Motion is decided.  It is this very request—a stay of the Court's proceedings—that FF's counsel did not agree to.  Nevertheless, as a professional courtesy, FF's counsel did offer EVelozcity an extra week to respond to the FAC, yet EVelozcity immediately refused.  EVelozcity fails to explain why it cannot file the DQ motion it threatens before responding to the FAC with FF's offered one week extension.

For these reasons, and as explained more thoroughly below, the Court should not grant the Application.

## II.   BACKGROUND

Although EVelozcity omits this fact, FF filed its original Complaint on January 29, 2018. Dkt. 1.  Almost one month later, instead of answering the

Complaint, EVelozcity chose to file a Motion to Compel Arbitration of, and to Stay, Trade Secret Claim (the "Motion") on February 20, 2018.  Dkt. 18.  Before filing the Motion, EVelozcity did not seek an extension of time to respond to the original Complaint.  To address some of the arguments made in EVelozcity's Motion and to clarify the fact that EVelozcity and FF have never been parties to a contract containing an arbitration provision, FF decided to *remove* certain allegations made in the original Complaint and filed its FAC and its Opposition to the Motion on March 9, 2018.  Dkt. 25, 26.  So the FAC adds no allegations to what EVeloczcity has had since the original complaint was filed on Janaury 29, almost two months ago.

It was not until a week after being served with the FAC that counsel for EVelozcity contacted FF's former counsel, Irell & Manella,[1] on March 16, 2018 to request a meet and confer regarding its request for an extension of time to respond to the FAC.  Boock Decl., Ex. B.  Counsel for FF, Quinn Emanuel, promptly responded and offered EVelozcity a one-week extension of time to respond to the FAC, which would give EVelozcity almost two months to respond to FF's substantive allegations and sufficient time to file a motion to disqualify.  Boock Decl. ¶ 10; Ex. H.  EVelozcity rejected this request and the parties were not able to reach an agreement during the meet and confer on March 21, 2018.  EVelozcity's Application followed hours later.

## III.   ARGUMENT

### A.   EVelozcity's Attempt to Argue the Merits of a Possible Future Motion to Disqualify Counsel in an *Ex Parte* Application to Extend Time to Respond is Improper.

---

[1]   On March 16, EVelozcity only contacted Irell & Manella, LLP, not Quinn Emanuel (who appeared on March 9), regarding its requested extension even though Irell had already filed a request for substitution of counsel.  *See* Dkt. 21-24, 31.  It was not until March 19, 2018—three days later—that EVelozcity forwarded the request to FF's current counsel of record.  *See* Boock Decl., Ex. C.

1.    *A Motion to Disqualify Counsel, Even if Filed, Does Not Impact EVelozcity's Ability to Respond to the Factual Allegations of the First Amended Complaint.*

EVelozcity has not filed a motion to disqualify Quinn Emanuel from this litigation.  Instead, EVelozcity argues that because it may file a motion to disqualify FF's counsel, this somehow provides the Court with good cause to extend its time to respond to the FAC.  This argument lacks merit.  Federal Rule of Civil Procedure 6(b)(1) permits a court to extend a party's time to respond for good cause.  Good cause does not exist here.  A motion to disqualify counsel has nothing to do with the substantive allegations of a complaint.  Instead, a motion to disqualify looks only at which law firm will represent a party, not the underlying merits of that represented party's case.  *See, e.g., Varian Medical Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) ("[A]n appeal from an order denying a motion to disqualify counsel does not automatically stay further trial court proceedings on the merits because such proceedings would occur  regardless of whether the reviewing court affirms or reverses the order"); *see also In re County of Los Angeles*, 223 F.3d 990, 994 (2000) (courts apply state law in reviewing disqualification issues).

That EVelozcity may file a motion to disqualify FF's counsel has no effect on its obligation to respond to the substantive allegations of the FAC.  In other words, even if Quinn Emanuel no longer represented FF, EVelozcity would still need to respond to the FAC on March 23, 2018.  Which counsel represents FF is irrelevant to EVelozcity's obligation to respond and can hardly be considered good cause to extend EVelozcity's time to respond.

2.    *Quinn Emanuel Does Not Have a "Serious, Non-Waivable Conflict" and May Continue to Represent Plaintiff FF In This Matter*

Given how little the merits of Defendant's forthcoming motion to disqualify Quinn Emanuel have to do with its response to the Complaint, Defendant's lengthy discussion of the apparently upcoming motion in it *ex parte* application is a clear attempt to "poison the well" by  trotting out unfounded allegations regarding

-5-

1   Quinn's representation of FF.  Motions to disqualify are "strongly disfavored" and

2   "a drastic measure" that "should only be imposed when absolutely necessary."

