1  Neel Chatterjee (SBN 173985)
   *nchatterjee@goodwinlaw.com*
2  **GOODWIN PROCTER** LLP
   135 Commonwealth Drive
3  Menlo Park, California 94025
   Tel.: +1 650 752 3100
4  Fax.: +1 650 853 1038

5  Brendan E. Radke (SBN 275284)
   *bradke@goodwinlaw.com*
6  Hayes P. Hyde (SBN 308031)
   *hhyde@goodwinlaw.com*
7  **GOODWIN PROCTER** LLP
   Three Embarcadero Center
8  San Francisco, California 94111
   Tel.: +1 415 733 6000
9  Fax.: +1 415 677 9041

10 Todd A. Boock (SBN 181933)
   *tboock@goodwinlaw.com*
11 **GOODWIN PROCTER** LLP
   601 S. Figueroa Street, 41st Floor
12 Los Angeles, California 90017
   Tel.: +1 213 426 2500
13 Fax.: +1 213 623 1673

14 Attorneys for Defendant
   EVELOZCITY INC.

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18                  **WESTERN DIVISION**

19 FARADAY&FUTURE, INC.,            | Case No. 2:18-CV-00737-DMG-RAO

20        Plaintiff,                | **DEFENDANT EVELOZCITY INC.'S NOTICE OF MOTION AND**
21     v.                          | **MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP AS COUNSEL FOR PLAINTIFF FARADAY & FUTURE, INC.**
22 EVELOZCITY, INC.,

23        Defendant.

24                                  Date:      April 13, 2018
                                    Time:      10:00 a.m.
25                                  Courtroom: 8C
                                    Judge:     Hon. Dolly M. Gee
26
                                    Filed/Lodged Concurrently With:
27                                  1. Declaration of Todd A. Boock
                                    2. Declaration of Andrew Wolstan
28                                  3. Declaration of Brionna Ned
                                    4. [Proposed] Order

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT ON** April 13, 2018, at 10:00 a.m., pursuant to this Court's March 22, 2018 Minute Order (Dkt. 39), or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, United States Courthouse, located at 350 West 1st Street, Los Angeles, CA, in Courtroom 8C, before the Honorable Dolly M. Gee, Defendant EVelozcity Inc. ("Defendant" or "EVelozcity") will and hereby does move the Court for an order disqualifying the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") from representing Plaintiff Faraday & Future, Inc. ("Plaintiff" or "FF") or any other party in this matter, on the ground that Quinn has a non-waivable conflict of interest, and its representation of FF violates California Rule of Professional Conduct 3-310(E).  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place in person at Quinn's Los Angeles office on March 20, 2018.  Declaration of Todd A. Boock ("Boock Decl."), ¶ 10.

EVelozcity's motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently-filed Declarations of Todd A. Boock, Andrew Wolstan and Brionna Ned and all exhibits thereto; all other documents in the Court's file; any matters of which the Court may take judicial notice; and on such other written and oral argument as may be presented to the Court.

Dated:  March 29, 2018                    Respectfully submitted,

By: /s/ Neel Chatterjee
Neel Chatterjee
nchatterjee@goodwinlaw.com
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

1

2
Brendan E. Radke
*bradke@goodwinlaw.com*
3
Hayes P. Hyde
*hhyde@goodwinlaw.com*
4
**GOODWIN PROCTER LLP**
Three Embarcadero Center
5
San Francisco, California 94111
Tel.: +1 415 733 6000
6
Fax.: +1 415 677 9041

7
Todd A. Boock
*tboock@goodwinlaw.com*
8
**GOODWIN PROCTER LLP**
601 S Figueroa Street
9
41st Floor
Los Angeles, California  90017
10
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

11
*Attorneys for Defendant*
12
*EVELOZCITY INC.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Table of Contents**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ..................................................................... 2
      A.   EVelozcity Seeks Legal Advice from Quinn for Employee
           Mobility and Trade Secrets Issues Related to Departures from
           FF. ....................................................................................................... 2
      B.   Quinn Appears Despite an Obvious Conflict of Interest. ................... 4

III.  ARGUMENT ............................................................................................. 6
      A.   Legal Standard. .................................................................................. 6
      B.   EVelozcity Established an Attorney-Client Relationship With
           Quinn. ................................................................................................. 8
      C.   A Substantial Relationship Exists Here to Quinn's Prior Work. ........ 10
      D.   Quinn Should be Vicariously Disqualified Because Ethical Walls
           Are Insufficient Here. ....................................................................... 12
      E.   FF Will Suffer No Prejudice Due to Quinn's Disqualification. ......... 14

