Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025-1105
Tel.: +1 650.752.3100
Fax.: +1 650.853.1038

Brendan E. Radke (SBN 275284)
bradke@goodwinlaw.com
Hayes P. Hyde (SBN 308031)
hhyde@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Todd A. Boock (SBN 181933)
tboock@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

Attorneys for Defendant
EVELOZCITY INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| FARADAY&FUTURE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EVELOZCITY, INC.,<br><br>Defendant. | Case No. 2:18-CV-00737-DMG-RAO<br><br>**DECLARATION OF ANDREW WOLSTAN IN SUPPORT OF EVELOZCITY INC.'S MOTION TO DISQUALIFY QUINN EMANUEL**<br><br>Date: April 13, 2018<br>Time: 10:00 a.m.<br>Courtroom: 8C<br>Judge: Hon. Dolly M. Gee<br><br>Filed/Lodged Concurrently With:<br>1. Motion to Disqualify<br>2. Declaration of Todd A. Boock<br>3. Declaration of Brionna Ned<br>4. [Proposed] Order |

ACTIVE/94595422.4

I, Andrew Wolstan, declare as follows:

1. I am In Charge of Legal for Defendant EVelozcity Inc. ("EVelozcity"). I make this declaration based upon matters within my own personal knowledge and if called as a witness, I could and would competently testify to the matters set forth herein.

2. I make this declaration in support of EVelozcity's Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") as Counsel for Plaintiff Faraday & Future, Inc. ("FF").

3. In December 2017, on behalf of EVelozcity, I consulted with Quinn for the purpose of potential retention related to trade secret and employee mobility issues, because EVelozcity had hired, and was considering hiring, certain former FF employees. During my calls with Quinn, I provided confidential and privileged information related to these issues.

4. During my email and telephonic consultation, I received legal advice on the following topics: (1) how EVelozcity planned to set up and onboard new employees to abide by the law and FF employment contracts; (2) how EVelozcity could mitigate the risk of a potential lawsuit by FF; (3) strategies pertaining to potential claims by FF for misappropriation of trade secrets and violation of the non-solicitation agreements; (4) the likelihood and risk of FF seeking injunctive relief; (5) FF's potential claims for damages; and (6) a litigation budget for a potential trade secrets misappropriation and employee mobility dispute.

5. As of December 2017, EVelozcity had hired certain former FF employees. Some of those employees had acrimonious departures from FF. EVelozcity was considering hiring additional former FF employees in the future and wanted to understand the legal implications of doing so. EVelozcity wanted to ensure it abided by the law and did not run afoul of any legal obligations the employees had with FF or any other company.

6. I am a corporate lawyer, and I do not have the background to advise EVelozcity on complex employment or trade secret issues.

7. On December 7, 2017, on behalf of EVelozcity, I called Quinn associate Jack Baumann regarding Quinn's experience litigating trade secret and employee mobility issues. Although Mr. Baumann's December 12, 2017 email references a call "this morning," my phone records reflect a call that occurred on December 7, 2018 and lasted eight (8) minutes.

8. Mr. Baumann and I discussed claims FF could bring in a potential litigation for alleged trade secrets misappropriation and employee mobility issues.

9. On December 12, 2017, Mr. Baumann sent me an email, attaching Quinn materials related to litigating employee mobility and trade secret issues, and providing the potential ranges of legal fees for such a case by FF against EVelozcity.

10. Mr. Baumann also set up a conference call with me and Quinn partner Diane Cafferata, "who would be a great fit for [the]case."[1] Based on our discussions, "the case" in Mr. Baumann's email referred to a potential lawsuit by FF against EVelozcity.

11. During the afternoon of December 12, 2017, beginning at approximately 4:30 p.m., Mr. Baumann, Ms. Cafferata and I engaged in a lengthy and in-depth conference call. The call lasted approximately 43 minutes, according to my phone records. In the call, I provided Quinn with confidential and privileged information related to EVelozcity's onboarding process, contractual agreements with and notices to employees, hiring intentions, product plans (that the company planned to produce and market electric cars), efforts to avoid and prevent the use of

---

[1] Quoted portions from these communications do not include privileged discussions, and EVelozcity expressly does not waive attorney-client privilege or work product by disclosing these non-privileged portions. The full correspondence has been submitted for *in camera* review.

FF trade secrets at EVelozcity, FF's employee agreements and concerns regarding potential litigation by FF. Ms. Cafferata and Mr. Baumann provided advice, analysis and strategies related to these topics.

12. On December 13, 2017, Mr. Baumann copied Ms. Cafferata on an email to me, providing legal advice regarding employee mobility and misappropriation of trade secrets that was specific to former FF employees joining EVelozcity.

13. The advice in Mr. Baumann's December 13, 2017 email contained explicit references to FF employee agreements and the merits of any claims of solicitation of FF employees by EVelozcity, including the enforceability of the FF non-solicitation agreements, as well as potential counterarguments FF might raise. After providing a risk analysis and examination of relief FF might seek, including compensatory damages and injunctive relief, Mr. Baumann wrote, "We'd love to work with you. . . ."

14. Concurrently submitted for *in camera* review and referenced as Exhibit A is a true and correct copy of the email correspondence between me, Mr. Baumann and Ms. Cafferata on December 12 and 13, 2017.

15. I consulted with Quinn on December 12 and 13, 2017 for the purpose of potentially retaining the firm to represent EVelozcity as to the trade secrets and employee mobility issues described above, as well as potential litigation by FF. I was very open and candid during my discussion with Mr. Baumann and Ms. Cafferata, and I provided them with privileged and confidential information with the understanding that our discussions would remain privileged and confidential. I would not have had these discussions with them if I knew that Quinn would later accept representation of FF in the same case. EVelozcity decided not to hire Quinn to represent it initially, and I was surprised to learn that Quinn is attempting to represent FF in this litigation.

16. Irell & Manella LLP ("Irell") sent EVelozcity and several former FF employees cease and desist letters on January 26, 2018.

17. On January 30, 2018, I received from Irell a letter notifying me that, because I had worked previously for FF as a lawyer, it was their view that I could not work on this litigation matter adverse to FF. While I was employed by FF, I did not perform any work related to EVelozcity or any potential litigation by FF against EVelozcity. Attached hereto as Exhibit B is a true and correct copy of Irell attorney Iian Jablon's January 30, 2018 correspondence to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of March, 2018.

/s/ _____
Andrew Wolstan