JAMES D. GATTA
(admitted *pro hac vice*)
*JGatta@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax.: 212.355.3333

ANDREW KIM (SBN 288925)
*AndrewKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.346.4000
Fax.: 202.346.4444

Attorneys for Defendant:
EVelozcity, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| FARADAY&FUTURE, INC.<br><br>Plaintiff,<br><br>v.<br><br>EVELOZCITY, INC.,<br><br>Defendant. | Case No. 2:18-cv-00737-DMG-RAO<br><br>**DEFENDANT EVELOZCITY, INC.'S POST-HEARING MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY**<br><br>Date: April 27, 2018<br>Time: 10:00 a.m.<br>Courtroom: 8C<br>Judge: Hon. Dolly M. Gee |

# **TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ...................................................................................................1

**ARGUMENT**..........................................................................................................2

I.    EVelozcity provided Quinn with confidential information material to potential claims against EVelozcity. ............................................................2

II.   Quinn received confidential information concerning nonsolicitation agreements and gave tailored advice concerning those agreements. ........5

III.  Quinn received confidential information concerning EVelozcity's operations and its leadership. ........................................................................7

IV.  This Court should disqualify Quinn from representing Faraday & Future because a confidential attorney-client relationship between EVelozcity and Quinn can be inferred. .......................................................8

**CONCLUSION** ....................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Chugach Elec. Ass'n v. U.S. Dist. Ct. for the Dist. of Alaska*,
   370 F.2d 441 (9th Cir. 1966) .................................................................................. 3

*EEOC v. Peters' Bakery*,
   No. 13-cv-04507, 2014 WL 7272943 (N.D. Cal. Dec. 22, 2014) ......................... 8, 9

*Haagen-Dazs Co. v. Perche No! Gelato, Inc.*,
   639 F. Supp. 282 (N.D. Cal. 1986) ......................................................................... 3

*Laryngeal Mask Co. v. Ambu A/S*,
   No. 07-cv-1988, 2008 WL 558561 (S.D. Cal. Feb. 25, 2008) ................................ 2

*Li v. A Perfect Day Franchise*,
   No. 11-cv-1189, 2011 WL 4635176 (N.D. Cal. Oct. 5, 2011) ........................ 3, 4, 8

*Zalewski v. Shelroc Homes LLC*,
   856 F. Supp. 2d 426 (N.D.N.Y. 2012) .................................................................... 8

**California Cases**

*Allstate Home Loans, Inc. v. Vasquez*,
   No. G034320, 2005 WL 798189 (Cal. Ct. App. Apr. 7, 2005) ....................... 5, 9, 10

*In re Marriage of Zimmerman*,
   16 Cal. App. 4th 556 (1993) .......................................................................... 2, 6, 8, 9

*Med-Trans Corp. v. City of Cal. City*,
   156 Cal. App. 4th 655 (2007) ................................................................................. 6

*People v. Clark*,
   50 Cal. 3d 583 (1990) ............................................................................................. 7

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
   20 Cal. 4th 1135 (1999) ................................................................................. 6, 7, 10

*Responsible Citizens v. Superior Court*,
   16 Cal. App. 4th 1717 (1993) ................................................................................. 1

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ................................................................................. 3

*Venture Law Grp. v. Superior Court*,
 118 Cal. App. 4th 96 (2004) ................................................................................. 7

*Zizzo v. Superior Court*,
 Nos. D062255, D062467, 2013 WL 313916
 (Cal. Ct. App. Jan. 28, 2013) ............................................................................. 10

# DEFENDANT EVELOZCITY, INC.'S POST-HEARING MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY

## INTRODUCTION

Quinn Emanuel Urquhart & Sullivan ("Quinn") should be disqualified from participating in this case because its attorneys received confidential information material to this case during a December 12, 2017 call ("December 12 Call") with Andrew Wolstan, EVelozcity, Inc.'s general counsel, and dispensed legal advice after receiving that information. The confidential communications concerned three topics: (1) EVelozcity's onboarding and recruitment procedures; (2) nonsolicitation claims that EVelozcity and its employees feared Faraday & Future could potentially pursue; and (3) details concerning the company's operations and management that had not been public at the time of the call. Had Quinn been hired to represent EVelozcity, it could have used this information to shape EVelozcity's defense against claims brought by Faraday & Future. As counsel for Faraday & Future, Quinn is now positioned to do precisely the opposite, and it may very well attack the very information that it would have used to defend EVelozcity were it on the other side. That is the anomalous result the disqualification rules were meant to prevent.

