# EXHIBIT B

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, CA 90071
United States

+1 213 680 8400

www.kirkland.com

Benjamin A. Yaghoubian
To Call Writer Directly:
+1 213 680 8197
benjamin.yaghoubian@kirkland.com

Facsimile:
+1 213 680 8500

October 30, 2018

**Via Email**

James Judah, Esq.
Quinn Emanuel Urquhart and Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
jamesjudah@quinnemanuel.com

   Re: *Faraday&Future, Inc. v. EVelozcity Inc.*, Case No. 2:18-cv-00737-DMG-RAO

Dear James:

  We write regarding deficiencies in Plaintiff Faraday & Future, Inc.'s ("FF") recent discovery responses, including (1) Plaintiff Faraday & Future, Inc.'s Responses and Objections to Defendant EVelozcity Inc.'s First Set of Interrogatories and (2) Plaintiff Faraday & Future, Inc.'s Responses and Objections to Defendant EVelozcity Inc.'s First Set of Requests for Production of Documents ("RFPs").

### A. The Relevant Time Period for FF's Discovery Responses is April 1, 2014 to the Present

  FF's specific discovery responses are silent as to the time period for which FF will be producing documents and providing responsive information. Instead, FF includes a conclusory General Objection to the Relevant Time Period as defined by EVelozcity (*i.e.*, April 1, 2014 to present). For a host of reasons, FF's general objection, which lacks any purported justification, is improper, without merit, and not a sufficient basis for FF to withhold relevant and responsive documents and information or to limit production to an arbitrarily narrow period of January 1, 2017 to January 29, 2018.

  As an initial matter, FF has put at issue in this case documents and information dating back to 2014. For example, FF alleges that "[t]he host of trade secrets that FF has developed *since 2014* would be highly valuable to any competitor." FAC ¶ 2 (emphasis added). FAC similarly alleges that "[s]ince its formation *in 2014*, FF has invested hundreds of thousands of work hours and approximately $1 billion in developing a proprietary line of AI electric vehicles

Beijing Boston Chicago Dallas Hong Kong Houston London Munich New York Palo Alto San Francisco Shanghai Washington, D.C.

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 2

and related technology." *Id.* ¶ 17 (emphasis added). Moreover, FF also purports to rely upon the conduct of a number of its former employees, whose employment at FF began well before 2017, including Christoph Kuttner, Charlie Spencer, Alexi Charbonneau, Stefan Grubic, Matthew Lubbers, Bill Strickland, Sohel Merchant, Richard Kim, and Nick Gronenthal. *See, e.g.*, FAC ¶¶ 25, 27, 28; FF's Resps. & Objs.' to EVelozcity's First Set of Interrogs. at 8–9. In light of FF's express reliance on alleged trade secrets dating back to 2014, EVelozcity is entitled to discovery of, among other things, FF's research and development efforts (*e.g.*, RFP Nos. 15, 17, 30), licensing and sales (*e.g.*, RFP Nos. 5, 18), and efforts to maintain secrecy (*e.g.*, RFP Nos. 3, 4, 10) during this period of time. Accordingly, please confirm that FF will produce documents and information in response to EVelozcity's discovery requests for the Relevant Time Period as requested.

### B. Timing for Production

FF has agreed to produce the full scope of documents sought by RFP Nos. 3, 9, 11, 15, 30, 41, and 43. Please provide a date certain by which documents responsive to these Requests will be produced and please confirm that FF will be producing documents for the entire relevant time period, *i.e.*, from April 1, 2014 to the present.

### C. FF's Deficient RFP Responses

1. <u>FF Has Impermissibly Narrowed or Failed to Respond to RFP Nos. 1, 2, 4, 12, 13, 14, 19, 20, 24, 26, 27, 29 34, and 37</u>

FF has impermissibly narrowed its offer of production to many of EVelozcity's document requests, as described further below. As an initial matter, FF has objected to many of EVelozcity's requests on the basis of breadth and/or relevance. As shown below, however, EVelozcity's discovery requests are tailored and proportional to specific allegations contained in FF's operative complaint, and FF has not tailored the scope of this case by, among other things, describing its alleged trade secrets with the appropriate level of particularity. EVelozcity is available to confer with FF regarding the scope of FF's claims and any proposal by FF to define or narrow its claims moving forward.