3   *CrossFit, Inc. v. JB&AP CFLZ BIZ LLC*, 2013 WL 12142635, *2 (C.D. Cal. 2013)

4   (internal citations and quotations omitted).  As this Court recognized in *CrossFit*,

5   motions to disqualify are often "tactically motivated," a situation which

6   unfortunately appears to be the case here.

7          Defendant is correct that two EVelozcity lawyers contacted Quinn attorneys

8   before Quinn was involved in this case, but Defendant's characterization of the

9   discussions that ensued are otherwise inaccurate.  First, the EVelozcity lawyers did

10  not initiate contact for the "express purpose of potential retention of Quinn to

11  provide legal advice."  Dkt. 37 at 3.  EVelozcity attorney Brionna Ned contacted a

12  law school classmate, Quinn Emanuel Associate Brad Estes, twice by Google Chat

13  in February: once to discuss the general thoughts about joint defense arrangements,

14  and a second time to vent about an accidental public filing of confidential

15  information by counsel with whom she was working.  Mr. Estes, and the chats

16  themselves (which are available for the Court's review), confirm that nothing more

17  than a high-level, information conversation between law school classmates

18  occurred.  Mr. Estes and Ms. Ned have had similar conversations in the past

19  regarding other general topics.  At no point did Ms. Ned identify the case or parties

20  she was discussing in her general chat, ask for conflict clearance, or anything of the

21  sort.  Unless Defendants are asserting that Ms. Ned somehow blurted out material

22  confidential information in an unsolicited, online chat forum with a law school

23  classmate (the chats reveal this did not occur), there is nothing in the informal

24  dialogue between Ms. Ned and Mr. Estes that would support a conflict assertion.

25         The communication between EVelozcity in-house counsel Andrew Wolstan

26  and Quinn attorney Jack Baumann, also does not support disqualification.  Mr.

27  Wolstan and Mr. Baumann know each other from middle school and have kept in

28  touch for about twenty years.  As EVelozcity notes, Mr. Wolstan is a corporate

1    lawyer who was not well-versed in employment law, so he sought the advice of his
2    friend Mr. Baumann about general best practices for bringing on employees.
3    Although Mr. Baumann and a Quinn Emanuel partner, Diane Cafferata did have one
4    phone call with Mr. Wolstan regarding that topic, neither Quinn attorney was under
5    the impression that Mr. Wolstan was asking for advice solely to retain the firm for
6    its legal services, especially given that no claim had been filed at the time of their
7    December 12, 2017 discussion.  In addition, both Quinn attorneys have confirmed
8    they had received no confidential information during any discussions with Mr.
9    Wolstan.  This is confirmed by Mr. Wolstan's own personal counsel, Mr. Ragesh
10   Tangri, in correspondence regarding concerns that Mr. Wolstan would now be
11   representing a company that directly competed with his former employer FF.  (*See*
12   Ex. 1 [2/2/18 R. Tangri Letter to I. Jablon].)  Mr. Tangri ensured FF's counsel from
13   Irell & Manella LLP that "[n]either [Mr. Wolstan's] prior nor his present work
14   relates to the technology that [Faraday] discusses in its complaint" and "Mr.
15   Wolstan [would not be] participating in the Litigation [FF] filed this week."  That
16   Mr. Wolstan has not been involved in any way in the litigation confirms that Mr.
17   Wolstan did not communicate any "privileged and confidential information related
18   to this case." Dkt. 37 at 3.
19        Finally, out of an abundance of caution, Quinn Emanuel has confirmed, and
20   taken steps to ensure, that no communications of any nature by Mr. Wolstan and
21   Ms. Ned to Mr. Baumann, Ms. Cafferata, and Mr. Estes are be accessible to the
22   Faraday litigation team.  Quinn has implemented ethical screening procedures
23   walling off the three attorneys from any other Quinn attorney who is working on this
24   matter, and of course the three attorneys have had no communications with Faraday
25   or Irell.  EVelozcity has not been able to articulate any prejudice it believes it would
26   suffer as a result of Quinn Emanuel representing FF, nor has it identified any further
27   safeguards it would ask Quinn Emanuel to implement.  Although no confidential
28

1   information was obtained in the first instance, there is no basis for disqualifying

2   Quinn Emanuel given the safeguards now in place.

3   **B.    EVelozcity's Motion to Compel Arbitration Does Not Warrant its**
     **_Ex Parte_ Application Either,**

4

5       EVelozcity filed its Motion to Compel Arbitration on February 20, 2018,

6   supposedly in place of its response to the original Complaint.  Boock Decl., Ex. E.