IV.   CONCLUSION ......................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beltran v. Avon Products, Inc.*,
    867 F. Supp. 2d 1068 (C.D. Cal. 2012).............................................................14

*Castaneda v. Superior Court*,
    237 Cal.App.4th 1434 (2015)....................................................*passim*

*Civil Serv. Comm'n v. Superior Court*,
    163 Cal.App.3d 70 (1984) ...............................................................12

*In re Cty. of Los Angeles*,
    223 F.3d 990 (9th Cir. 2000) ...........................................................7

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135 (1999).............................................................*passim*

*Dill v. Superior Court*,
    158 Cal.App.3d 301 (1984) ............................................................13

*Farris v. Fireman's Fund Ins. Co.*,
    119 Cal.App.4th 671 (2004) ...........................................................11

*Flatt v. Superior Court*,
    9 Cal. 4th 275 (1994)........................................................6, 7, 8, 12

*Fujitsu Ltd. v. Belkin Intern., Inc.*,
    No. 10-CV-03972-LHK, 2010 WL 5387920 (N.D. Cal. Dec. 22,
    2010) .......................................................................................7

*H. F. Ahmanson & Co. v Salomon Bros., Inc.*,
    229 Cal.App.3d 1445 (1991) .......................................................7, 11

*Henriksen v. Great American Savings & Loan*,
    11 Cal.App.4th 109 (1992) ........................................................12, 13

*Hitachi, Ltd. v. Tatung Co.*,
    419 F. Supp. 2d 1158 (N.D. Cal. 2006)...............................................13

*ITC Textile Ltd. v. J.C. Penney Co. Inc.*,
    No. CV12-2975-DMG(FFMx), 2013 WL 12130554 (C.D. Cal. Dec.
    6, 2013) ........................................................................................................ 9, 10

*Kirk v. First American Title Ins. Co.*,
    183 Cal.App.4th 776 (2010) ...................................................................... 13, 14

*In re Muscle Improvement, Inc.*,
    437 B.R. 389 (C.D. Cal. 2010) ........................................................................ 9

*Signature MD, Inc. v. MDVIP, Inc.*,
    No. CV 14-5453-DMG, 2015 WL 12781603 (C.D. Cal. Jan. 20,
    2015) .......................................................................................................... 11, 12

*In re Tevis*,
    347 B.R. 679 (9th Cir. 2006) ........................................................................... 8

*U.S. v. Wunsch*,
    84 F.3d 1110 (9th Cir. 1996) ........................................................................... 7

**Statutes**

Code Civ. Proc., § 128, subd. (a)(5) ...................................................................... 7

**Other Authorities**

California Rule of Professional Conduct 3-310(E) ........................................... 7, 11

Central District Local Rule 7-3 ............................................................................... 5

Local Rule 83-3.1.2 ................................................................................................. 7

## I.     **INTRODUCTION**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") has a significant non-waivable conflict and should be disqualified from representing Faraday & Future, Inc. ("FF") in this case.  The facts here are a textbook example of a case warranting disqualification.  Quinn established an attorney-client relationship with defendant EVelozcity Inc. ("EVelozcity") and obtained confidential information from EVelozcity directly related to this case.  Among other issues, Quinn provided legal advice on the following topics:

- how EVelozcity planned to set up and onboard new employees to abide by the law and FF employment contracts;
- how EVelozcity could mitigate the risk of a potential lawsuit by FF;
- strategies pertaining to potential claims by FF for misappropriation of trade secrets and violation of the non-solicitation agreements;
- the likelihood and risk of FF seeking injunctive relief;
- FF's potential claims for damages; and
- a litigation budget for a potential trade secrets misappropriation and employee mobility dispute.

Declaration of Andrew Wolstan ("Wolstan Decl."), ¶¶ 3, 4, 15.

Quinn now seeks to represent FF against EVelozcity in the exact same matter on the exact same issues.  The California Rules of Professional Conduct and California case law require that the Court disqualify Quinn immediately.

Quinn has been entirely dismissive of this obvious conflict.  Quinn inaccurately claims its consultations with EVelozcity were informal discussions where no confidential information or legal advice was exchanged.[1]  A simple review

---

[1] Ironically, FF previously demanded that EVelozcity in-house counsel Andrew Wolstan have no involvement in this litigation, due to a supposed conflict FF claims was caused by his prior employment as in-house counsel at FF.  Mr. Wolstan left FF long before this litigation was filed.  Nonetheless, EVelozcity immediately complied with the request and "walled off" Mr. Wolstan to avoid any appearance of impropriety.  Declaration of Brionna Ned ("Ned Decl."), ¶¶ 3, 4.

of the communications demonstrates that they were entirely confidential and involved legal advice.  Quinn also incorrectly argues that walling off the communicating attorneys suffices to resolve any disqualifying conflict.  California law requires complete disqualification of the entire firm, as an ethical wall is insufficient when an attorney switches sides in the same matter.

## II.   FACTUAL BACKGROUND

### A.   EVelozcity Seeks Legal Advice from Quinn for Employee Mobility and Trade Secrets Issues Related to Departures from FF.

EVelozcity sought and obtained confidential legal advice from Quinn associated with a potential representation.  As of December 2017, EVelozcity had hired certain former FF employees.  Some of those employees had acrimonious departures from FF.  EVelozcity was considering hiring additional former FF employees in the future and wanted to understand the legal implications of doing so. EVelozcity's in-house counsel, Andrew Wolstan, wanted to ensure EVelozcity abided by the law and did not run afoul of any legal obligations the employees had with FF or any other company.  Wolstan Decl., ¶ 5.

Mr. Wolstan is a corporate lawyer without the background to advise EVelozcity on complex employment and intellectual property issues.  *Id.* at ¶ 6.  On or about December 7, 2017, Mr. Wolstan contacted Quinn associate Jack Baumann, to discuss retaining Quinn to provide legal advice regarding trade secret and employee mobility issues.[2]  *Id.* at ¶¶ 7, 14, Exhibit A (Email between Baumann and Wolstan).  Quinn and Mr. Wolstan then communicated regarding the risks and defensive strategies related to claims FF may bring in potential litigation for alleged trade secrets misappropriation and employee mobility issues.  *Id.* at ¶ 8.  After the call, Mr. Baumann sent an email to Mr. Wolstan, attaching Quinn materials related

---

[2] Mr. Baumann's December 7, 2017 email to Mr. Wolstan references a call "this morning."  Wolstan Decl., Ex. A.  However, Mr. Wolstan's phone records reflect a call that lasted eight (8) minutes and occurred on December 8, 2017.  Wolstan Decl., ¶ 7.

1   to litigating employee mobility and trade secret issues, and providing the potential

2   ranges of legal fees for such a case by FF against EVelozcity. *Id*, at ¶¶ 9, 14, Ex. A.

3   Mr. Baumann also set up a conference call with Mr. Wolstan and Quinn partner

4   Diane Cafferata, "who would be a great fit for [the]case."[3]  "The case" in Mr.

5   Baumann's email *referred to a potential lawsuit by FF against EVelozcity*. *Id*. at ¶

6   10.

7           During the afternoon of December 12, 2017, Mr. Wolstan, Mr. Baumann, and

8   Ms. Cafferata engaged in a lengthy and in-depth conference call.  The call lasted

9   approximately forty-three (43) minutes. *Id*. at ¶ 11.  In the call, Mr. Wolstan

10  provided Quinn with confidential and privileged information related to EVelozcity's

11  onboarding process, contractual agreements with and notices to employees, hiring

12  intentions, product plans (that the company planned to produce and market electric

13  cars), efforts to avoid and prevent the use of FF trade secrets at EVelozcity, FF's

14  employee agreements and concerns regarding potential litigation by FF. *Id*.  Ms.

15  Cafferata and Mr. Baumann provided advice, analysis and strategies related to these

16  topics. *Id*. at ¶¶ 11, 15.

17          The following day, December 13, 2017, Mr. Baumann copied Ms. Cafferata

18  on an email to Mr. Wolstan providing legal advice regarding employee mobility and

19  misappropriation of trade secrets *that was specific to former FF employees joining*

20  *EVelozcity*. *Id*. at ¶¶ 12, 14, Ex. A.  The advice contained explicit references to

21  FF's employee agreements and the merits of any claims of solicitation of FF

22  employees by EVelozcity, including the enforceability of the FF non-solicitation

23  agreements, as well as potential counterarguments FF might raise. *Id*. at ¶¶ 13, 14,

24  Ex. A.  After providing a risk analysis and examining potential damages FF might

25  seek, including compensatory damages and injunctive relief, Mr. Baumann wrote,

---

[3] Quoted portions from these communications do not include privileged discussions, and EVelozcity expressly does not waive attorney-client privilege or work product by disclosing these non-privileged portions.  The full correspondence has been submitted for *in camera* review.

1    "We'd love to work with you. . . ." [4]  *Id.* at ¶ 14, Ex. A.

2         Irell & Manella LLP ("Irell") sent EVelozcity and several former FF

3    employees cease and desist letters on January 26, 2018. *Id*. at ¶ 16.  Several days

4    later, Irell notified Mr. Wolstan that, because he had worked previously for FF as a

5    lawyer, it was their view that he could not work on this matter adverse to FF. *Id*. at

6    ¶ 17, Ex. B.  EVelozcity immediately walled Mr. Wolstan off from any activity

7    related to this matter, even though he had not done any work while at FF related to

8    EVelozcity or this litigation.  Ned Decl., ¶¶ 3,4.

9         Irell filed FF's original complaint against EVelozcity on January 29, 2017

10   before its demanded response date.  The complaint addressed precisely the issues

11   Mr. Wolstan discussed with Quinn.  Complaint, Dkt. 1; Wolstan Decl., ¶ 14, Ex. A.

12   Specifically, the original complaint alleged that EVelozcity "improperly solicited"

13   FF employees and "stole highly valuable and proprietary FF trade secrets." *See,*

14   *e.g.,* Complaint, ¶¶ 9, 23; First Amended Complaint ("FAC"), Dkt. 25 (same).  FF is

15   also seeking damages and injunctive relief for EVelozcity's purported violation of

16   the Defend Trade Secrets Act. *See, e.g.*, FAC, ¶ 41, Prayer for Relief.

17        **B.    Quinn Appears Despite an Obvious Conflict of Interest.**

18        At approximately 8:20 pm on Friday, March 9, 2018, attorneys for Quinn

19   began filing Notices of Appearances. *See* Dkt. 21-24.  This was the first time that

20   EVelozcity became aware that Quinn was involved in the case.  Declaration of Todd

21   A. Boock ("Boock Decl."), ¶ 3.  At this point, Irell did not move to substitute Quinn

22   as counsel in the case.

23        Because of FF's questionable demand in January, Mr. Wolstan had been

24   _____

25   [4] Quinn had another privileged communication with EVelozcity on February 2, 12
     and 13, 2018, when in-house counsel Brionna Ned contacted Quinn associate Brad
26   Estes to discuss legal issues and advice related to management and operation of a
     joint defense group in this case.  Ned Decl., ¶ 5, Ex. 1 (GChat between Ms. Ned and
27   Brad Estes).  This communication occurred well after litigation had been filed on
     January 29, 2018.  Dkt. 1.  Mr. Estes was aware that Ms. Ned was employed by
28   EVelozcity, and they had previously discussed this litigation, so Mr. Estes was
     aware that the communication pertained to this matter. *Id*. at ¶ 6; Ex. 1.

walled off from the litigation.  Ned Decl., ¶¶ 3, 4.  Nevertheless, EVelozcity's counsel, Goodwin Procter, LLP ("Goodwin") learned of Quinn's discussions with Mr. Wolstan on March 13, 2018. [5]  Boock Decl., ¶ 4.  EVelozcity quickly investigated the issue and learned that Quinn was conflicted.  On March 15, 2018, Goodwin sent a letter to the Quinn attorneys of record, notifying them of the conflict and demanding that the firm withdraw as counsel.  *Id*. at ¶ 6, Ex. AA (March 15, 2018, Letter from Neel Chatterjee to Charles Verhoeven).  Later the same day, Irell sought to substitute Quinn as counsel.  Dkt. 31.  EVelozcity immediately informed Irell that Irell's filing was improper and that EVelozcity opposed any effort to substitute Quinn as counsel because of the conflict.  Boock Decl., ¶ 7, Ex. BB.

Harry Olivar, Quinn's Conflicts Counsel, responded by letter on Sunday, March 18, 2018, stating that Quinn would not withdraw as counsel and incorrectly alleging that "no privileged or confidential information [was] communicated to Quinn Emanuel attorneys."  *Id*. at ¶ 8, Ex. CC (March 18, 2018, Letter from Harry Olivar to Neel Chatterjee).  Mr. Olivar also claimed that there was no need to withdraw and that it had ameliorated the issue by "implementing ethical screening procedures walling Diane Cafferata, Jack Baumann, and Brad Estes from all timekeepers doing work on the Faraday matter."[6]  *Id*.

Immediately after receiving Mr. Olivar's email, EVelozcity's counsel requested a meet and confer, as required by Central District Local Rule 7-3.  *Id*. at ¶ 9, Ex. DD.  Mr. Olivar responded on March 19, 2018, and the parties met and conferred in person on March 20, 2018.  *Id*. at ¶ 9.  During the meet and confer discussion, the parties were unable to resolve the issue.  Mr. Olivar agreed that EVelozcity had acted promptly and that there was no delay in Goodwin's identification of the conflict issue.  *Id*. at ¶ 10.

---

[5] Goodwin learned of the GChat between Ms. Ned and Mr. Estes around the same time it learned about Quinn's consultation with Mr. Wolstan.  Boock Decl., ¶ 5.

[6] As best as EVelozcity can tell, Quinn had done nothing about the conflict before Mr. Olivar's March 18 letter.

EVelozcity first alerted the Court to the conflict issue in its *Ex Parte* Application for Extension of Time to Respond to First Amended Complaint (Dkt. 37) and Objection to Irell's Request for Withdrawal or Substitution of Attorney (Dkt. 38).  In response, the Court ordered that EVelozcity file this motion by March 29, 2018, and that the Motion would be heard on shortened time.  Dkt. 39.

## III.   ARGUMENT

### A.   Legal Standard.

The California Rules of Professional Conduct ("CRPC") prohibit attorneys from establishing an attorney-client relationship and obtaining confidential information from one party, and then representing an adverse party in a substantially related matter.  CRPC 3-310(E); *see also Flatt v. Superior Court*, 9 Cal. 4th 275 (1994).  This is precisely what happened here.  Quinn established an attorney-client relationship with EVelozcity and obtained confidential information directly related to this case, and cannot now represent adverse party FF.  Quinn has a serious, non-waivable conflict that prohibits its representation of FF in this matter.

It is axiomatic that, if there is a substantial relationship between the subject matter of an attorney's representations of two clients, there is a presumption of access to confidential information from the first representation, and disqualification from the subsequent representation is **mandatory**.  *Flatt*, 9 Cal. 4th at 283 (1994).  Disqualification is also imputed to the **entire firm**.  *Id*. (*citing Rosenfeld Construction Co. v. Superior Court*, 235 Cal.App.3d 566, 575 (1991)); *see also Castaneda v. Superior Court*, 237 Cal.App.4th 1434, 1448-50 (2015).

The court examines the communications between an attorney and a party to determine whether a party is a "client or former client" such that the attorney can be subject to disqualification for a conflict of interest.  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc*., 20 Cal. 4th 1135, 1147 (1999).  Once an attorney-client relationship has been established, a former client seeking to disqualify a

conflicted attorney need only show that "a substantial relationship" exists between the previous and current representations.  *Flatt*, 9 Cal. 4th at 283.

Even if the presumption of access to confidential information were not to apply (it does here), California Rule of Professional Conduct 3-310(E) states that an attorney "shall not, without informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member [attorney] has obtained confidential information material to the employment."[7]  When such a conflict of interest exists, "disqualification follows as a matter of course."  *H. F. Ahmanson & Co. v Salomon Bros., Inc.*, 229 Cal.App.3d 1445, 1451 (1991) ("The court does not engage in a 'balancing of the equities' between the former and current clients.  The rights and interests of the former client will prevail")[8].

A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers . . . in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."  Code Civ. Proc., § 128, subd. (a)(5); *SpeeDee Oil Change*, 20 Cal. 4th at 1145; *see also U.S. v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996).  The "paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar."  *Fujitsu Ltd. v. Belkin Intern., Inc.*, No. 10-CV-03972-LHK, 2010 WL 5387920, at *4 (N.D. Cal. Dec. 22, 2010) (citing *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal.App.4th 1422, 1428 (1999)).  The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation.

---

[7] Local Rule 83-3.1.2 of the Central District of California requires that all attorneys must comply with the professional conduct requirements of the State Bar of California; therefore, this Court must apply California state law in deciding a motion to disqualify.  *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

[8] Disqualification was denied in *Ahmanson*, due to the lack of substantial relationship between the two representations, which is not an issue in the present matter.

*Flatt*, 9 Cal. 4th at 283, 284 fn. 3 ("The paradigmatic instance of such prohibited dual representation—one roundly condemned by courts and commentators alike—occurs where the attorney represents clients whose interests are *directly* adverse in *the same litigation*." (emphasis in original)).  Pursuant to California law, attorneys who have "switched sides" in the same matter cannot be "walled off," and disqualification of the entire firm is also **mandatory**.  *Castaneda*, 237 Cal.App.4th at 1448-50.

Here, as discussed below, Quinn's attorney-client consultation with EVelozcity pertained to the *same issues* involved in Quinn's representation of FF in the litigation.  It is indisputable that the subject matter of both representations is not just substantially related (the legal standard), but *identical*.  Consequently, there is a clear presumption that Quinn had access to EVelozcity's confidential information.  Thus, disqualification of Quinn is required by California law.  And, due to Quinn switching sides in the same matter, vicarious disqualification of the entire firm is mandatory.

**B.    EVelozcity Established an Attorney-Client Relationship With Quinn.**

EVelozcity established an attorney-client relationship with Quinn when Mr. Wolstan consulted with Mr. Baumann and Ms. Cafferata.  *SpeeDee Oil Change*, 20 Cal. 4th at 1147-48 ("The fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of the lawyer, though actual employment does not result." (internal quotation omitted)).  "Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences."  *Id.* at 1148 (quoting *Novo Terapeutisk,Laboratorium A/S v. Baxter Travenol Labs., Inc.*, 607 F.2d 186, 195 (7th Cir. 1979)); *see also In re Tevis*, 347 B.R. 679, 693 (9th Cir. 2006) ("Under California law, the mere consultation with a prospective client may create a disqualifying conflict of interest for a lawyer, especially where confidential

1   information was disclosed."); *In re Muscle Improvement, Inc.*, 437 B.R. 389, 395

2   (C.D. Cal. 2010) (creditor's counsel in adversary proceeding disqualified due to two

3   retention consultations by debtor).  "[A]n attorney represents a client . . . when the

4   attorney knowingly obtains material confidential information from the client and

5   renders legal advice or services as a result."  *SpeeDee Oil Change*, 20 Cal. 4th at

6   1148; *ITC Textile Ltd. v. J.C. Penney Co. Inc.*, No. CV12-2975-DMG(FFMx), 2013

7   WL 12130554, at *3 (C.D. Cal. Dec. 6, 2013) (holding that, notwithstanding that the

8   relationship between the party and counsel "was limited in time and did not result in

9   a retainer agreement, their meeting was for the purpose of deciding whether

10   [counsel] would represent ITC in future copyright cases, involved ITC's disclosure

11   of information for that purpose, and included a discussion of the instant case.").

12       This Court's previous decision in *ITC Textile* is instructive here.  In the case,

13   ITC's president met with attorney Doniger to discuss whether Doniger's law firm

14   would represent ITC in potential copyright infringement cases.  2013 WL

15   12130554, at *2.  During the meeting, Doniger gave advice regarding copyright

16   registration after ITC disclosed the way it registers its copyrights.  *Id.*  ITC's

17   president later contended that he shared confidential information with Doniger "for

18   the sole purpose of seeking legal advice and discussed with Doniger every potential

19   copyright infringement matter ITC could pursue in the future, including the instant

20   action. . . ."  *Id.*  No retainer agreement was ultimately signed, and Doniger's firm

21   then attempted to represent the opposing party in litigation.  *Id.* at *1-2.  Although

22   Doniger claimed that he never received any confidential information, the Court

23   disqualified his firm.  *Id.* at *3 ("Notwithstanding that the relationship between ITC

24   and Doniger/Burroughs was limited in time and did not result in a retainer

25   agreement, their meeting was for the purpose of deciding whether

26   Doniger/Burroughs would represent ITC in future copyright cases, involved ITC's

27   disclosure of information for that purpose, and included a discussion of the instant

28   case.").

Like *ITC Textile*, EVelozcity and Mr. Wolstan sought legal advice from Mr. Baumann and Ms. Cafferata and divulged confidential EVelozcity information.  The meetings were "for the purpose of deciding whether [Quinn] would represent [EVelozcity]" adverse to FF, involved disclosure of information for that purpose, and included a discussion of the instant case.

The communications between EVelozcity's counsel and Quinn go well beyond the type of disqualifying "briefest conversation" discussed in *SpeeDee Oil Change*, 20 Cal. 4th at 1147-48.  Mr. Wolstan sought and obtained Quinn's advice regarding FF trade secret and employee mobility issues, which are at the heart of the current litigation.  He provided confidential and privileged information related to EVelozcity's efforts to ensure its employees complied with their legal obligations – including EVelozcity's onboarding process, contractual agreements, hiring, product plans, efforts to avoid any FF trade secrets at EVelozcity, and concerns regarding potential litigation by FF.  Quinn provided EVelozcity with detailed legal advice, a litigation cost estimate, and a risk assessment.  Mr. Baumann and Ms. Cafferata knowingly obtained material confidential to EVelozcity's defense against FF in order to render such legal opinions; they were fully aware that Mr. Wolstan sought Quinn's counsel "with a view to retention" as evidenced by Mr. Baumann's statements that Quinn "would love to work with you" and that Ms. Cafferata "would be a great fit for [the] case."  Wolstan Decl., ¶ 14, Ex. A.  Though EVelozcity did not ultimately retain Quinn, its relationship as a prospective client remained as did Quinn's "duty to preserve [client] confidences continue[d] after the attorney's services end[ed]." *SpeeDee Oil Change*, 20 Cal. 4th at 1147.

### C.    A Substantial Relationship Exists Here to Quinn's Prior Work.

As described above, the legal and factual issues in Quinn's representation of EVelozcity are *identical* to those in its representation of FF.  EVelozcity provided confidential and privileged information to Quinn on the very same matters at issue

1    in this litigation regarding the very same party which it now seeks to represent

2    against EVelozcity. This squarely violates Rule 3-310(E). Mr. Baumann's email

3    makes clear that Mr. Wolstan sought to retain Quinn in matters adverse to FF,

4    centering on the trade secret misappropriation and employee mobility issues at the

5    core of this litigation. EVelozcity was not seeking general advice pertaining to

6    unspecified employees – it was seeking legal advice on how to follow the law,

7    protect itself and mitigate risk as to potential (now actual) claims made by FF.

8         These circumstances plainly meet the requirements of California law, which

9    dictate that only a *substantial relationship* needs to exist between the prior and

10   present representations to merit disqualification. Specifically, after determining that

11   an attorney-client relationship exists, a court must then determine whether a

12   substantial relationship exists between the former and successive representations so

13   as to preclude a lawyer's representation of the successive client. *Ahmanson*, 229

14   Cal.App.3d at 1452. A court assessing whether a substantial relationship exists

15   between two representations examines "the factual and legal issues involved in the

16   representations." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal.App.4th 671, 681

17   (2004) (citing *Jessen v. Hartford Casualty Ins.Co.*, 111 Cal.App.4th 698 (2003)).

18   Successive representations are "substantially related" where "the information

19   acquired during the first representation [is] material to the second," and is "directly

20   at issue in, or [has] critical importance to, the second representation." *Id.* That is,

21   representations are "substantially related" where "the evidence before the trial court

22   supports a rational conclusion that information material to the evaluation,

23   prosecution, settlement, or accomplishment of the former representation given the

24   factual and legal issues is also material to the evaluation, prosecution, settlement, or

25   accomplishment of the current representation given it's factual and legal issues."

26   *Signature MD, Inc. v. MDVIP, Inc.*, No. CV 14-5453-DMG (SSx), 2015 WL

27   12781603, at *1 (C.D. Cal. Jan. 20, 2015) (quoting *Jessen*).

28        Courts have deemed these standards to have been met where there is

considerably less overlap than in this case.  For instance, in *Signature MD*, a concierge medicine membership program (Signature) sued a competitor (MDVIP) for antitrust violations.  *Id.* at *2.  Between 2008 and 2012, law firm Duane Morris represented MDVIP in a separate trade secrets and tortious interference with contractual relations matter.  *Id.*  Duane Morris attempted to represent Signature in the antitrust case.  *Id.*  Both cases "focused on MDVIP's practices of recruiting and engaging physicians in its concierge medicine program."  *Id.*.  As MDVIP had shared evidence and information pertinent to those issues with Duane Morris, this Court found that there was a conflict with the representations.  *Id*. at *3.

Quinn cannot credibly argue that a substantial relationship does not exist here.  The facts are the same, the legal issues are the same.  Quinn cannot claim otherwise.  Where, as here, a party has established a substantial relationship between the representations, "access to confidential information . . . is *presumed* and disqualification . . . is mandatory; indeed, disqualification extends vicariously to the entire firm."  *Flatt*, 9 Cal. 4th at 283.  Accordingly, the Court must disqualify Quinn.

### D.   Quinn Should be Vicariously Disqualified Because Ethical Walls Are Insufficient Here.

Where an attorney is disqualified due to his prior representation of the opposing side during the same lawsuit, "the entire law firm is vicariously disqualified as well."  *Henriksen v. Great American Savings & Loan*, 11 Cal.App.4th 109, 114-16 (1992) (rejecting ethical wall solution to the conflict of interest); *see also Castaneda*, 237 Cal.App.4th at 1448-50 ("[V]icarious disqualification is *mandatory* in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case" (emphasis in original)).  A court must disqualify an attorney and his or her entire firm when, as here, the lawyer switches sides in an ongoing dispute.  *See Civil Serv. Comm'n v. Superior Court*, 163 Cal.App.3d 70, 80 (1984) (counsel may not

1    represent a party "on precisely the same matter" as to which it had previously

2    advised the party's adversary); *Dill v. Superior Court*, 158 Cal.App.3d 301, 306

3    (1984) (lawyer's previous involvement on opposite side of identical action

4    compelled disqualification of entire firm).  This rule of vicarious disqualification is

5    strictly applied.  *See, e.g. Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1164

6    (N.D. Cal. 2006) (vicarious disqualification is "the established law in California").

7         The confidential information obtained by Mr. Baumann and Ms. Cafferata

8    from Mr. Wolstan is imputed by law to all lawyers at Quinn.  Quinn seeks to

9    represent FF on matters identical to those for which EVelozcity sought legal advice

10   from Mr. Baumann and Ms. Cafferata.

11        Quinn claimed in its March 18 letter and during the meet and confer that it

12   can implement an ethical wall to save its improper representation of FF.  Boock

13   Decl., ¶¶ 8-10, Ex. CC.  Quinn's argument is wrong because disqualification of the

14   entire firm is proper whether or not Quinn implemented an ethical screen.

15        The case law is clear that imputed disqualification is mandatory when an

16   attorney receives confidential information and then represents the opposing party in

17   a dispute.  *See, e.g., Castaneda*, 237 Cal.App.4th at 1448-50; *Henriksen*, 11

18   Cal.App.4th at 114-15.  FF will likely rely upon *Kirk v. First American Title Ins.*

19   *Co.*, 183 Cal.App.4th 776 (2010), to claim that an ethical screen would be allowed

20   in a substantially related matter.  However, this argument was expressly rejected in

21   *Castaneda*, which held, "no ethical wall could overcome the imputation of shared

22   knowledge when an attorney who formerly represented – and therefore possessed

23   confidential information regarding – a party switched sides in the same case."

24   *Castaneda*, 237 Cal.App.4th at 1449.  In *Castaneda*, a judicial officer received

25   confidential information from a party while presiding over a settlement conference,

26   and that officer subsequently joined a law firm representing the opposing party.  *Id.*

27   at 1438-39.  The Court ruled that both the officer and his firm were disqualified

28   from representing the opponent, "regardless of the efficacy of the screening

procedures established by the law firm." *Id*. at 1438.

The Court in *Castaneda* also clarified the ruling in *Kirk*:

> That law could be described as a two-part rule: First, a case-by-case analysis on whether ethical screening would be permissible based on the circumstances present in the case and the policy interests implicated and second, an exception providing that vicarious disqualification is *mandatory* in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case.

*Id*. at 1448 (citing *Kirk*, 183 Cal.App.4th at 800) (emphasis in original).

Although EVelozcity's consultation with Quinn was pre-litigation, it concerned exactly the same parties, matters and events at issue in the lawsuit, and it concerned the anticipated lawsuit itself. It is the "same case," and vicarious disqualification is mandatory.

**E.     FF Will Suffer No Prejudice Due to Quinn's Disqualification.**

While prejudice to the nonmoving party may be considered when determining whether disqualification is appropriate, extreme prejudice or delay must be shown. There is minimal or no prejudice when disqualification occurs early in a case and the opposing party promptly takes action. *See, e.g., Beltran v. Avon Products, Inc.*, 867 F. Supp. 2d 1068, 1084 (C.D. Cal. 2012) (disqualification motion granted when action was in early stages of litigation, parties had not engaged in any significant discovery, and company had promptly moved to disqualify counsel).

FF will not suffer any prejudice should the Court disqualify Quinn, as this matter is in its very early stages, the pleadings are not settled, and there has been no significant discovery. In fact, Quinn was apparently just retained by FF and first appeared in the case on March 9, 2018. Irell remains counsel of record, and the Court has not ordered its withdrawal. Dkt. 39. FF can continue with this matter with Irell, which is very familiar with the case, or another law firm of its choosing.

## IV.   CONCLUSION

Quinn has an insurmountable, non-waivable conflict of interest with EVelozcity in connection with its attempted representation of FF.  Quinn received material, confidential information from EVelozcity that is substantially related to the instant litigation.  No ethical wall or screening can remedy this conflict.  For the foregoing reasons, EVelozcity respectfully requests this Court disqualify Quinn from representing FF in this matter.

Dated:   March 29, 2018                         Respectfully submitted,

By: /s/ Neel Chatterjee
Neel Chatterjee
*nchatterjee@goodwinlaw.com*
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brendan E. Radke
*bradke@goodwinlaw.com*
Hayes P. Hyde
*hhyde@goodwinlaw.com*
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Todd A. Boock
*tboock@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 S Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

*Attorneys for Defendant*
*EVELOZCITY INC.*