Although Mr. Wolstan's *actual* disclosure of confidential information is enough to disqualify Quinn, the firm should be disqualified because the circumstances presented give rise to a strong *inference* of disclosure of such information. Neither Diane Cafferata nor Jack Baumann, the two Quinn attorneys on the December 12 Call, did anything to disabuse Mr. Wolstan of the notion that there was an incipient attorney-client relationship.[1] Nor did they attempt to dissuade him from sharing confidential information; to the contrary, Ms. Cafferata asked factual questions,

---

[1] 4/27/18 Sealed Tr. ("Tr.") 61:5-8 (Baumann); 66:21-67:1 (Cafferata). Whether Ms. Cafferata *thought* it was unnecessary to provide caution (*see* Tr. 66:23-67:6), is completely irrelevant to the disqualification analysis. Clients are not expected to be clairvoyants—the existence of an attorney-client relationship depends on conduct that is outwardly manifested, as perceived by a reasonable person in the prospective client's shoes. *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1733 (1993).

1

proposed legal strategies based on confidential facts, and directed Mr. Baumann to provide legal research. These are actions taken by lawyers who have "become heavily involved in the facts of a particular matter," rather than lawyers who enter "briefly on the periphery." *In re Marriage of Zimmerman*, 16 Cal. App. 4th 556, 564 (1993). And when an attorney is "heavily involved" with a prospective representation, the disclosure of confidential information is reasonably inferred.[2]

## ARGUMENT

### I. EVELOZCITY PROVIDED QUINN WITH CONFIDENTIAL INFORMATION MATERIAL TO POTENTIAL CLAIMS AGAINST EVELOZCITY.

Mr. Wolstan testified that EVelozcity adopted certain onboarding and recruitment procedures designed specifically for the purpose of shielding the company from claims of trade-secrets misappropriation. Tr. 14:8-12; 21:6-25. EVelozcity utilizes a checklist-screening procedure that ensures no employee is importing confidential information from a former employer. Tr. 13:6-9. That checklist was designed with the advice of counsel, and its existence is not publicly known. Tr. 13:21-25, 14:13-16. The public is also unaware of EVelozcity's use of a third-party recruitment firm that discreetly solicits prospective candidates for employment on EVelozcity's behalf—an individual candidate does not know of EVelozcity's role until after a nondisclosure agreement is signed. Tr. 18:9-21, 19:1-3.

During the December 12 Call, Mr. Wolstan informed Ms. Cafferata and Mr. Baumann about both confidential procedures, procedures that are material to potential claims against EVelozcity. Tr. 13:6, 18:7-10. The confidential checklist procedure guards against a potential trade secrets claim because it informs whether EVelozcity

---

[2] For the reasons stated in EVelozcity's previously filed memoranda of law in support of its Motion to Disqualify, Ms. Cafferata and Mr. Baumann's knowledge must be imputed to (and thus disqualifies vicariously) the entirety of the Quinn law firm. Dkt. No. 59, at 21-22; *see Laryngeal Mask Co. v. Ambu A/S*, No. 07-cv-1988, 2008 WL 558561, at *7 (S.D. Cal. Feb. 25, 2008) (doubting whether California law allows ethical walls to serve as a substitute for vicarious qualification and noting that, in any event, walls are inadequate when one firm tries to represent both sides in the same litigation).

2

had access to trade secrets—a critical ingredient of any trade-secrets case.[3] *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 227-28 (2010) ("requisite 'knowledge of the trade secret'" and access are of "primary concern"). And the use of a third-party recruitment firm is material to whether EVelozcity (or certain EVelozcity employees) would be subject to claims of breaching nonsolicitation agreements.

An attorney's knowledge of company policies like those shared with Quinn is a classic reason for disqualifying that attorney from litigating a case that could implicate such policies against the company that drafted them. *See, e.g.*, *Haagen-Dazs Co. v. Perche No! Gelato, Inc.*, 639 F. Supp. 282, 284 (N.D. Cal. 1986) (attorney with *potential* access to Haagen-Dazs's distribution policies and marketing strategy disqualified in an antitrust case about Haagen-Dazs's distribution policies). Prior knowledge of the internal policies of an adverse party compels disqualification because of the obvious threat such information could be used against the company in litigation, as well as the less-obvious threat that the information would, at a minimum, give the attorney an unfair advantage regarding where to look for damaging discovery. *See Chugach Elec. Ass'n v. U.S. Dist. Ct. for the Dist. of Alaska*, 370 F.2d 441, 443 (9th Cir. 1966) ("[K]nowledge of private matters gained in confidence would provide . . . a greater insight and understanding of the significance of subsequent events . . . and offer a promising source of discovery.").

---

[3] Mr. Baumann asserted that Mr. Wolstan did not tell him of "any specific practices that EVelozcity was following at the time." Tr. 59:4-6. He also testified, however, that Ms. Cafferata provided "best practices" concerning onboarding that are remarkably similar to the contents of EVelozcity's confidential policy. *Compare* Tr. 58:21-59:3 (Baumann) ("don't bring trade secrets with you," "document that you're not bringing trade secrets with you, have them check their personal accounts to make sure they're not bringing anything"), *with* Tr. 13:7-8 (Wolstan) ("checklist which would contain certain locations"), *and* Tr. 13:17-18 (Wolstan) ("places like personal e-mail addresses, cloud accounts, photos of their individual phones").

The problem with Mr. Baumann's recollection of events is that nothing supports the notion Mr. Wolstan ever solicited advice *about general onboarding*—EVelozcity had already hired another firm for that, Tr. 13:21-25—and nothing in the record shows he was looking for a second opinion. In fact, Mr. Baumann testified that the conversation was about "the types of claims [that] arise in these situations," which indicates they were well past the point of "best practices." Tr. 58:7-8

*Li v. A Perfect Day Franchise*, No. 11-cv-1189, 2011 WL 4635176 (N.D. Cal. Oct. 5, 2011), provides an apt illustration of why disqualification is required here. Although Quinn attempts to suggest that *Li* is apposite only insofar as it requires "use [of] any information that was provided to gain any sort of advantage," Dkt. 52, at 21, that is not an accurate recapitulation of the case. In *Li*, a representative from the defendant company met with a lawyer to "discuss[] labor and employment issues that arose in the course of [defendant's] business." 2011 WL 4635176, at *2. The meeting focused primarily on a visa issue, although the two "also discussed other aspects of [defendant's] business and labor and employment issues that arose as a result of its business model, including the classification and compensation of its work force and the policies and procedures that it employed with respect to its work force." *Id.* The attorney then proceeded to represent the plaintiffs in a wage-and-hour case against the defendant.

The *Li* court held that this representation was impermissible because the attorney was "exposed to [defendant's] employment policies and strategies at issue in [the] litigation." *Id.* at *4. The lawyer was therefore in "an untenable position in which [the lawyer] is now required to challenge the documents and policies and procedures about which he obtained nonpublic information from [defendant]." *Id.* Accordingly, the court inferred the transfer of confidential information from this initial consultation. *Id.* Only after making this inference did the court proceed to note that the *use* of the confidential information by plaintiffs' counsel was "[e]ven more disturbing." *Id.*

Here, Quinn is in the "untenable position" in which it may eventually have to challenge "the documents and policies and procedures" concerning EVelozcity's onboarding and recruitment, about which Ms. Cafferata and Mr. Baumann "obtained nonpublic information" from Mr. Wolstan. *Id.* Whether Quinn will actually do so is a question that this Court need not reach—the exposure to such policies is sufficiently disqualifying.

## II. QUINN RECEIVED CONFIDENTIAL INFORMATION CONCERNING NONSOLICITATION AGREEMENTS AND GAVE TAILORED ADVICE CONCERNING THOSE AGREEMENTS.

In addition to receiving confidential information about EVelozcity's use of a third-party recruitment firm, Quinn received confidential information from Mr. Wolstan about the terms of a specific nonsolicitation provision that could potentially expose EVelozcity and its employees to liability. Tr. 21:12-25. Mr. Wolstan shared facts about when the nonsolicitation provision had been agreed to by certain employees, Tr. 17:20-24, and strategic concerns that "Faraday could bring a claim . . . against EVelozcity for inducing those employees to violate that nonsolicitation obligation," Tr. 21:21-25.

Ms. Cafferata and Mr. Baumann took this confidential information and provided Mr. Wolstan with particularized legal advice, further cementing the impression that the consultation gave rise to the protections of an attorney-client relationship. Ms. Cafferata asked additional details about the timing of the nonsolicitation agreement, with the goal of crafting a legal strategy based on the Defend Trade Secrets Act ("DTSA"). Tr. 17:20-21 ("Ms. Cafferata asked me when these employees would have signed these agreements . . . ."); 17:12-14 (discussion of DTSA "surrounded a potential defense that Ms. Cafferata explained might be available to either EVelozcity or one of its employees, depending on the date"). By asking questions to gain "detailed knowledge of the pertinent facts and legal principles" and by "formulat[ing] a legal strategy," Ms. Cafferata "heavily involved" herself with the facts of EVelozcity's confidential concerns and established a prospective attorney-client relationship with EVelozcity through her conversation with Mr. Wolstan. *Allstate Home Loans, Inc. v. Vasquez*, No. G034320, 2005 WL 798189, at \*9 (Cal. Ct. App. Apr. 7, 2005) (prospective client "reasonably believe[s]" attorney wants to take case when the attorney "appear[s] to formulate a legal strategy and

offer[s] her opinion about the case"). So, too, did Mr. Baumann, when he performed legal research and opined on the merits of Faraday & Future's potential claims in an email following the December 12 Call. *See* Ex. A to Wolstan Decl. at 6 ("However, to the extent that Faraday can demonstrate the non-solicitation provision was aimed at preventing tortious conduct . . . there is caselaw supporting its enforceability."); *see also People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1143 (1999) ("[W]e assume . . . that by performing legal research for Mobil, Mr. Disner represented it.").

Quinn may cling to *Zimmerman* and argue that the expression of nonpublic concerns about imminent legal action is insufficient to constitute a confidential communication, but its reliance on *Zimmerman* is misplaced.[4] The Court of Appeal's observation that the *Zimmerman* appellant "failed to show disclosure of confidential information during the preliminary consultation" despite "outlining" the case for the attorney and providing him with all "pertinent" information, *id.* at 565, must be placed into context. *Zimmerman* was a case involving the disposition of community property shared by a husband and wife. There were no "confidential disclosures . . . claimed" because there were no confidential facts to share. *Id.* Nothing about an asset known to both parties in the litigation—proceeds from a publicly funded milk diversion program—was private or confidential in nature.

Given that Ms. Cafferata and Mr. Baumann took confidential facts and concerns about nonsolicitation and offered legal advice based on those facts and in response to those concerns, they developed an attorney-client relationship with EVelozcity that now disqualifies them from representing a party that seeks to animate the very concerns Mr. Wolstan expressed during the December 12 Call.

---

[4] Any reliance on *Med-Trans Corp. v. City of California City*, 156 Cal. App. 4th 655 (2007) would be similarly misplaced. There is a qualitative difference between the information shared in that case—the decision to hire an ambulance service, which is ultimately a *business* decision—and information concerning a nonsolicitation provision that may potentially expose a party to liability. Indeed, *Med-Trans* goes so far as to clarify that its holding does not apply to "a case of a person who, in seeking to hire an attorney, shared confidences in the course of a consultation," *id.* at 669, which is what occurred here.

6

### III. QUINN RECEIVED CONFIDENTIAL INFORMATION CONCERNING EVELOZCITY'S OPERATIONS AND ITS LEADERSHIP.

Quinn received two additional pieces of confidential information that should disqualify the firm from this case. The first concerned the future plans of Stefan Krause and Ulrich Kranz: specifically, their impending service as principals of EVelozcity. Although the public knew that Mr. Krause and Kranz had an acrimonious departure from Faraday & Future, they were unaware of where the two had landed. Tr. 10:17-20 (stating that Krause affiliation with EVelozcity was not public at the time of the December 12 Call); 11:14-17 (same for Kranz). The same is true for the confidential fact that EVelozcity intended to manufacture and sell a mass market electric vehicle, one that was more accessible and affordable to consumers. Tr. 8:18-9:2. The public was unaware of EVelozcity's production plans at the time of the December 12 Call. Tr. 9:3-6.

Although Quinn now attempts to cast these facts as inconsequential because they are now publicly known, subsequent public knowledge does not absolve the ethical breach or set aside the need for disqualification. The prophylaxis of disqualification ultimately exists to protect attorney-client privilege, *SpeeDee Oil*, 20 Cal. 4th at 1146; thus, what is relevant is whether an attorney received information that was confidential *at the time it was communicated*, not whether the contents of the communication are still confidential. *See Venture Law Grp. v. Superior Court*, 118 Cal. App. 4th 96, 102 (2004) (privilege turns on "the existence of the attorney-client relationship *at the time the confidential communication was made*" (emphasis added)); *People v. Clark*, 50 Cal. 3d 583, 621 (1990) (communications rendered as part of an attorney-client relationship that were confidential at the time they were made "continued to be privileged notwithstanding the fact that they were no longer confidential at the time of trial"). The damage to EVelozcity stems not just from Quinn's knowledge of a now-publicly known fact; it is knowledge of EVelozcity's "opinions and impression" of facts that may eventually become publicly known that

"establish[es] privileged communication and if revealed, in any form or fashion, would constitute significant harm." *See Zalewski v. Shelroc Homes LLC*, 856 F. Supp. 2d 426, 436-37 (N.D.N.Y. 2012).

## IV. THIS COURT SHOULD DISQUALIFY QUINN FROM REPRESENTING FARADAY & FUTURE BECAUSE A CONFIDENTIAL ATTORNEY-CLIENT RELATIONSHIP BETWEEN EVELOZCITY AND QUINN CAN BE INFERRED.

In addition to the material confidential information that Mr. Wolstan provided Quinn, there is an additional independent reason to disqualify the firm: the facts strongly support an inference that confidential information had been disclosed.

The inference of disclosure arises not from the actual communications between a lawyer and a prospective client, but rather the "nature" of the relationship between the two, and whether "confidential information material to the current dispute *would normally have been imparted* to the attorney." *Zimmerman*, 16 Cal. App. 4th at 138 (emphasis added). The controlling inquiry is therefore a question of *how likely* it is that confidential information was disclosed. *EEOC v. Peters' Bakery*, No. 13-cv-04507, 2014 WL 7272943, at *6 (N.D. Cal. Dec. 22, 2014); *Li*, 2011 WL 46353176, at *5. In this case, the following facts (irrespective of the actual disclosures of confidential information) make it more than likely that Quinn received confidential information:

- **The subject of the consultation is also the subject of the present lawsuit.** Not all "preliminary" conversations are peripheral; a "direct professional relationship" exists when the subject of a preliminary consultation is the action in which disqualification is sought. *Peters' Bakery*, 2014 WL 7272943, at *5. Here, there is no dispute that Mr. Wolstan reached out with trade secret concerns that gave rise to this very case—indeed, he had been directed to a trade secrets lawyer, Ms. Cafferata. Dkt. 52-6, at 2.

- **Mr. Wolstan sought advice from other law firms about the same issue.** Quinn repeatedly casts Mr. Wolstan's consultation as an "audition" and a "beauty

8

contest." Tr. 26:1-5, 27:1-4, 28:18-20, 28:18-21, 42:13-15, 49:18-19, 57:4. That fact, however, *supports* an inference of disclosure. *See Peters' Bakery*, 2014 WL 7272943, at *6 (client's consultations and requests for legal advice from other law firms supports inference that confidential information was disclosed because "[o]ne can reasonably infer" that client "shared similar information" in consultation with conflicted lawyer).

- **Ms. Cafferata asked specific questions about facts that could affect a trade-secrets defense.** As explained above (at 5-6), Ms. Cafferata asked several questions that related to a defense potentially available to EVelozcity under the DTSA. Mr. Baumann does not dispute that Ms. Cafferata "asked at least some questions," Tr. 62:3, and offered nothing to dispute Mr. Wolstan's testimony as to what was asked. The likelihood of disclosure is substantially higher when a conflicted attorney actively participates by asking factual questions relating to a specific legal issue. *See Peters' Bakery*, 2014 WL 7272943, at *6; *Allstate Home Loans*, 2005 WL 798189, at *9 (asking for "information concerning . . . earnings and loss of income" indicates attorney is "heavily involved in the facts of a particular matter").

- **Mr. Baumann performed legal work after his meeting with Mr. Wolstan.** No one disputes that Mr. Baumann conducted legal research as part of his effort to woo Mr. Wolstan's business. Dkt. 52-4, at 4. As *Zimmerman* makes clear, performing legal work for a client in the hopes of retaining the case, rather than expressing disinterest, makes it more reasonable to infer the disclosure of confidential information. 16 Cal. App. 4th at 564.

- **Ms. Cafferata and Mr. Baumann provided legal advice after their meeting with Mr. Wolstan.** Perhaps the best support for an inference of disclosure comes from the fact that both Ms. Cafferata and Mr. Baumann provided their insights about the legal claims and defenses arising from Mr. Wolstan's concerns. Mr. Wolstan testified that Ms. Cafferata provided thoughts on a potential defense under

9

the DTSA based on the date of the nonsolicitation provision at issue. Tr. 17:12-14. Mr. Baumann conceded that Ms. Cafferata provided "general advice." Tr. 59:3. And Mr. Baumann's e-mail followup to Mr. Wolstan provides a frank assessment weighing the merits of certain claims and opining on potential damages "[b]ased on the facts as [Quinn] currently underst[oo]d them." Wolstan Decl. Ex. A (in camera). This is all legal advice—the sort that gives rise to an attorney-client relationship *per se*. *SpeeDee Oil*, 20 Cal. 4th at 1148 ("When a party seeking legal advice consults an attorney at law *and secures that advice*, the relation of attorney and client is established *prima facie*." (emphasis added)). While Quinn attempts to distinguish its advice as "general advice," Tr. 59:3 (Baumann), it cites no authority for the proposition that "general" advice does not contribute to the inference that confidential information was shared. Rightly so: when a lawyer provides advice—even "general legal advice"—it can reasonably be inferred that the advice is the product of confidential information, and there is no need to "inquire into the specifics of [the] communications" to show its disclosure. *Zizzo v. Superior Court*, Nos. D062255, D062467, 2013 WL 313916, at *9, *11 (Cal. Ct. App. Jan. 28, 2013); *Allstate Home Loans*, 2005 WL 798189, at *9 (when an attorney explains "the basics about how litigation works" in an effort to capture business, that explanation supports the inference of an attorney-client relationship).

## CONCLUSION

For all of the foregoing reasons, the Court should grant EVelozcity's Motion to Disqualify.

|  |  |
|---|---|
| Dated: May 4, 2018 | Respectfully submitted,<br><br>By:  /s/ James D. Gatta<br>JAMES D. GATTA<br>(admitted *pro hac vice*)<br>*JGatta@goodwinlaw.com*<br>ANDREW KIM (SBN 288925)<br>*AndrewKim@goodwinlaw.com*<br>**GOODWIN PROCTER LLP**<br><br>Attorneys for Defendant:<br>EVELOZCITY, INC. |

| | |
|---|---|
| 1 | PROOF OF SERVICE |

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is: 3 Embarcadero Center, 28th Floor, San Francisco, California 94111.

On **May 8, 2018**, I served the following documents in the manner described below:

**DEFENDANT EVELOZCITY, INC.'S POST-HEARING MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY**

| | |
|---|---|
| Harry A. Olivar, Jr<br>William C. Price<br>QUINN EMANUEL URQUHART AND SULLIVAN LLP<br>865 South Figueroa Street 10th Floor<br>Los Angeles, CA 90017-2543 | Conflicts Counsel for Plaintiff:<br>*Faraday & Future, Inc.*<br><br>Tel.: 213-443-3000<br>Fax: 213-443-3100<br>harryolivar@quinnemanuel.com<br>williamprice@quinnemanuel.com |

☑ (MAIL). By United States mail. I enclosed the document(s) in a sealed envelope or package addressed to the person(s) at the address(es) listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am employed in the county where mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **May 8, 2018**, at San Francisco, California.

| | |
|---|---|
| Gareth J. Oania | *(signature)* |
| (Type or print name) | (Signature) |