<u>RFP Nos. 1 and 2</u>: RFP No. 1 seeks "[a]ll DOCUMENTS and THINGS RELATED TO YOUR presence at the 2017 Las Vegas Consumer Electronics Show, including but not limited to any presentations, photographs, videos, articles, press events, VIP events, meetings, invoices, and/or payments." RFP No. 2 seeks "[a]ll DOCUMENTS and THINGS RELATED TO YOUR presence at the 2018 Las Vegas Consumer Electronics Show, including but not limited to any presentations, photographs, videos, articles, press events, VIP events, meetings, invoices and/or payments." In response to each, FF has offered to produce only "documents sufficient to show

# KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 3

any official public presentation by FF at the January [2017/2018] Consumer Electronics Show." FF's reference to "any official public presentation" is vague, and in any event, this offer of production is far narrower than what Respondents requested. Please confirm FF will produce all documents as requested.

 RFP No. 4: This Request seeks "[a]ll DOCUMENTS referring or RELATING TO YOUR efforts to keep secret and/or confidential the ALLEGED TRADE SECRETS." FF impermissibly narrowed its offer of production to only "documents sufficient to show FF's efforts to keep the Alleged Trade Secrets secret and/or confidential." This is improper because, among other things, FF has put its failures and lapses in secrecy and/or confidentiality at issue. By way of example, each instance where FF's alleged trade secrets were disclosed to one or more third parties is probative of whether or not FF has a protectable trade secret. *See, e.g.*, 18 U.S.C. § 1839(3)(A). Please promptly confirm that FF will produce the full scope of documents sought by this Request.

 RFP No. 12: This Request seeks "[o]ne complete set of laboratory notebooks, design files, design and/or product specifications, diagrams, CADD files, invention disclosures, white papers, and data sheets for each product, system, method, process, technology, component, and/or feature YOU contend embodies, contains, practices, and/or uses any ALLEGED TRADE SECRET." FF has impermissibly narrowed its offer of production to only "documents pertaining to the Alleged Trade Secrets." This is improper because, among other things, FF has put the invention, development, design, production, and technical details of its alleged trade secrets at issue in this case. *See, e.g.*, FAC ¶ 3 (alleging "FF is . . . developing new products that are different than anything the world has ever seen" and that "FF has developed valuable trade secrets in proprietary variable platform architecture ("VPA"), battery technology, power-train, safety features . . . ."); *id.* ¶ 5 (alleging "proprietary technology and know-how that FF has developed to design, build and market the FF-91"); *id.* ¶ 9 (alleging "FF's proprietary information [] has been developed at great trouble and expense"); *id.* ¶ 17 (alleging that "[s]ince its formation in 2014, FF has invested hundreds of thousands of work hours and approximately $1 billion in developing a proprietary line of AI electric vehicles and related technology"). Please promptly confirm that FF will produce the full scope of documents sought by this Request.

 RFP No. 13: This Request seeks "[o]ne complete set of source code for any product, system, process, technology, component, and/or feature that embodies, contains, practices, and/or uses any ALLEGED TRADE SECRET." FF has impermissibly narrowed its offer of production to only "source code embodying, containing, and/or using the Alleged Trade Secrets as may be identified in a reasonable search." This is improper because, among other reasons, FF is refusing to make available code for all products, systems, processes, technologies, components, and/or features that embody, contain, practice, and/or use its Alleged Trade Secrets

**Exhibit B**
**Page 16**

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 4

(as this term is used in EVelozcity's discovery requests), including those developed (at least in part) by an entity or individual other than FF. Simply put, FF must produce all source code that embodies, contains, practices, and/or uses its alleged trade secrets. Please promptly confirm that FF will produce the full scope of source code sought by this Request.

  RFP No. 14: This Request seeks "DOCUMENTS sufficient to show each product, system, method, process, technology, component, and/or feature that embodies, contains, practices, and/or uses any ALLEGED TRADE SECRET." FF has impermissibly narrowed its offer of production to only "documents pertaining to the Alleged Trade Secrets." This is improper because, among other things, FF has put its use and/or practicing of the alleged trade secrets at issue in this case. *See, e.g.*, FAC ¶ 36 ("FF's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce."); *id.* ¶ 17 (alleging that FF has invested in proprietary technology "that is expected to become available to the public starting by the end of the year, when FF rolls out its model FF-91 production vehicle"); *id.* ¶ 27 (allegation regarding "files and folders containing trade secret and confidential FF information, including engineering files for several future vehicles in FF's anticipated product line"); *see also id.* ¶ 4. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

  RFP Nos. 19 and 20: RFP No. 19 seeks "[a]ll FF marketing and promotional materials from the Relevant Period RELATING TO any product, system, method, process, technology, component, and/or feature that embodies, contains, practices, and/or uses any ALLEGED TRADE SECRET." RFP No. 20 seeks "[a]ll DOCUMENTS and THINGS RELATING TO any FF marketing events, including without limitation, photographs, images, videos, advertisements, social media, invitations, lists of attendees, agendas, pamphlets, brochures, and any confidentiality or non-disclosure agreements signed by attendees." FF has impermissibly narrowed its offers of production to these Requests to only "documents sufficient to show any official marketing and promotional materials pertaining to the Alleged Trade Secrets." This is improper for numerous reasons. First, it is unclear exactly what FF means by "*official* marketing and promotional materials." Second, FF's response omits highly relevant documents, including ad hoc marketing/promotional efforts, informal communications with potential customers, and documents relating to public disclosures of the alleged trade secrets. Third, by offering only documents "sufficient to show," FF has omitted from production swaths of relevant and responsive documents. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

  RFP No. 24: This Request seeks "[a]ll DOCUMENTS and THINGS referring to, RELATING TO, or constituting any analysis by YOU and/or YOUR agents of any EVELOZCITY product, system, method, process, technology, component and/or feature." FF

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 5

has impermissibly narrowed its offer of production to only "documents pertaining to the Alleged Trade Secrets." This is improper because, among other things, FF has put any similarities and/or differences between it and EVelozcity at issue. *See, e.g.*, FAC ¶¶ 8, 20, 22, 27, 29 (alleging EVelozcity competes with FF); *id.* ¶ 9, 24, 25, 29, 30, 40 (alleging FF trade secrets have been used in EVelozcity's business). These documents are highly relevant to FF's misappropriation claim as well as whether FF and EVelozcity are competitors. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

RFP No. 26: This Request seeks "[a]ll DOCUMENTS and THINGS documenting or CONCERNING YOUR procedures, practices, or policies to preserve or protect the confidentiality of trade secrets." FF has improperly narrowed its response to only "documents sufficient to show its procedures, practices, or policies to preserve or protect the confidentiality of trade secrets." This is improper because, among other things, it omits highly relevant documents regarding FF's failures or lapses to protect its alleged trade secrets. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

RFP No. 27: This Request seeks "[a]ll DOCUMENTS and THINGS CONCERNING YOUR security protocols and/or any other steps or measures taken by YOU to protect information stored on FF Equipment." FF has impermissibly narrowed its offer of production to "documents sufficient to show FF's security policies and protocols." This is improper because, among other things, it omits highly relevant documents regarding FF's failures or lapses to protect its alleged trade secrets. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

RFP No. 29: This Request seeks "[a]ll of YOUR Communications with SUPPLIERS." FF has not offered to produce any documents responsive to this Request or even meet and confer. FF has put its communications with suppliers at issue in this case because, among other things, FF has alleged that it "has valuable trade secrets in its financial and business information, including but not limited to, confidential information regarding FF's costs, materials, vendors, and business plans." *See, e.g.* FAC ¶¶ 3, 17; *see also id.* ¶ 25 ("vendor information"); ¶ 35 ("vendor lists"). Similarly, FF has also alleged that it "requires all contractors, consultants, vendors, investors, and manufacturers to sign confidentiality agreements," thus putting its agreements with suppliers squarely at issue. *Id.* ¶ 18. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

RFP No. 34: This Request seeks "[a]ll of YOUR Communications with shareholders from the RELEVANT TIME PERIOD." FF has not offered to produce any documents responsive to this Request or even meet and confer. FF has put its communications with investors at issue in this case by, among other things, alleging that "Krause held numerous meetings with potential investors in the summer and fall of 2017" and that there has been

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 6

solicitation of "the same investors that [Krause and Kranz] met with in the fall of 2017 when working for FF." *See, e.g.*, FAC ¶¶ 19, 22. FF has also alleged that Krause and Kranz reported that "no investors would be willing to invest in FF unless the company's acting CEO would agree to step down." *Id.* ¶ 19. Similarly, FF has also alleged that it "requires all contractors, consultants, vendors, investors, and manufacturers to sign confidentiality agreements." *Id.* ¶ 18. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

RFP No. 37: This Request seeks "[a]ll DOCUMENTS and THINGS RELATING TO the development and marketing of the FF 91, including but not limited to, project roadmaps, development timelines, engineering specifications, design specifications, laboratory notebooks, engineering notes, testing documentation, business plans, marketing plans, white papers, data sheets, brochures, prospectuses, advertisements, marketing materials, and sales materials." FF has impermissibly narrowed its offer of production to "documents pertaining to the Alleged Trade Secrets." This is improper because FF has put its development and marketing of the FF91 at issue by alleging, among other things, that the "proprietary technology and know-how that FF has developed to design, build, and market the FF-91 will also be applied to other forthcoming FF vehicles." *Id.* ¶ 5. FF also alleges that EVelozcity is a "competing venture" and that EVelozcity is using FF's alleged trade secrets "to unfairly compete with FF." *Id.* ¶¶ 8, 9, 20, 27; *see also id.* ¶¶ 1, 17, 22, 26. Please promptly confirm that FF will produce the full scope of documents sought by this Request.

    2.    <u>FF Has Offered Only to Meet and Confer for RFP Nos. 5, 6, 7, 8, 10, 16, 17, 18, 22, 23, 25, 28, 31, 32, 33, 35, 36, 38, 39, 40, 42, 44, and 45</u>

In response to the following Requests, FF has offered only to meet and confer. Please let us know promptly your availability to meet and confer about the requests below. Before the meet-and-confer, please also provide us with any bases that you have at this time to believe that any of these requests is objectionable in whole or in part.

RFP No. 5: "All DOCUMENTS referring to, RELATING TO, or constituting any offers to sell and/or license the ALLEGED TRADE SECRETS."

RFP No. 6: "DOCUMENTS sufficient to identify the identity of each FF investor, as well as the amount, nature, terms, and timing of such investment."

RFP No. 7: "DOCUMENTS sufficient to identify the identity of each prospective FF investor that FF contacted, as well as the amount, nature, terms, and timing of such prospective investment."

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 7

RFP No. 8: "Copies of all financial statements, including but not limited to P&L statements, balance sheets, income statements, operating statements, cash reports, and bank statements, prepared by FF or on FF's behalf during the RELEVANT TIME PERIOD."

RFP No. 10: "All DOCUMENTS and THINGS referring or RELATING TO any disclosure during the RELEVANT TIME PERIOD to any PERSON outside of FF of any of YOUR ALLEGED TRADE SECRETS."

RFP No. 16: "All DOCUMENTS and THINGS referring or RELATING TO whether each inventor, creator, and/or originator of each ALLEGED TRADE SECRET himself or herself invented the ALLEGED TRADE SECRET."

RFP No. 17: "All public and third-party DOCUMENTS, including research materials, YOU relied upon to develop each ALLEGED TRADE SECRET."

RFP No. 18: "All public and third-party DOCUMENTS, including research materials, YOU relied upon to develop each ALLEGED TRADE SECRET."

RFP No. 22: "All DOCUMENTS referring to, RELATING TO, or constituting any commentary, including praise and criticisms, by YOUR employees and/or agents for any product, system, method, process, technology, component, and/or feature that embodies, contains, practices, and/or uses any ALLEGED TRADE SECRET."

RFP No. 23: "All DOCUMENTS and THINGS that evidence, support, or contradict the value of any ALLEGED TRADE SECRET."

RFP No. 25: "YOUR annual financial reports from 2014 until the present."

RFP No. 28: "DOCUMENTS and THINGS sufficient to identify YOUR SUPPLIERS from 2014 through the present."

RFP No. 31: "DOCUMENTS and THINGS sufficient to show the identities of all non-employee visitors to FF's offices in Gardena, California, including but not limited to sign-in sheets."

RFP No. 32: "All DOCUMENTS and THINGS, including presentations, provided to current investors during the RELEVANT TIME PERIOD."

RFP No. 33: "All Communications with investors from the RELEVANT TIME PERIOD."

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 8

    RFP No. 35: "DOCUMENTS sufficient to show YOUR costs for developing each ALLEGED TRADE SECRET."

    RFP No. 36: "DOCUMENTS sufficient to show FF's organizational structure during the RELEVANT TIME PERIOD."

    RFP No. 38: "One complete FF 91 for each version of the FF 91 (or similar electric vehicle) at issue in this ACTION."

    RFP No. 39: "One complete VPA2 chassis for each version of the FF 91 (or similar electric vehicle) at issue in this ACTION."

    RFP No. 40: "DOCUMENTS sufficient to show the assembly process for the FF 91, the VPA2 technology, and/or any other product, process, method, instrumentation, or thing YOU claim as a trade secret and/or confidential information in this ACTION."

    RFP No. 42: "One complete set of all board of directors meeting minutes for FF from inception to present."

    RFP No. 44: "All DOCUMENTS referring to, RELATING TO, or reflecting the value of FF, including any valuations performed by or on behalf of FF."

    RFP No. 45: "All DOCUMENTS referring to, RELATING TO, or reflecting the value of any FF intellectual property, including patents and trade secrets."

    **D.**    **FF's Deficient Interrogatory Responses**

As described below, FF's Interrogatory responses also contain numerous deficiencies that are improper and unjustified.

    Interrogatory No. 1: This Interrogatory states: "IDENTIFY any trade secret YOU contend to own that YOU contend was misappropriated by EVELOZCITY. To the extent YOU contend that YOUR ALLEGED TRADE SECRETS are reflected, referred to, embodied, and/or disclosed in any DOCUMENT or THING, YOUR response should IDENTIFY the DOCUMENT or THING separately for each ALLEGED TRADE SECRET, and the specific page number(s), pin cite(s), part(s), and/or portion(s) thereof that YOU contend reflect, refer to, embody, and/or disclose each ALLEGED TRADE SECRET." FF's refusal to respond to this Interrogatory before entry of a protective order is unjustified—EVelozcity offers that access to FF's response will be limited to EVelozcity's outside counsel at Kirkland & Ellis LLP until entry of the protective order. Moreover, EVelozcity has provided its comments to FF's proposed protective order and is available to further confer regarding the same at a mutually agreeable time.

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 9

Accordingly, please confirm that FF will promptly provide a complete substantive response to this Interrogatory.

 <u>Interrogatory No. 2</u>: This Interrogatory states: "Separately, for each alleged trade secret asserted by YOU to have been misappropriated by EVELOZCITY, IDENTIFY all date(s) on which it was allegedly disclosed to EVELOZCITY, all means by which such alleged disclosure(s) occurred, the PERSON(S) at or associated with EVELOZCITY to whom the alleged disclosure(s) occurred, the PERSON(S) who made the alleged disclosure(s), and each and every DOCUMENT and/or COMMUNICATION containing or comprising such disclosure." In response, FF has merely identified the dates on which the employment of certain individuals at FF were terminated.[1] FF's response, so far, does not identify: (1) the date(s) of any alleged disclosure to EVelozcity; (2) the means thereof (including any documents or communications); or, (3) all of the people involved in such alleged disclosure. Accordingly, please confirm that FF will promptly supplement its response to this Interrogatory with all bases it has in believing that EVelozcity misappropriated each and every alleged trade secret.

 <u>Interrogatory No. 3</u>: This Interrogatory states: "Separately, for each ALLEGED TRADE SECRET asserted by YOU to have been misappropriated by EVELOZCITY, IDENTIFY the fact(s) and circumstance(s) surrounding its creation, development, and/or acquisition, including without limitation the person(s) who created, developed, or acquired the alleged trade secret, how and when the ALLEGED TRADE SECRET was created or acquired, any public or non-trade secret information included within the ALLEGED TRADE SECRET, the PERSON to whom the ALLEGED TRADE SECRET belongs (i.e., Faraday&Future, Inc., or some other PERSON), and any PERSON(S) licensed or otherwise authorized to acquire, possess, disclose, commercialize, or otherwise use the ALLEGED TRADE SECRET." FF's only response, that it will identify documents pursuant to Federal Rule of Civil Procedure 33(d), is insufficient. For example, FF must disclose how, when, and by whom each alleged trade secret was created, developed, and/or acquired and any entities licensed to use the alleged trade secret. Indeed, one would expect this type of basic factual information to be in FF's possession, custody, or control before FF could file claims for trade secret misappropriation. Accordingly, please confirm that FF will promptly provide a complete substantive response to this Interrogatory.

 <u>Interrogatory No. 4</u>: This Interrogatory states: "Separately, for each alleged trade secret asserted by Plaintiff to have been misappropriated by EVELOZCITY, IDENTIFY each ACCUSED INSTRUMENTALITY, including a specific identification of where and how each

---

[1] In its response to Interrogatory No. 2, FF refers to Stefan Grubic and Charlie Spencer as "Respondent Grubic" and "Respondent Spencer," respectively. We understand this to be a clerical error.

**KIRKLAND & ELLIS LLP**

James Judah
October 30, 2018
Page 10

alleged trade secret (including each component, element, or aspect thereof) is found within each ACCUSED INSTRUMENTALITY. Your response to this Interrogatory should be in the form of a chart or table organized by the ALLEGED TRADE SECRET." FF's failure to provide any response whatsoever to this Interrogatory is improper. As above, one would expect this type of basic factual information to be in FF's possession, custody, or control before FF could file claims for trade secret misappropriation. EVelozcity offers that access to FF's responses will be limited to EVelozcity's outside counsel at Kirkland & Ellis LLP until entry of the protective order. Accordingly, please confirm that FF will promptly provide a complete substantive response to this Interrogatory.

Interrogatory No. 5: This Interrogatory states: "Separately, for each alleged trade secret asserted by YOU to have been misappropriated by EVELOZCITY, state the amount and nature of damages or any other remedy to which YOU contend YOU are entitled and state the basis for that contention, including by identifying all DOCUMENTS and THINGS supporting YOUR contentions. YOUR response to this Interrogatory should be organized separately for each ALLEGED TRADE SECRET." FF's response is insufficient and nonresponsive for multiple reasons. For example, FF has failed to provide any "amounts" as sought by this Interrogatory, nor has FF provided any information specific to an alleged trade secret. FF's objection that it intends to rely on expert opinion is misplaced; this Interrogatory seeks the *factual* bases underlying any remedy FF seeks and therefore, FF's response is incomplete. For example, FF states that "[it] believes it has suffered and is suffering irreparable harm as a result of EVelozcity's trade secret misappropriation." FF must provide the factual bases for its belief *at this time*. Likewise, FF must provide the factual bases, *at this time*, for its contentions that it has suffered any form of monetary damages as a result of any alleged trade secret misappropriation by EVelozcity. Please confirm that FF will promptly provide a complete substantive response to this Interrogatory.

FF Has Failed to Verify Its Responses: FF's October 22, 2018 Interrogatory Responses are further defective because they have not been signed or verified by the responding party. *See, e.g.*, Fed. R. Civ. P. 33(b)(5) ("The person who makes the answers must sign them . . . ."). Accordingly, please confirm that FF will promptly provide a verification under oath.

E.   **Meet and Confer**

Pursuant to L.R. 37-1, EVelozcity requests to meet and confer with counsel for FF regarding the above matters in person at Kirkland & Ellis LLP, 333 South Hope Street, 29th Floor, Los Angeles, California 90071. We are available during the afternoon on Wednesday October 31, as well as all day on Thursday, November 1. Please let us know if FF is available during these times and if not, please provide alternative times between now and November 9, 2018 that FF is available per L.R. 37-1. In the spirit of efficiently resolving disputes regarding

**Exhibit B**
**Page 23**

## KIRKLAND & ELLIS LLP

James Judah
October 30, 2018
Page 11


these matters, we respectfully request that FF be prepared at the conference to propose meaningful offers of production and explain the complete bases for any objections on which it intends to stand.

      The above is a non-exhaustive list of deficiencies presented by FF's discovery responses and EVelozcity expressly reserves the right to raise additional issues at a later time.

      Sincerely,

      Benjamin A. Yaghoubian


cc:    qe-faraday@quinnemanuel.com

**Exhibit B**
**Page 24**