7   If EVelozcity is confused as to whether this Court deems the Motion a sufficient

8   response to the original Complaint, (App. at 2), then why did it not clarify this point

9   when it filed the Motion in the first place, before its time to respond to the original

10  Complaint elapsed?  Instead, EVelozcity waited until March 16, 2018, a month after

11  the Motion was filed and a week after receiving FF's Opposition to the Motion and

12  the FAC, to request an extension of time to respond to the FAC.  *Id.*, Ex. B.  Had

13  EVelozcity really questioned whether the Motion was a sufficient response to the

14  original Complaint and needed the clarification it is now seeking, then it would have

15  sought an extension of time then, not now.  Yet, no such request—by an *ex parte*

16  application or otherwise—was filed.  That EVelozcity sought no extension of time

17  before illustrates that filing a motion to compel arbitration cannot justify the

18  extraordinary relief it now seeks.

19      Not only would this give EVelozcity until after the hearing on the Motion to

20  respond, EVelozcity's request ignores the fact that it has already delayed this action

21  by the mere filing of the Motion itself, which FF maintains lacks merit.  *See* Dkt. 26.

22  EVelozcity's sole argument to support its request to delay this action even further is

23  that if the parties are compelled to arbitrate, EVelozcity's need to respond would be

24  moot.  This is unpersuasive.  As pointed out by FF's counsel in the meet and confer,

25  EVelozcity fails to acknowledge that its need to respond to FF's claims is not

26  obviated by the case being moved to arbitration; EVelozcity will still have to

27  respond to the FAC in the arbitration.

28

1
2

**C.    If EVelozcity's Requests Are Granted, It Would Have Almost *Three Months* to Respond to the Same Allegations Made in the Original Complaint and That Would Further Delay This Case.**

3    Without any explanation justifying EVelozcity's unnecessary delay in

4 requesting additional time to respond to FF's factual allegations, FF is forced to

5 conclude that EVelozcity's request is simply a tactic by EVelozcity to delay this

6 case from moving forward in this Court.  This conclusion is supported by the fact

7 that FF did, as a professional courtesy, offer EVelozcity an additional week to

8 respond to the FAC, which EVelozcity rejected without reason.  Boock Decl. ¶ 10.

9 In fact, a one-week extension of time to respond was expressly approved by the very

10 case cited by EVelozcity in its Application.  App. at 2.  In *Ahanchian v. Xenon

11 Pictures, Inc.*, the Court held that the district court abused its discretion in denying a

12 one-week extension of time to respond.  *Ahanchian v. Xenon Pictures, Inc.*, 624

13 F.3d 1253, 1263 (9th Cir. 2010).  EVelozcity's suggestion that this case supports the

14 proposition that  "a 30-day extension is normally granted as a professional courtesy"

15 is misleading at best.  App. at 2.  Nowhere does the case state that a 30-day

16 extension is normal for professional courtesy.  *Ahanchian*, 624 F.3d at 1256.   In

17 fact, the court found that a one-week extension was appropriate.  *Id.* at 1263.  That is

18 the very same extension FF has offered here.

19    Moreover, EVelozcity's request for additional time comes in the context of it

20 already having had two months to review FF's substantive allegations.  Notably, the

21 FAC **removed** factual allegations from the original Complaint—it did not add a

22 single allegation against EVelozcity.  Given that the original Complaint was filed on

23 January 29, 2018, if EVelozcity accepted FF's offer to extend the response date by

24 an additional week, EVelozcity would still have had over two months to review the

25 same substantive allegations prior to responding.  Even without accepting the

26 extension, EVelozcity has had a month and a half to respond to FF's claims.  Instead

27 of doing so, EVelozcity has used an *ex parte* application, a method for obtaining

28 extraordinary relief, to ask for even more time to respond to a complaint that alleges

1 | one cause of action.  EVelozcity cannot claim that this delay is in the best interests
2 | of this Court's calendar and resources.

3 | **IV.**    <u>**CONCLUSION**</u>

4 | For the foregoing reasons, the Court should deny EVelozcity's *ex parte*
5 | application.

6 |

7 | DATED:  March 22, 2018                         QUINN EMANUEL URQUHART &
8 |                                                                SULLIVAN, LLP

9 |

10 |                                                      By _____/s/ Charles K. Verhoeven_____
11 |                                                              Charles K. Verhoeven
12 |                                                              Attorneys for *Faraday&Future, Inc.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION