# EXHIBIT J

1   Mark Holscher (SBN 139582)
    mark.holscher@kirkland.com
2   Diana M. Torres (SBN 162284)
    diana.torres@kirkland.com
3   Tammy A. Tsoumas (SBN 250487)
    Tammy.tsoumas@kirkland.com
4   KIRKLAND & ELLIS LLP
    333 South Hope Street
5   Los Angeles, CA 90071
    United States
6   Telephone:  (213) 680-8400
    Facsimile:  (213) 680-8500
7
    Attorneys for Defendant
8   EVelozcity Inc.

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                    **WESTERN DIVISION**

13   FARADAY&FUTURE INC.,              )   CASE NO. 2:18-cv-00737-DMG
                                       )
14            Plaintiff,               )   The Honorable Dolly M. Gee
                                       )
15        vs.                          )   **JOINT STIPULATION RE**
                                       )   **MOTION TO COMPEL PLAINTIFF**
16   EVELOZCITY INC.,                  )   **TO PRODUCE DOCUMENTS AND**
                                       )   **RESPOND TO**
17            Defendant.               )   **INTERROGATORIES**
                                       )
18   _____  )   Hearing Date:  ~~December~~January 2~~6~~,
                                       )   201~~8~~9
19                                     )   Time:          10:00 a.m.
                                       )   Courtroom:     590
20                                     )
                                       )   Disc. Cut-Off:          June ~~1~~47, 2019
21                                     )   PreTrial Conf. Date: October 8, 2019
                                           Trial Date:          November 5, 2019
22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2   THE PARTIES' INTRODUCTORY STATEMENTS......................................................1

3        A.    EVelozcity's Introductory Statement ................................................1

4        B.    FF's Introductory Statement ...........................................................3

5   RELEVANT TIME PERIOD ..............................................................................4

6        C.    EVelozcity's Reasons Why FF Should be Compelled to Search for and
              Produce Documents from April 1, 2014 to the Present ...................................4
7
         D.    FF's Reasons ...........................................................................5
8
    TIMING OF PRODUCTION FOR DOCUMENTS FF HAS ALREADY AGREED
9        TO PRODUCE..............................................................................6

10       E.    EVelozcity's Reasons Why FF Should be Compelled to Produce
              Agreed-Upon Documents Within Seven Days ...............................................6
11
         F.    FF's Reasons ...........................................................................7
12
    DISPUTED INTERROGATORIES .............................................................7
13
         G.    FF's Response to Interrogatory No. 1....................................................7
14
               1.    EVelozcity's Reasons Why FF Should be Compelled to Provide
15                   a Complete Response to Interrogatory No. 1 ...........................................9

16             2.    FF's Reasons ...........................................................................10

17       H.    FF's Response to Interrogatory No. 2....................................................10

18             1.    EVelozcity's Reasons Why FF Should be Compelled to Provide
                     a Complete Response to Interrogatory No. 2 ...........................................1~~2~~3
19
               2.    FF's Reason ...........................................................................13
20
         I.    FF's Response to Interrogatory No. 3....................................................13
21
               1.    EVelozcity's Reasons Why FF Should be Compelled to Provide
22                   a Complete Response to Interrogatory No. 3 ...........................................14~~5~~
23             2.    FF's Reason ...........................................................................15~~6~~

24       J.    FF's Response to Interrogatory No. 4....................................................16

25             1.    EVelozcity's Reasons Why FF Should be Compelled to Provide
                     a Complete Response to Interrogatory No. 4 ...........................................17
26
               2.    FF's Reason ...........................................................................17~~8~~
27

28

K.  FF's Response to Interrogatory No. 5.................................17̶8

1.  EVelozcity's Reasons Why FF Should be Compelled to Supplement Interrogatory No. 5 .......................1̶9̶20

2.  FF's Reason ..................................................2̶0̶1

DISPUTED REQUESTS FOR PRODUCTION ...................................21

I.  TECHNICAL DOCUMENTATION...........................................21

A.  FF's Response to Request for Production No. 16..................21

1.  EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 16 ....................2̶1̶2

2.  FF's Reasons ...............................................22

B.  FF's Response to Request for Production No. 17..................22

1.  EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 17 ....................23

2.  FF's Reasons ...............................................24

C.  FF's Response to Request for Production No. 18..................24

1.  EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 18 ....................2̶4̶5

2.  FF's Reasons ...............................................2̶5̶6

D.  FF's Response to Request for Production No. 22..................2̶5̶6

1.  EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 22 ....................2̶6̶7

2.  FF's Reasons ...............................................27

E.  FF's Response to Request for Production No. 24..................27

1.  EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 24 ....................28

2.  FF's Reasons ...............................................2̶8̶9

F.  FF's Response to Request for Production No. 37..................2̶8̶9

1.  EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 37 ....................2̶9̶30

2.  FF's Reasons ...............................................30

G.   FF's Response to Request for Production No. 38 ..........................................30

    1.   EVelocity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 38 ..............................30̶1̶

    2.   FF's Reasons ......................................................31̶2̶

H.   FF's Response to Request for Production No. 39 ..........................................31̶2̶

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 39 ..............................32

    2.   FF's Reasons ......................................................32̶3̶

I.   FF's Response to Request for Production No. 40 ..........................................32̶3̶

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 40 ..............................33̶4̶

    2.   FF's Reasons ......................................................33̶4̶

II.  EFFORTS TO MAINTAIN SECRECY ..........................................................34

A.   FF's Response to Request for Production No. 1 ............................................34

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 1 ..............................35

    2.   FF's Reasons ......................................................35̶6̶

B.   FF's Response to Request for Production No. 2 ............................................35̶6̶

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 2 ..............................36̶7̶

    2.   FF's Reasons ......................................................37

C.   FF's Response to Request for Production No. 4 ............................................37

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 4 ..............................38

    2.   FF's Reasons ......................................................38̶9̶

D.   FF's Response to Request for Production No. 10 ..........................................38̶9̶

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 10 ..............................39̶40̶

    2.   FF's Reasons ......................................................39̶40̶

E.   FF's Response to Request for Production No. 20 ..........................................40

    1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
         Documents Responsive to RFP No. 20 ..............................40̶1̶

**Exhibit J**
**Page 90**
iii

2.   FF's Reasons ........................................................................... 41~~1~~2

F.   FF's Response to Request for Production No. 31 ................................ 42

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 31 ..................................... 42~~2~~3

2.   FF's Reasons ........................................................................... 43~~3~~4

III.   FINANCIAL DOCUMENTS ....................................................................... 43~~3~~4

A.   FF's Response to Request for Production No. 5 ................................ 43~~3~~4

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 5 ....................................... 44

2.   FF's Reasons ........................................................................... 44~~4~~5

B.   FF's Response to Request for Production No. 8 ................................ 45

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 8 ....................................... 46

2.   FF's Reasons ........................................................................... 46~~6~~7

C.   FF's Response to Request for Production No. 23 .............................. 46~~6~~7

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 23 ..................................... 47

2.   FF's Reasons ........................................................................... 48

D.   FF's Response to Request for Production No. 25 .............................. 48

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 25 ..................................... 48~~8~~9

2.   FF's Reasons ........................................................................... 49

E.   FF's Response to Request for Production No. 35 .............................. 49

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 35 ..................................... ~~49~~50

2.   FF's Reasons ........................................................................... 50~~0~~1

F.   FF's Response to Request for Production No. 44 .............................. 50~~0~~1

1.   EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 44 ..................................... 51~~1~~2

2.   FF's Reasons ........................................................................... 52

G. FF's Response to Request for Production No. 45 ...........................................52

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 45 ...............................53

    2. FF's Reasons ...........................................................53̶4

IV. INVESTOR AND SUPPLIER DOCUMENTS ...........................................53̶4

  A. FF's Response to Request for Production No. 6 ...........................................53̶4

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 6 ...............................54̶5

    2. FF's Reasons ...........................................................55̶6

  B. FF's Response to Request for Production No. 7 ...........................................55̶6

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 7 ...............................56̶7

    2. FF's Reasons ...........................................................56̶7

  C. FF's Response to Request for Production No. 28 ...........................................57

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 28 ...............................57̶8

    2. FF's Reasons ...........................................................58

  D. FF's Response to Request for Production No. 29 ...........................................58̶9

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 29 ...............................58̶9

    2. FF's Reasons ...........................................................5̶9̶60

  E. FF's Response to Request for Production No. 32 ...........................................5̶9̶60

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 32 ...............................60̶1

    2. FF's Reasons ...........................................................60̶1

  F. FF's Response to Request for Production No. 33 ...........................................60̶1

    1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 33 ...............................61̶2

    2. FF's Reasons ...........................................................62̶3

V.    CORPORATE DOCUMENTS ................................................................. 62~~2~~3

    A.    FF's Response to Request for Production No. 36 ............................... 62~~2~~3

        1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 36 ................................. 63

        2.    FF's Reasons ........................................................................ 63~~3~~4

    B.    FF's Response to Request for Production No. 42 ............................... 63~~3~~4

        1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 42 ................................. 64~~4~~5

        2.    FF's Reasons ........................................................................ 65

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Joint Stipulation re Motion to Compel Plaintiff Faraday & Future, Inc. ("FF") to Produce Documents and Respond to Interrogatories is filed pursuant to Local Rules ("L.R.") 37-1 and 37-2, by Defendant EVelozcity Inc. ("EVelozcity").

## THE PARTIES' INTRODUCTORY STATEMENTS

### A.   EVelozcity's Introductory Statement

In January 2018, FF sued EVelozcity for alleged trade secret misappropriation. Nearly one year has passed and EVelozcity still has not received basic information regarding FF's claims, including an identification of the alleged trade secrets at issue in this case and technical documentation relating to FF's alleged trade secrets and technologies.  On November 7, 2018, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") moved to withdraw as FF's counsel of record on the basis that FF cannot pay Quinn Emanuel's fees.  *See* Ex. A (Dkt. 127).[1]  Because that motion is still pending, Quinn Emanuel is still FF's counsel in this case.

Rather than participate in discovery related to the claims FF filed, FF and Quinn Emanuel have engaged in blatant self-help, unilaterally bringing discovery to a halt in this case.  FF has undermined EVelozcity's repeated attempts to move forward in this case with discovery.  Recently, in a letter dated October 30, 2018 (*see* Ex. B (10/30/18 Ltr to Judah)), EVelozcity requested that FF meet and confer regarding its discovery responses in person and within ten days, pursuant to Local Rule 37-1.  After nine days and multiple follow-up emails from EVelozcity, FF took the position that "[a]ny meet and confer on these discovery issues should come either after new counsel has substituted in or after the hearing."  *See* Ex. C (11/8/18 Email from J. Judah). EVelozcity again reiterated its request to meet and confer, as required by Local Rule 37-1, after which FF agreed to attend a telephonic meet and confer on November 9th. *See* Ex. D (11/9/18 Email to J. Judah).

---

[1]   Unless otherwise indicated, all exhibits are to the Declaration of Benjamin Yaghoubian, filed concurrently herewith.

During the November 9th conference call, FF confirmed it had nothing to offer in response to any of the issues raised in EVelozcity's October 30, 2018 correspondence regarding FF's discovery responses. *See id.* During the same conference, FF also reiterated its position that all outstanding discovery disputes should be deferred until after Quinn Emanuel's motion to withdraw is resolved. *See id.* FF still has not attended an in-person meet-and-confer with EVelozcity. On November 9, 2018, EVelozcity asked if FF would participate in an informal discovery conference with Judge Oliver. *See id.* FF still has not responded to EVelozcity's offer. Accordingly, EVelozcity brings this motion, by which it seeks an order compelling FF to provide complete responses to EVelozcity's Interrogatories and produce documents responsive to EVelozcity's Requests for Production ("RFP") for the relevant time period April 1, 2014 to the present.

For example, FF has failed to provide complete interrogatory responses, verified under oath, relating to fundamental elements of its trade secret claim, including the following:

1. An identification of the alleged trade secrets (Interrogatory No. 1);

2. Factual contentions regarding the date and means by which its alleged trade secrets were disclosed to EVelozcity (Interrogatory No. 2);

3. The facts and circumstances surrounding the creation, development, and ownership of the alleged trade secrets (Interrogatory No. 3);

4. Factual contentions regarding the specific EVelozcity products and technologies that are accused in this case (Interrogatory No. 4); and

5. The factual basis for FF's damages for each alleged trade secret (Interrogatory No. 5).

FF has also refused to produce highly relevant documents relating to the following:

1. The creation, development, and technical details regarding FF's alleged trade secrets and technologies (*e.g.*, RFP Nos. 16, 17, 18, and 37);

2. FF's efforts and failures to maintain the secrecy of its alleged trade secrets dating back to 2014 (*e.g.*, RFP Nos. 4, 10, 20, and 31);

3. FF's financial data (*e.g.*, RFP Nos. 5, 8, 23, 25, and 35);

4.    FF's investors, and suppliers on which FF relied starting in 2014 (*e.g.*, RFP Nos. 28, 29, 32, 33, and 34); and

5.    FF's corporate governance and organizational structure (*e.g.*, RFP Nos. 36 and 42).

Although EVelozcity is sympathetic to Quinn Emanuel's situation, FF's unilaterally imposed discovery stay is highly prejudicial to EVelozcity, who has been diligently seeking to move toward a timely resolution of this case.  FF's refusal to participate in discovery—or even to meet and confer in good faith—until after the Court rules on Quinn Emanuel's motion to withdraw as counsel runs contrary to the applicable Local Rules, which require Quinn Emanuel to participate in discovery unless and until its motion to withdraw is granted.  *See, e.g.*, L.R. 83-2.2.2; L.R. 83-2.3.5 ("[N]o substitution or relief of attorney will be approved that will cause delay in prosecution of the case to completion.").  Therefore, EVelozcity respectfully requests that the Court order FF to provide complete verified interrogatory responses and produce documents as described herein within 21 days, along with any other order the Court deems appropriate, including, for example, an award of EVelozcity's reasonable attorneys' fees in bringing this motion.[2]

**B.    FF's Introductory Statement**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

---

[2]  To the extent the Court deems an award of attorneys' fees appropriate, EVelozcity will submit its request for fees and supporting documentation after resolution of this Motion.

1    **RELEVANT TIME PERIOD**

2        The parties dispute the relevant time period applicable to EVelozcity's

3    discovery requests.

4    **EVELOZCITY'S INTERROGATORY DEFINITION**

5        Unless otherwise specified, the relevant time period for all requests shall be

6    between April 1, 2014 and the present (the "Relevant Time Period").

7    **FF'S OBJECTIONS TO EVELOZCITY'S INTERROGATORY DEFINITION**

8        FF objects to Instruction No. 11 as overbroad, unduly burdensome, vague, and

9    ambiguous to the extent that it purports to establish a relevant time period for all

10   interrogatories going back to April 1, 2014, years before any of the facts at issue in

11   this case.

12   **EVELOZCITY'S RFP DEFINITION**

13       Unless otherwise specified, the relevant time period for all requests shall be

14   between April 1, 2014 and the present (the "Relevant Time Period").

15   **FF'S OBJECTIONS TO EVELOZCITY'S RFP DEFINITION**

16       FF objects to the Requests and to the definition of "Relevant Time Period" to

17   the extent that they seek documents and communications from before January 1, 2017

18   or after January 29, 2018.

19       C.    **EVelozcity's Reasons Why FF Should be Compelled to Search for and Produce Documents from April 1, 2014 to the Present**

20       FF is improperly withholding relevant documents and information in response

21   to EVelozcity's discovery requests on the basis of conclusory General Objections to

22   the definition of the "Relevant Time Period."  As explained above in EVelozcity's

23   Introductory Statement, EVelozcity attempted to meet and confer with FF about this

24   issue but FF had nothing to offer in response.  Any assertion by FF that the time frame

25   April 1, 2014 to present is not relevant is demonstrably false.  FF has affirmatively put

26   at issue in this case documents and information dating back to 2014.  FF alleges "[t]he

27   host of trade secrets that FF has developed *since 2014* would be highly valuable to

28

any competitor." Ex. E (Dkt. 25, hereinafter "FAC"), ¶ 2 (emphasis added). FF also alleges "[s]ince its formation *in 2014*, FF has invested hundreds of thousands of work hours and approximately $1 billion in developing a proprietary line of AI electric vehicles and related technology." *Id.* ¶ 17 (emphasis added). Moreover, FF purports to rely upon conduct of its former employees whose employment began at least as early as 2015. *See id.* ¶¶ 25, 27, 28; *see also infra* Resp. to Interrog. No. 2. For instance, FF hired Richard Kim and Sohel Merchant in or around March 2015, nearly two years prior to FF's arbitrary cutoff date. Similarly, FF hired Charlie Spencer, Christoph Kuttner, and Nick Gronenthal in May, June, and July of 2015, respectively.

Given FF's claim that its alleged trade secrets date back to 2014 and accusations against employees who started working at FF over three and a half years ago, FF cannot credibly contest the relevance of documents and information pre-dating 2017. Because FF claims its trade secrets were developed starting in 2014, it must produce technical documentation (including its research and development efforts) dating back to 2014. *See, e.g.*, *infra* Interrog. No. 3, RFP Nos. 16, 17, 18, 37. For this same reason, FF must also produce documents relating to its efforts and failures to maintain the secrecy of its alleged trade secrets dating back to 2014, (*see, e.g.*, *infra* RFP Nos. 4, 10, 20, 31), and documents relating to the finances, investors, and suppliers on which FF relied starting in 2014 (*see, e.g.*, *infra* RFP Nos. 5, 8, 23, 25, 28, 29, 32, 33, 34). For these reasons, FF's objections to EVelozcity's definition of the Relevant Time Period should be overruled and FF should be ordered to produce the full temporal scope of documents and information sought by EVelozcity's discovery requests.

**D. FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

1

## TIMING OF PRODUCTION FOR DOCUMENTS FF HAS ALREADY AGREED TO PRODUCE

2

3          The parties dispute the timing for production of documents that FF has already

agreed to produce.

4

5          ### E.     EVelozcity's Reasons Why FF Should be Compelled to Produce Agreed-Upon Documents Within Seven Days

6

7          For a handful of EVelozcity's document requests, FF has made offers of

production, the scope of which EVelozcity is not currently challenging.[3]

8

9  Nevertheless, while EVelozcity is not currently challenging certain of FF's offers of

10 production, as explained above in EVelozcity's Introductory Statement, EVelozcity

attempted to meet and confer with FF about FF's discovery responses and FF had

11 nothing to offer in response.  Instead, FF indicated that while Quinn Emanuel seeks to

12 withdraw, FF has no plans to produce documents for any Request.  That position is

13 untenable and prejudicial to EVelozcity.  Instead, for those Requests at issue in this

14 section, FF should be ordered to produce documents within seven days.  These

15 Requests include RFP No. 3 (agreements intended to protect the secrecy of FF's

16 alleged trade secrets); RFP No. 9 (documents evidencing unauthorized copying of the

alleged trade secrets); RFP No. 11 (documents on which FF intends to rely); RFP Nos.

17 12, 13, 14, 15 (technical documentation relating to, among other things, the creation,

18 development, structure, function, and operation of the alleged trade secrets); RFP No.

19 30 (documents sufficient to show the design and development of VPA2); RFP No. 41

20 (documents sufficient to show FF's document retention policies).

21          Although the scope of these Requests is not currently in dispute, FF has not

22 produced a single document responsive to these RFPs, nor has it agreed to a date by

23 which it will produce these documents.  *See, e.g.*, Ex. D (11/9/18 Email to J. Judah).

24

25

26 _____

27 [3]   EVelozcity respectfully reserves the right to challenge FF's remaining discovery responses at a later date as discovery proceeds in this case and in the event new facts come to light that may require modifying the scope of FF's document production.

28

As the plaintiff in this case, FF has known the scope and subject matter of its claims for nearly one year and should have been collecting, reviewing, and preparing to produce these categories of documents to satisfy its discovery obligations in this case. Indeed, one would expect many of these documents to have already been collected and reviewed as part of FF's pre-suit investigation under Rule 11 (*e.g.*, agreements intended to protect FF's alleged trade secrets). FF's failure to begin production of these documents, despite EVelozcity's repeated requests, is yet another example of FF improperly engaging in self-help during the pendency of Quinn Emanuel's motion to withdraw as counsel. Because FF has already agreed to produce these documents, many of which go to the core of FF's claims in this case, EVelozcity respectfully requests that FF be ordered to produce these documents within seven days.

**F.    FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

## DISPUTED INTERROGATORIES

**G.    FF's Response to Interrogatory No. 1**

**INTERROGATORY NO. 1:**

IDENTIFY any trade secret YOU contend to own that YOU contend was misappropriated by EVELOZCITY. To the extent YOU contend that YOUR ALLEGED TRADE SECRETS are reflected, referred to, embodied, and/or disclosed in any DOCUMENT or THING, YOUR response should IDENTIFY the DOCUMENT or THING separately for each ALLEGED TRADE SECRET, and the specific page number(s), pin cite(s), part(s), and/or portion(s) thereof that YOU contend reflect, refer to, embody, and/or disclose each ALLEGED TRADE SECRET.

**RESPONSE TO INTERROGATORY NO. 1:**

FF incorporates by reference its General Objections. FF further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks FF to respond separately for each asserted FF trade secret. FF further objects to this interrogatory as vague and ambiguous, including with respect to the phrases "reflected, referred to, embodied, and/or disclosed" and "reflect, refer to, embody, and/or disclose." FF further objects to this request to the extent it is compound, complex, and contains multiple subparts and, on that basis, responds only to the first subpart ("IDENTIFY any trade secret YOU contend to own that YOU contend was misappropriated by EVELOZCITY."). FF further objects to this interrogatory as premature to the extent it calls for information that is subject to expert testimony. FF will provide expert testimony in accordance with the Court's procedural schedule. FF further objects to this interrogatory to the extent it calls for confidential information, including trade secrets, which FF will not disclose without an appropriate Protective Order in place.

Subject to and without waiving the foregoing General and Specific Objections, FF responds as follows:

FF hereby identifies those of its trade secrets that currently are the subject of, and that are alleged to fall within the scope of, FF's claim for misappropriation of trade secrets. FF makes this identification of its trade secrets, which is not required under the Defend Trade Secrets Act, without prejudice to its right to add additional or different trade secrets, to modify the description of any of the trade secrets identified below, and to delete from the list any identified trade secrets as FF obtains discovery from EVelozcity.

This identification is based upon, and is necessarily limited by, the information that FF has to date received and analyzed. Specifically, in light of the large number of employees who left FF with what FF's preliminary analysis indicates was a massive volume of confidential and proprietary FF documents spanning a range of technology

areas, and who are now working for EVelozcity, FF's identification of trade secrets is made without prejudice to amend this list based on discovery obtained in this case. FF further reserves the right to produce and refer to at any hearing or at trial, any evidence relevant to its claim of misappropriation of one or more of these trade secrets, even though such evidence may include other trade secrets that are not listed herein.

The trade secrets identified herein are not limited to use in a particular product or for a particular purpose (i.e., the FF91 vehicle or FF's VPA2 platform), and may have utility when used in a different application. In addition, the trade secrets have utility and value when used to derive designs for different products or applications. FF alleges that the trade secrets identified in this designation were FF trade secrets at the time they were wrongfully acquired, misused, and/or disclosed by EVelozcity.

FF's trade secrets are highly confidential, and accordingly FF will identify the trade secrets once an appropriate Protective Order is in place.

### 1. EVelozcity's Reasons Why FF Should be Compelled to Provide a Complete Response to Interrogatory No. 1

FF's refusal to identify the alleged trade secrets it claims EVelozcity has misappropriated is improper and highly prejudicial to EVelozcity.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  Courts routinely emphasize the importance of identifying alleged trade secrets with reasonable particularity early on in a case.  *See, e.g.*, *Computer Econs., Inc. v. Gartner Grp. Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (federal court required identification of alleged trade secrets "at the outset of discovery"); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 5000352, at *7–*9 (N.D. Cal. Nov. 2, 2017) (court presiding over DTSA and CUTSA claims required alleged trade secrets to be identified with reasonable particularity, "[o]therwise, trade-secret plaintiffs are liable to get into the accused files and conveniently assert that contents therein were trade

secrets stolen from them.").  Moreover, FF has acknowledged that its "objections and response to this interrogatory are due on October 22, 2018" and that "FF believes that discovery, including this interrogatory, is the proper forum for identifying and litigating any issues over the identification of FF's asserted trade secrets."  Ex. F (Dkt. 122) at 4.[4]  To the extent FF's refusal is premised on the need for a protective order in this case, that assertion is without merit because EVelozcity provided its responsive input on a proposed protective order on October 23rd (and repeatedly offered to meet and confer on October 29th, November 1st, and November 7th).  EVelozcity also offered to limit access to FF's response to outside counsel at Kirkland & Ellis until entry of the protective order.  FF has acknowledged its duty to respond to this Interrogatory and its failure to do so is improper.  Therefore, FF should be compelled to identify its alleged trade secrets with particularity in a complete response to EVelozcity's Interrogatory No. 1.

**2.    FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

**H.    FF's Response to Interrogatory No. 2**

**INTERROGATORY NO. 2:**

Separately, for each alleged trade secret asserted by YOU to have been misappropriated by EVELOZCITY, IDENTIFY all date(s) on which it was allegedly disclosed to EVELOZCITY, all means by which such alleged disclosure(s) occurred, the PERSON(S) at or associated with EVELOZCITY to whom the alleged

---

[4]    Counsel for FF had acknowledged that, notwithstanding the parties' apparent dispute regarding the applicability of Cal. Code Civ. P. § 2019.210, FF should provide its trade secret identification early in discovery and that providing the list at the same time as initial disclosures (on October 5th) made sense.  *See* Ex. F (Dkt. 122) at 5.  Despite making that representation, FF abruptly reversed course when the parties filed their Joint Rule 26(f) Report.  *Id.* at 4.

disclosure(s) occurred, the PERSON(S) who made the alleged disclosure(s), and each
and every DOCUMENT and/or COMMUNICATION containing or comprising such
disclosure.

**RESPONSE TO INTERROGATORY NO. 2:**

FF incorporates by reference its General Objections. FF further objects to this
interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive,
including to the extent that it asks FF to respond separately for each asserted FF trade
secret. FF further objects to this interrogatory as vague and ambiguous, including with
respect to the phrase "all means by which such alleged disclosure(s) occurred." FF
further objects to this request to the extent it is compound, complex, and contains
multiple subparts and on that basis responds only to the first subpart ("Separately, for
each alleged trade secret asserted by YOU to have been misappropriated by
EVELOZCITY, IDENTIFY all date(s) on which it was allegedly disclosed to
EVELOZCITY"). FF further objects to this interrogatory as premature to the extent it
calls for information that is subject to expert testimony. FF will provide expert
testimony in accordance with the Court's procedural schedule. FF further objects that
this interrogatory is premature, as discovery is ongoing. FF further objects to this
interrogatory to the extent it calls for confidential information, including trade secrets,
which FF will not disclose without an appropriate Protective Order in place.

Subject to and without waiving the foregoing General and Specific Objections,
FF responds as follows:

FF identifies, simply by way of example, dates on which the following
individuals could have disclosed the trade secrets identified in response to
Interrogatory No. 1 to EVelozcity:

**Irving (Bill) Strickland**: Strickland's employment relationship with FF
terminated on or about November 17, 2017, and on information and belief he is now
employed by EVelozcity.

**Christoph Kuttner**: Kuttner's employment relationship with FF terminated on December 1, 2017, and on information and belief he is now employed by EVelozcity.

**Sohel Merchant**: Merchant's employment relationship with FF terminated on December 1, 2017, and on information and belief he is now employed by EVelozcity.

**Alexi Charbonneau**: Charbonneau's employment relationship with FF terminated on December 1, 2017, and on information and belief he is now employed by EVelozcity.

**Nick Gronenthal**: Gronenthal's employment relationship with FF terminated on December 1, 2017 and on information and belief he is now employed by EVelozcity.

**Stefan Grubic**: Respondent Grubic's employment relationship with FF terminated on January 26, 2018 and on information and belief he is now employed by EVelozcity.

**Richard Kim**: Kim's employment relationship with FF terminated on December 1, 2017, and on information and belief he is now employed by EVelozcity.

**Matthew Lubbers**: Lubbers' employment relationship with FF terminated on January 9, 2018, and on information and belief he was employed by EVelozcity until recently.

**Charlie Spencer**: Respondent Spencer's employment relationship with FF terminated on December 5, 2017, and on information and belief he is now employed by EVelozcity.

**Ulrich Kranz**: Kranz's employment relationship with FF terminated on November 7, 2017, and on information and belief he is now employed by EVelozcity.

**Stefan Krause**: Krause's employment relationship with FF terminated on November 7, 2017, and on information and belief he is now employed by EVelozcity.

FF will produce and identify responsive documents pursuant to Federal Rule of Civil Procedure 33(d) once an appropriate Protective Order is in place.

Discovery is ongoing and FF reserves the right to supplement this response after further discovery and investigation into EVelozcity's misappropriation, acquisition, disclosure, and use of FF's trade secrets.

### 1.   EVelozcity's Reasons Why FF Should be Compelled to Provide a Complete Response to Interrogatory No. 2

FF has refused to provide critical factual information regarding how it contends that its alleged trade secrets came into EVelozcity's possession.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  In order for FF to prevail on its trade secret claim, it must show that EVelozcity acquired, used, or disclosed FF's alleged trade secrets. *See, e.g.*, FAC ¶ 9 (alleging that FF former employees have "copied and taken FF's trade secret and technical information and disclosed and used that information for the benefit of EVelozcity's business"); *id.* ¶ 10 (alleging "that EVelozcity has deliberately taken and publicly disclosed some of FF's confidential information"); *see also* 18 U.S.C. § 1839(5).  FF has put the means by which it believes its alleged trade secrets were disclosed to EVelozcity as well as the individuals it contends are responsible.  Therefore, FF may not withhold this information from discovery and should be ordered to provide a complete response to EVelozcity's Interrogatory No. 2.

### 2.   FF's Reason

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

### I.   FF's Response to Interrogatory No. 3

**INTERROGATORY NO. 3:**

Separately, for each ALLEGED TRADE SECRET asserted by YOU to have been misappropriated by EVELOZCITY, IDENTIFY the fact(s) and circumstance(s) surrounding its creation, development, and/or acquisition, including without limitation

the person(s) who created, developed, or acquired the alleged trade secret, how and
when the ALLEGED TRADE SECRET was created or acquired, any public or non-
trade secret information included within the ALLEGED TRADE SECRET, the
PERSON to whom the ALLEGED TRADE SECRET belongs (i.e., Faraday&Future,
Inc., or some other PERSON), and any PERSON(S) licensed or otherwise authorized
to acquire, possess, disclose, commercialize, or otherwise use the ALLEGED TRADE
SECRET.

**RESPONSE TO INTERROGATORY NO. 3:**

     FF incorporates by reference its General Objections. FF further objects to this
interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive,
including to the extent that it asks FF to respond separately for each asserted FF trade
secret. FF further objects to this interrogatory as vague and ambiguous, including with
respect to the phrases "the fact(s) and circumstance(s) surrounding its creation,
development, and/or acquisition" and "the person(s) who created, developed, or
acquired the alleged trade secret." FF further objects to this request to the extent it is
compound, complex, and contains multiple subparts and on that basis responds only to
the first subpart ("Separately, for each ALLEGED TRADE SECRET asserted by YOU
to have been misappropriated by EVELOZCITY, IDENTIFY the fact(s) and
circumstance(s) surrounding its creation, development, and/or acquisition, including
without limitation the person(s) who created, developed, or acquired the alleged trade
secret"), and offers to meet and confer regarding the counting of interrogatory
subparts before answering further subparts. FF further objects to this interrogatory as
premature to the extent it calls for information that is subject to expert testimony. FF
will provide expert testimony in accordance with the Court's procedural schedule. FF
further objects to this interrogatory to the extent it calls for confidential information,
including trade secrets, which FF will not disclose without an appropriate Protective
Order in place.

     Subject to and without waiving the foregoing General and Specific Objections,

FF responds as follows:

    FF will produce and identify responsive documents pursuant to Federal Rule of Civil Procedure 33(d) once an appropriate Protective Order is in place.

    Discovery is ongoing and FF reserves the right to supplement this response after further discovery and investigation into EVelozcity's misappropriation, disclosure, and use of FF's trade secrets.

## 1.   EVelozcity's Reasons Why FF Should be Compelled to Provide a Complete Response to Interrogatory No. 3

    FF has failed to provide information relating to how it acquired, created, and/or developed each alleged trade secret and who currently owns and/or licenses the alleged trade secret.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  In order to prevail on its trade secret claim, FF must show that each trade secret exists and is owned by FF.  *See, e.g.*, FAC ¶ 35 (alleging "FF owns and possesses certain confidential, proprietary, and trade secret information"); *see also* 18 U.S.C. § 1832 (a), § 1839(4).  Furthermore, FF has put the creation and development of its alleged trade secrets at issue by alleging, among other things, "FF has developed valuable trade secrets in proprietary variable platform architecture ('VPA'), battery technology, power-train, safety features, autonomous driving, internet of vehicles technology, and proprietary software and source code."  FAC ¶ 3.  Similarly, FF has alleged "[t]he host of trade secrets that FF has developed since 2014 would be highly valuable."  *Id.*; *see also* FAC ¶¶ 17–18 (allegations regarding investment of time and resources in development of electric vehicles).  FF's response that it will "produce and identify responsive documents pursuant to Federal Rule of Civil Procedure 33(d) once an appropriate Protective Order is in place" is insufficient because FF has neither produced a single document in this case nor provided a date certain for its document production.  FF's concerns regarding a protective order are not justified because EVelozcity provided its responsive input on a proposed

protective order on October 23rd (and repeatedly offered to meet and confer on October 29th, November 1st, and November 7th).  EVelozcity also offered to limit access to FF's response to outside counsel at Kirkland & Ellis until entry of the protective order.  FF has put the creation and development its technologies at issue by alleging trade secret misappropriation and therefore should be ordered to provide a complete response to EVelozcity's Interrogatory No. 3.

        **2.**      **FF's Reason**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

**J.**      **FF's Response to Interrogatory No. 4**

**INTERROGATORY NO. 4:**

Separately, for each alleged trade secret asserted by Plaintiff to have been misappropriated by EVELOZCITY, IDENTIFY each ACCUSED INSTRUMENTALITY, including a specific identification of where and how each alleged trade secret (including each component, element, or aspect thereof) is found within each ACCUSED INSTRUMENTALITY. Your response to this Interrogatory should be in the form of a chart or table organized by the ALLEGED TRADE SECRET.

**RESPONSE TO INTERROGATORY NO. 4:**

FF incorporates by reference its General Objections. FF further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks FF to respond separately for each asserted FF trade secret. FF further objects to this interrogatory as vague and ambiguous, including with respect to the phrase "a specific identification of where and how each alleged trade secret (including each component, element, or aspect thereof) is found." FF further objects to this request to the extent it is compound, complex, and contains multiple subparts and on that basis responds only to the first subpart ("Separately, for each

alleged trade secret asserted by Plaintiff to have been misappropriated by EVELOZCITY, IDENTIFY each ACCUSED INSTRUMENTALITY, including a specific identification of where . . . each alleged trade secret . . . is found within each ACCUSED INSTRUMENTALITY"). FF further objects to this interrogatory as premature to the extent it calls for information that is subject to expert testimony. FF will provide expert testimony in accordance with the Court's procedural schedule. FF further objects that this interrogatory is premature, as discovery is ongoing. FF reserves the right to supplement this response after further discovery and investigation into EVelozcity's misappropriation, disclosure, and use of FF's trade secrets. FF further objects to this interrogatory to the extent it calls for confidential information, including trade secrets, which FF will not disclose without an appropriate Protective Order in place.

### 1.   EVelozcity's Reasons Why FF Should be Compelled to Provide a Complete Response to Interrogatory No. 4

FF has refused to respond to Interrogatory No. 4, which seeks highly relevant factual information regarding how FF contends EVelozcity has misappropriated trade secrets in this case. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. Requiring a plaintiff to respond to factual contention interrogatories is "consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint." *See, e.g.*, *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997). FF has put this factual information at issue by broadly alleging that EVelozcity has misappropriated its trade secrets. For example, FF claims that "EVelozcity has deliberately taken and publicly disclosed some of FF's confidential information" (FAC ¶ 10) and that "EVelozcity misappropriated FF's confidential, proprietary and trade secret information," (FAC ¶ 39). Despite these allegations, FF refuses to explain where and how it contends EVelozcity has used its

alleged trade secrets.  FF may not withhold information that is relevant to the claims FF has made in this case and therefore FF should be ordered to provide a complete response to EVelozcity's Interrogatory No. 4.

        **2.**        **FF's Reason**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

        **K.**        **FF's Response to Interrogatory No. 5**

**INTERROGATORY NO. 5:**

Separately, for each alleged trade secret asserted by YOU to have been misappropriated by EVELOZCITY, state the amount and nature of damages or any other remedy to which YOU contend YOU are entitled and state the basis for that contention, including by identifying all DOCUMENTS and THINGS supporting YOUR contentions. YOUR response to this Interrogatory should be organized separately for each ALLEGED TRADE SECRET.

**RESPONSE TO INTERROGATORY NO. 5:**

FF incorporates by reference its General Objections. FF further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks FF to respond separately for each asserted FF trade secret. FF further objects to this request to the extent it is compound, complex, and contains multiple subparts and on that basis responds only to the first subpart ("Separately, for each alleged trade secret asserted by YOU to have been misappropriated by EVELOZCITY, state the amount and nature of damages or any other remedy to which YOU contend YOU are entitled"). FF further objects to this interrogatory as premature to the extent it calls for information that is subject to expert testimony. FF will provide expert testimony in accordance with the Court's procedural schedule. FF further objects to this interrogatory to the extent it calls for confidential

1   information, including trade secrets, which FF will not disclose without an appropriate

2   Protective Order in place.

3         Subject to and without waiving the foregoing General and Specific Objections,

4   FF responds as follows:

5         FF believes it has suffered and is suffering irreparable harm as a result of

6   EVelozcity's trade secret misappropriation. In addition, FF believes it is entitled to

7   damages for FF's trade secret misappropriation, in the form of unjust enrichment, lost

8   profits, and/or a reasonable royalty based potentially on the analytical approach in the

9   context of a hypothetical negotiation. FF further seeks a judgment that this case is

10  exceptional and an award of FF's costs and reasonable attorneys' fees. FF also seeks

11  an accounting of all sales and revenues, together with pre-judgment and post-

12  judgment interest. FF further seeks enhanced damages for EVelozcity's willful and

13  malicious conduct in misappropriating FF's trade secrets, punitive damages, and other

14  relief including but not limited to disgorgement of profits from unjust enrichment. FF

15  seeks any other relief available under applicable law. It would be premature to

16  estimate the amount of damages at this time.

17        In connection with these calculations, FF may rely on its estimates of future

18  profits, cash flows, and revenue; those estimates as attributable to the trade secrets at

19  issue; its assessments and projections regarding the electric vehicle market and other

20  relevant markets, competition therein, and its competitive position; FF's loss in

21  market share and corresponding financial loss, resulting from EVelozcity's use of FF's

22  trade secret technology to obtain a head start in the market; its investment in its

23  electric vehicle technology (in time, capital, research and development, engineering

24  costs, and other expenditures); the investments, funding, and/or contracts that

25  EVelozcity has received based on its misappropriation of FF's trade secrets; and

26  EVelozcity's assessments and projections regarding future profits, cash flows, and

27  revenue. FF also expects to rely on materials that are being or will be produced by

28  EVelozcity and third parties. Determination of damages is subject to ongoing

discovery, including financial information from EVelozcity that has not yet been produced, and expert analysis, including but not limited to the extent of Defendant's exploitation of FF's trade secrets and the value associated therewith.

Discovery is ongoing and FF reserves the right to supplement this response after further discovery and investigation into EVelozcity's misappropriation, disclosure, and use of FF's trade secrets.

### 1.   EVelozcity's Reasons Why FF Should be Compelled to Supplement Interrogatory No. 5

FF's refusal to provide a complete response to Interrogatory No. 5 is improper for numerous reasons.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  Courts in this judicial district routinely require plaintiffs to respond to damages interrogatories with the factual basis for their claims.  *See, e.g.*, *Cable & Computer Tech, Inc.*, 175 F.R.D. at 651–52, n.3 (ordering plaintiff to respond to damages contention interrogatory by describing "each component of damages" claimed by plaintiff "including, but not limited to, stating the dollar amount of each"); *Kraft Ams. LP v. Oldcastle Precast, Inc.*, 2013 WL 12125759, at *7–*8 (C.D. Cal. Dec. 18, 2013) (interrogatories asking "Plaintiff to state the facts on which it relied to support its claims as to breach of contract, misappropriation of trade secrets, and damages" were proper).  Here, FF has refused to provide the amount of its damages as well as the factual bases underlying its claim for damages in this case.  As the case law makes clear, FF may not assert entitlement to a wide array of damages "in the form of unjust enrichment, lost profits, and/or a reasonable royalty," (*see supra* Resp. to Interrog. No. 5), while simultaneously refusing to provide the factual information that would be required as part of its Rule 11 investigation.  *See, e.g.*, *Cable & Computer Tech*., 175 F.R.D. at 652 ("Requiring the answer to these factual contention interrogatories is consistent with Rule 11 . . . which requires that plaintiffs must have some factual basis for the allegations in their complaint.") (internal quotations and

alterations omitted).  FF also claims that its alleged trade secrets are "highly valuable."  FAC ¶¶ 3, 9, 17, 23, 35.  Presumably, FF should have a factual basis for making this allegation.  FF's failure to provide a complete response to this Interrogatory is further proven by the fact that its response is substantively identical to the boilerplate recitation of damages it provided in its initial disclosures nearly two months ago.  *Compare* Resp. to Interrog. No. 5, *with* Ex. G (Plaintiff Faraday&Future Inc.'s Initial Disclosures) at 9–10.  In view of the above, FF should be ordered to provide a complete response to EVelozcity's Interrogatory No. 5.

**2.     FF's Reason**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

## DISPUTED REQUESTS FOR PRODUCTION

**I.     TECHNICAL DOCUMENTATION**

**A.     FF's Response to Request for Production No. 16**

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS and THINGS referring or RELATING TO whether each inventor, creator, and/or originator of each ALLEGED TRADE SECRET himself or herself invented the ALLEGED TRADE SECRET.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it refers to "each inventor, creator, and/or originator" and to the extent it implies trade secrets must satisfy patentability criteria and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from

1   discovery. FF further objects to this request as duplicative of Defendant's other

2   requests.

3          Subject to and without waiving any of the foregoing objections, FF will meet

4   and confer regarding the relevance and scope of this request.

5          **1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 16**

6

7          FF has made no offer of production in response this Request, which seeks

8   documents relating to FF's inventorship and ownership of the alleged trade secrets.

9   As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to

10  meet and confer with FF about this issue but FF had nothing to offer in response.  In

11  order to prevail on its trade secret claim, FF must show that each trade secret exists

12  and is owned by FF.  *See, e.g.*, FAC ¶ 35 (alleging "FF owns and possesses certain

13  confidential, proprietary, and trade secret information"); *see also* 18 U.S.C. § 1832 (a),

14  § 1839(4).  Furthermore, FF has put the creation and development of its alleged trade

15  secrets at issue by alleging, among other things, that "FF has developed valuable trade

16  secrets in proprietary variable platform architecture ("VPA"), battery technology,

17  power-train, safety features, autonomous driving, internet of vehicles technology, and

18  proprietary software and source code."  FAC ¶ 3.  Similarly, FF has alleged that "[t]he

19  host of trade secrets that FF has developed since 2014 would be highly valuable."  *Id.*;

20  *see also* FAC ¶¶ 17–18 (allegations regarding investment of time and resources in

21  development of electric vehicles).  Because this Request seeks relevant documents

22  with reference to the allegations in FF's First Amended Complaint, FF should be

23  ordered to produce the full scope of documents sought by this Request.

24          **2.    FF's Reasons**

25  [Insert]

26          [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

27  *See* Yaghoubian Decl., ¶ 11.]

28

**B.**    **FF's Response to Request for Production No. 17**

**REQUEST FOR PRODUCTION NO. 17:**

All public and third-party DOCUMENTS, including research materials, YOU relied upon to develop each ALLEGED TRADE SECRET.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it refers to "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent that it requests documents or information in the public domain.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

**1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 17**

FF has made no offer of production in response this Request, which seeks documents relating to FF's inventorship and ownership of the alleged trade secrets. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  In order to prevail on its trade secret claim, FF must show that each trade secret exists and is owned by FF.  *See, e.g.*, FAC ¶ 35 (alleging "FF owns and possesses certain confidential, proprietary, and trade secret information"); *see also* 18 U.S.C. § 1832 (a), § 1839(4).  Furthermore, FF has put the creation and development of its alleged trade secrets at issue by alleging, among other things, that "FF has developed valuable trade secrets in proprietary variable platform architecture ("VPA"), battery technology, power-train, safety features, autonomous driving, internet of vehicles technology, and

1  proprietary software and source code."  FAC ¶ 3.  Similarly, FF has alleged that "[t]he

2  host of trade secrets that FF has developed since 2014 would be highly valuable."  *Id.*;

3  *see also* FAC ¶¶ 17–18 (allegations regarding investment of time and resources in

4  development of electric vehicles).  For example, FF may not withhold documents that

5  show that FF derived its purported trade secrets from public or third party sources,

6  such as Tesla, who in 2014 committed to making its intellectual property open source.

7  *See* Ex. H.[5]  Indeed, such documents would be highly probative to the claims and

8  defenses in this case, especially because FF lured employees away from Tesla to work

9  at FF.  *See* Ex. I.[6]  In light of the foregoing, FF should be compelled to produce the

10  full scope of documents sought by RFP No. 17.

11      **2.    FF's Reasons**

12  [Insert]

13      [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

14  *See* Yaghoubian Decl., ¶ 11.]

15      **C.    FF's Response to Request for Production No. 18**

16  **REQUEST FOR PRODUCTION NO. 18:**

17      All DOCUMENTS and THINGS referring or RELATING TO the making,

18  using, testing, or selling anywhere in the world of any product, system, method,

19  process, technology, component, and/or feature that embodies, contains, practices,

20  and/or uses any ALLEGED TRADE SECRET, including without limitation

21  DOCUMENTS that refer to or relate to the first use (whether public or not) of any

22  such trade secret.

23

24

25

───────────────

26  [5]  Musk, Elon, *All our Patent Are Belong [sic] To You*, TESLA.COM, *available at*
https://www.tesla.com/blog/all-our-patent-are-belong-you (June 12, 2014).

27  [6]  Thompson, Cadie, *These former Tesla employees defected to a new, top-secret
rival*, BUSINESS INSIDER, *available at* https://www.businessinsider.com/tesla-
28  employees-poached-by-faraday-2016-1 (Jan. 26, 2016).

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it refers to "any product, system, method, process, technology, component, and/or feature." FF further objects to the extent this request seeks documents related to non-public use of trade secrets, which are unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

      1.     **EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 18**

FF has made no offer of production in response this Request, which seeks documents relating to the making, selling, and use of products embodying FF's alleged trade secrets. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. FF has squarely put the technical details of its technologies at issue in this case, as made clear by the very first allegation in the FAC. *See, e.g.*, FAC ¶ 1 ("This is an action for misappropriation of trade secrets relating to FF's highly advance artificial intelligence ('AI') electric vehicle technologies."). This Request also seeks documents that are relevant to multiple elements for which FF carries the burden of proof in this case. For example, documents relating to the use of alleged trade secrets may be probative of whether FF "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). Similarly, documents relating to the sale of its alleged trade secrets may be relevant to FF's damages claims, including

whether FF has lost sales or profits.  *See supra* at Interrog. No. 5.  These types of documents would also be probative of whether FF can satisfy the statutory requirement that its trade secret is "related to a product or service used in or intended for use in interstate or foreign commerce."  18 U.S.C. § 1832 (a).  Because this Request seeks documents that are relevant to numerous issues in this case, FF should be ordered to produce the full scope of documents sought by RFP No. 18.

        **2.**      **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

        **D.**     **FF's Response to Request for Production No. 22**

**REQUEST FOR PRODUCTION NO. 22:**

      All DOCUMENTS referring to, RELATING TO, or constituting any commentary, including praise and criticisms, by YOUR employees and/or agents for any product, system, method, process, technology, component, and/or feature that embodies, contains, practices, and/or uses any ALLEGED TRADE SECRET.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

      FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action.  FF objects to the phrases and terms "referring to, relating to, or constituting," "commentary," and "praise and criticisms" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any

claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or that can more easily and efficiently be obtained from other sources. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1.   EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 22

FF has made no offer of production in response to RFP No. 22, which seeks documents relating to commentary, praise, and/or criticism of FF's technologies and purported trade secrets.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put these documents at issue by alleging it has valuable trade secrets that are entitled to protection.  For instance, FF alleges that "[t]he host of trade secrets that FF has developed since 2014 would be highly valuable to any competitor in the electric vehicle space."  FAC ¶ 3; *see also* FAC ¶ 32 ("the value of FF's trade secrets"); ¶ 35 ("FF also has highly valuable trade secrets in its battery technology, autonomous driving . . . and proprietary software and source code . . . .).  Commentary, praise, and criticism can support or refute FF's assertions that its technologies and alleged trade secrets are valuable.  For this reason as well, these documents may be highly relevant to FF's purported damages theories, including its claim for a reasonable royalty.  *See supra* Resp. to Interrog. No. 5.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 22.

### 2.   FF's Reasons
[Insert]

1   [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

2   *See* Yaghoubian Decl., ¶ 11.]

3   **E.     FF's Response to Request for Production No. 24**

4   **REQUEST FOR PRODUCTION NO. 24:**

5   All DOCUMENTS and THINGS referring to, RELATING TO, or constituting

6   any analysis by YOU and/or YOUR agents of any EVELOZCITY product, system,

7   method, process, technology, component and/or feature.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

9   FF incorporates by reference its General Objections as if fully set forth herein.

10   FF objects to this request as vague, ambiguous, and overbroad, including to the extent

11   that it seeks "all" documents and things and, therefore, requests documents unrelated

12   to the subject matter of this litigation or to any claim or defense asserted in this

13   Action. FF objects to the terms "product," "system," "method," "process,"

14   "technology," "component," and "feature" as used in this request as vague and

15   ambiguous. FF further objects to this request to the extent it assumes facts that do not

16   exist. FF further objects to this request to the extent that it seeks information that is

17   private, confidential, proprietary, privileged, or otherwise protected from discovery.

18   Subject to and without waiving any of the foregoing objections, FF will produce

19   any non-privileged documents pertaining to the Alleged Trade Secrets responsive to

20   this request as may be identified in a reasonable search.

21   **1.     EVelozcity's Reasons Why FF Should be Compelled to Produce
          Documents Responsive to RFP No. 24**

22

23   FF's offer of production is non-responsive to this Request, which seeks

24   documents relating to analysis by FF of ***EVelozcity's*** technologies.  As explained

25   above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and

26   confer with FF about this issue but FF had nothing to offer in response.  FF has put

27   these documents at issue by alleging that EVelozcity has misappropriated FF's trade

28   secrets.  *See generally* FAC.  For instance, statements by FF or its employees

regarding similarities or differences between FF and EVelozcity technologies may be
highly probative to whether EVelozcity has used FF's alleged trade secrets.  These
documents are also highly relevant to whether FF and EVelozcity are actually
competitors, as FF claims.  *See, e.g.*, FAC ¶ 8 (alleging EVelozcity is "a new
competing venture"); *id.* ¶ 9 (claiming use of FF's alleged "trade secrets to unfairly
compete with FF").  Because FF is claiming misappropriation by EVelozcity, it has
put similarities between FF and EVelozcity technologies at issue and should be
ordered to produce the full scope of documents sought by RFP No. 24.

         **2.**    **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.
*See* Yaghoubian Decl., ¶ 11.]

        **F.**    **FF's Response to Request for Production No. 37**

**REQUEST FOR PRODUCTION NO. 37:**

       All DOCUMENTS and THINGS RELATING TO the development and
marketing of the FF 91, including but not limited to, project roadmaps, development
timelines, engineering specifications, design specifications, laboratory notebooks,
engineering notes, testing documentation, business plans, marketing plans, white
papers, data sheets, brochures, prospectuses, advertisements, marketing materials, and
sales materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

       FF incorporates by reference its General Objections as if fully set forth herein.
FF objects to this request as vague, ambiguous, and overbroad, including to the extent
it seeks "all" documents and, therefore, requests documents unrelated to the subject
matter of this litigation or to any claim or defense asserted in this Action.  FF objects
to the phrases "development and marketing," "project roadmaps," "development
timelines," "testing documentation," "data sheets," and "prospectuses" as vague and
ambiguous. FF further objects to this request to the extent that it seeks information

that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will produce any non-privileged documents pertaining to the Alleged Trade Secrets responsive to this request as may be identified in a reasonable search.

**1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 37**

In response to RFP No. 37, FF is improperly withholding documents relating to the development and marketing of the FF 91, which FF characterizes as its "flagship vehicle."  FAC ¶ 5.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF's development and marketing of the FF 91 is directly related to the broad claims FF makes about that technology in its FAC.  For example, FF contends that it "has made significant progress on the FF-91," (FAC ¶ 4) and that "the proprietary technology and know-how that FF has developed to design, build and market the FF-91 will also be applied to other forthcoming FF vehicles," (*id.* ¶ 5). Similarly, FF alleges that it "has invested hundreds of thousands of work hours and approximately $1 billion in developing . . . its model FF-91 production vehicle," and in preparation for which "FF has developed highly valuable trade secret technologies and financial and business information."  *Id.* ¶ 17.  FF has alleged misappropriation of its trade secrets and claims that its FF 91 somehow embodies those alleged trade secrets.  Therefore, FF must produce documents relating to the development and marketing of the FF 91.

**2.    FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

1

**G.** **FF's Response to Request for Production No. 38**

2

**REQUEST FOR PRODUCTION NO. 38:**

3

One complete FF 91 for each version of the FF 91 (or similar electric vehicle) at

4

issue in this ACTION.

5

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

6

FF incorporates by reference its General Objections as if fully set forth herein.

7

FF objects to this request as vague, ambiguous, and overbroad. FF objects to the

8

phrases "one complete FF 91" and "each version of the FF 91 (or similar electric

9

vehicle)" as used in this request as vague and ambiguous. FF further objects to this

10

request to the extent that it seeks information that is private, confidential, proprietary,

11

privileged, or otherwise protected from discovery. FF further objects to this request to

12

the extent it seeks information that is not relevant to any claim or defense asserted in

13

this Action and seeks information not reasonably calculated to lead to the discovery of

14

admissible evidence. FF further objects to this request as duplicative of Defendant's

15

other requests.

16

Subject to and without waiving any of the foregoing objections, FF will meet

17

and confer concerning the relevance and scope of this request.

18

**1.** **EVelozcity's Reasons Why FF Should be Compelled to Produce
Documents Responsive to RFP No. 38**

19

20

FF has made no offer of production in response to this Request, which seeks

21

inspection of the FF 91 vehicles at issue in this case. As explained above in

22

EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with

23

FF about this issue but FF had nothing to offer in response. FF has put its FF 91 at

24

issue in this case, including as described above. For example, FF contends that it "has

25

made significant progress on the FF-91," (FAC ¶ 4) and that "the proprietary

26

technology and know-how that FF has developed to design, build and market the FF-

27

91 will also be applied to other forthcoming FF vehicles," (*id.* ¶ 5). Similarly, FF

28

alleges that it "has invested hundreds of thousands of work hours and approximately

$1 billion in developing . . . its model FF-91 production vehicle," and in preparation for which "FF has developed highly valuable trade secret technologies and financial and business information." *Id.* ¶ 17. FF has alleged misappropriation of its trade secrets and claims that its FF 91 somehow embodies those alleged trade secrets, and therefore, EVelozcity is entitled to perform a physical inspection of this technology. *See* Fed. R. Civ. P. 34 ("A party may serve on any other party a request within the scope of Rule 26(b) to . . . inspect . . . any designated tangible things.")

       **2.     FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

      **H.    FF's Response to Request for Production No. 39**

**REQUEST FOR PRODUCTION NO. 39:**

     One complete VPA2 chassis for each version of the FF 91 (or similar electric vehicle) at issue in this ACTION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

     FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad. FF objects to the phrases "one complete VPA2 chassis" and "each version of the FF 91 (or similar electric vehicle)" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request as duplicative of Defendant's other requests.

     Subject to and without waiving any of the foregoing objections, FF will meet and confer concerning the relevance and scope of this request.

**1.** **EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 39**

FF has made no offer of production in response to this Request, which seeks to inspect the relevant VPA2 (or "variable platform architecture 2") chassis that FF has put at issue in this case.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF's claims in this case rely heavily on its alleged "variable platform architecture" trade secrets.  For example, FF contends that its "trade secrets include, just by way of example, FF's proprietary variable platform architecture ("VPA") and VPA2 technology."  FAC ¶ 17.  FF goes on to claim its trade secrets comprise "information about FF's proprietary VPA system," (*id.* ¶ 25), and that its "VPA2 technology will greatly reduce the production costs and production time for electric vehicles that are built on FF's proprietary base" (*id.* ¶ 35).  Because this VPA technology forms the basis for FF's trade secret claims, EVelozcity is entitled to perform a physical inspection this technology.  *See* Fed. R. Civ. P. 34 ("A party may serve on any other party a request within the scope of Rule 26(b) to . . . inspect . . . any designated tangible things.")

**2.** **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

**I.** **FF's Response to Request for Production No. 40**

**REQUEST FOR PRODUCTION NO. 40:**

DOCUMENTS sufficient to show the assembly process for the FF 91, the VPA2 technology, and/or any other product, process, method, instrumentation, or thing YOU claim as a trade secret and/or confidential information in this ACTION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad. FF objects to the terms and phrases "assembly process," "product, process, method, instrumentation, or thing," and "confidential information" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer concerning the relevance and scope of this request.

     1.     **EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 40**

FF has made no offer of production in response to this Request, which seeks documents sufficient to show the assembly process for the technologies at issue in this case. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. FF relies heavily on the FF 91 and VPA technologies as the basis for its claims in this case, including as described above. *See, e.g.*, *supra* RFP Nos. 37–39; *see also, e.g.*, FAC ¶¶ 1, 4, 5, 17, 25. Specifically, FF claims that "VPA2 technology will greatly reduce the production costs and production time for electric vehicles that are built on FF's proprietary base." *See* FAC ¶ 35. FF has affirmatively injected the use of its technologies for vehicle assembly and production. Therefore, EVelozcity is entitled to discovery relating to how FF assembles these technologies.

     2.     **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

## II.   EFFORTS TO MAINTAIN SECRECY

### A.   **FF's Response to Request for Production No. 1**

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS and THINGS RELATED TO YOUR presence at the 2017 Las Vegas Consumer Electronics Show, including but not limited to any presentations, photographs, videos, articles, press events, VIP events, meetings, invoices, and/or payments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks "all" documents related to FF's presence at the Consumer Electronics Show and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "presence at the 2017 Las Vegas Consumer Electronics Show," "presentations," "press events," "VIP events," and "meetings" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or in the public domain.

Subject to and without waiving any of the foregoing objections, FF will produce responsive, non-privileged documents sufficient to show any official public presentation by FF at the January 2017 Consumer Electronics Show.

### 1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 1

This Request seeks highly relevant material regarding FF's public displays of its technologies that may eviscerate FF's alleged trade secrets. *See* 18 U.S.C. § 1839(3)(A) (requiring "reasonable measures to keep such information secret"). As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. FF's attempt to limit its document production to "documents sufficient to show any official public presentations by FF at the January 2017 Consumer Electronics Show" impermissibly excludes photographs, videos, and communications from the event that publicly disclose FF's alleged trade secrets. All of these impermissibly excluded documents would tend to disprove the existence of FF's alleged trade secrets. Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 1.

### 2.    FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

## B.    FF's Response to Request for Production No. 2

REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS and THINGS RELATED TO YOUR presence at the 2018 Las Vegas Consumer Electronics Show, including but not limited to any presentations, photographs, videos, articles, press events, VIP events, meetings, invoices and/or payments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks "all" documents related to FF's presence at the Consumer Electronics Show and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "presence at the 2018 Las Vegas Consumer Electronics Show," "presentations," "press events," "VIP events," and "meetings" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or in the public domain.

Subject to and without waiving any of the foregoing objections, FF will produce responsive, non-privileged documents sufficient to show any official public presentation by FF at the January 2018 Consumer Electronics Show.

       **1.**    **EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 2**

This Request seeks highly relevant material regarding FF's very public displays of its technologies that may eviscerate FF's alleged trade secrets. *See* 18 U.S.C. § 1839(3)(A) (requiring "reasonable measures to keep such information secret"). As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. FF's attempt to limit its document production to "documents sufficient to show any official

public presentations by FF at the January 2018 Consumer Electronics Show" impermissibly excludes photographs, videos, and communications from the event that publicly disclose FF's alleged trade secrets. All of these impermissibly excluded documents would tend to disprove the existence of FF's alleged trade secrets. Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 2.

### 2. FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

### C. FF's Response to Request for Production No. 4

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS referring or RELATING TO YOUR efforts to keep secret and/or confidential the ALLEGED TRADE SECRETS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it seeks "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrase "efforts to keep secret and/or confidential" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will produce documents sufficient to show FF's efforts to keep the Alleged Trade Secrets secret and/or confidential.

### 1.   EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 4

In order to prove that it has a protectable trade secret, FF must show that it "has taken reasonable measures to keep such information secret."  *See* 18 U.S.C. § 1839(3)(A).  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF's attempt to limit its document production to "documents sufficient to show FF's efforts" impermissibly excludes FF's lapses and failures to keep the material secret, all of which are highly probative of whether FF has a protectable trade secret.  Simply put, FF may not choose to produce documents that support its claims while simultaneously refusing to produce the documents that refute those same claims.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 4.

### 2.   FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

### D.   FF's Response to Request for Production No. 10

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS and THINGS referring or RELATING TO any disclosure during the RELEVANT TIME PERIOD to any PERSON outside of FF of any of YOUR ALLEGED TRADE SECRETS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent

that it seeks "all" documents and things and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "referring or relating to any disclosure" and "outside of FF" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or that can more easily and efficiently be obtained from other sources.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 10

FF has made no offer of production in response to RFP No. 10, which seeks documents relating to a fundamental element of FF's trade secret claim.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  In order to prove that it has a protectable trade secret, FF must show that it "has taken reasonable measures to keep such information secret."  *See* 18 U.S.C. § 1839(3)(A).  FF's refusal to produce responsive documents prejudices EVelozcity's ability to assess whether FF has a protectable trade secret and to develop its defenses in this case.  As with RFP No. 4, FF may not limit its document production to "documents sufficient to show FF's efforts," as this impermissibly excludes FF's failures to keep the material secret, all of which are highly probative of whether FF has a protectable trade secret.  Simply put, FF must produce documents relating to its protection—or lack thereof—of the alleged trade secrets.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 10.

2.      **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

E.      **FF's Response to Request for Production No. 20**

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS and THINGS RELATING TO any FF marketing events, including without limitation, photographs, images, videos, advertisements, social media, invitations, lists of attendees, agendas, pamphlets, brochures, and any confidentiality or non-disclosure agreements signed by attendees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it seeks "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "FF marketing events," "social media," "invitations," and "lists of attendees" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, in the public domain, or that can more easily and efficiently be obtained from other sources. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will produce any non-privileged documents sufficient to show any official marketing and promotional materials pertaining to the Alleged Trade Secrets as may be identified in a reasonable search.

1          **1.     EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 20**

2

3          In response to this Request, FF has improperly limited its offer of production to

4   only documents sufficient to show "official marketing and promotional materials

5   pertaining to the Alleged Trade Secrets."  As explained above in EVelozcity's

6   Introductory Statement, EVelozcity attempted to meet and confer with FF about this

7   issue but FF had nothing to offer in response.  This Request seeks documents that are

8   relevant to multiple elements that FF carries the burden of establishing.  For example,

9   FF contends it is entitled to recover damages based on "lost profits" and a

10  disgorgement theory.  *See supra* Resp. to Interrog. No. 5.  Documents relating to FF's

11  marketing events are also relevant to whether FF "has taken reasonable measures to

12  keep such information secret."  18 U.S.C. § 1839(3)(A).  These types of marketing

13  documents may also reveal the features and technologies that FF considered to have

14  value (or lack value), and are thus probative of whether the purported trade secrets

15  have "independent economic value."  18 U.S.C. § 1839(3)(B).  But FF's offer of

16  production is deficient for multiple reasons.

17          As a threshold matter, FF has failed to explain what categories of marketing and

18  promotional documents it will be withholding because FF does not deem them

19  "official."  Notwithstanding this refusal, it is clear that FF intends to withhold

20  categories of highly relevant documents on the basis that they are not "official,"

21  including ad hoc marketing and promotional efforts, informal communications with

22  potential customers, and documents relating to public disclosures of the alleged trade

23  secrets.  FF also only intends to produce documents ***sufficient to show*** these "official"

24  marketing and promotional materials, to the exclusion of additional documents that FF

25  has put at issue by alleging misappropriation in this case.  FF claims it has kept its

26  alleged trade secrets out of public view and that it is entitled to recover its profits and

27  EVelozcity's profits in this case.  Therefore, FF has plainly put its marketing and

28

promotional efforts at issue in this case and should be ordered to produce the full scope of documents sought by RFP No. 20.

        **2.**     **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

      **F.**    **FF's Response to Request for Production No. 31**

**REQUEST FOR PRODUCTION NO. 31:**

DOCUMENTS and THINGS sufficient to show the identities of all non employee visitors to FF's offices in Gardena, California, including but not limited to sign-in sheets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent it seeks identities of "all" non-employee visitors, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrase "non-employee visitors" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 31

FF has made no offer of production for this Request, which seeks the identities of non-employee visitors to its offices.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  In order to prevail on its trade secret claim, FF must prove that it "has taken reasonable measures to keep such information secret."  18 U.S.C. § 1839(3)(A).  FF has alleged that "access to FF's offices is strictly controlled and monitored."  FAC ¶ 18.  FF goes on to allege that "[v]isitors must have pre-authorization even to enter the company's parking lot" and that they "must then sign confidentiality agreements and submit to being photographed in order to enter FF's offices."  *Id.*  Simply put, FF has affirmatively put access to its offices at issue in filing its claims in this case and may not withhold discovery relating to non-employee visitors who may have had access to its alleged trade secrets.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 31.

### 2. FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

## III. FINANCIAL DOCUMENTS

### A. FF's Response to Request for Production No. 5

__REQUEST FOR PRODUCTION NO. 5:__

All DOCUMENTS referring to, RELATING TO, or constituting any offers to sell and/or license the ALLEGED TRADE SECRETS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrase "offers to sell and/or license" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

        **1.      EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 5**

FF has made no offer of production in response to RFP No. 5, which seeks documents relating to offers to sell or license the alleged trade secrets. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. These documents are highly relevant to issues of liability and damages. *See, e.g.*, 18 U.S.C. § 1839(3)(B) (requiring "independent economic value"); *In re MSTG, Inc.*, 675 F.3d 1337, 1339 (Fed. Cir. 2012) ("License agreements can be pertinent to the calculation of a reasonable royalty."). For example, FF claims it is entitled to a variety of damages in this case, including reasonable royalty, lost profits, and disgorgement. *See supra* Resp. to Interrog. No. 5. Documents responsive to this Request may shed light

on FF's damages theories, including the determination of a reasonable royalty in this case.  Similarly, documents relating to offers to sell or license the alleged trade secrets can show the value, if any, ascribed to the alleged trade secrets by the industry.  FF has put documents relating to offers to sell or license the alleged trade secrets at issue in this case and therefore FF should be ordered to produce the full scope of documents sought by RFP No. 5.

> **2.**     **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

**B.**     **FF's Response to Request for Production No. 8**

**REQUEST FOR PRODUCTION NO. 8:**

Copies of all financial statements, including but not limited to P&L statements, balance sheets, income statements, operating statements, cash reports, and bank statements, prepared by FF or on FF's behalf during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks "copies of all" financial statements and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "financial statements," "P&L statements," "operating statements," "cash reports," and "prepared by FF or on FF's behalf" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to

this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 8

FF has made no offer of production in response to RFP No. 8, which seeks highly relevant financial information regarding FF's claims in this case.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put this financial information at issue by broadly claiming that it is entitled to damages "in the form of unjust enrichment, lost profits, and/or a reasonable royalty."  *See supra* Resp. to Interrog. No. 5.  Similarly, FF states it "may rely on its estimates of future profits, cash flows, and revenue," and "FF's loss in market share and corresponding financial loss."  *Id.*  By its own statements, FF intends to rely on the same types of financial information it has failed to produce, including data relating to profits, revenue, and cash flow.  FF may not make broad damages claims and simultaneously deny EVelozcity access to the financial information that may support or refute those claims.  FF should be ordered to produce the full scope of documents responsive to RFP No. 8.

### 2. FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

C.     **FF's Response to Request for Production No. 23**

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and THINGS that evidence, support, or contradict the value of any ALLEGED TRADE SECRET.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it seeks "all" documents and things and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the terms "evidence, support, or contradict," and "value" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

1.     **EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 23**

FF has made no offer of production in response to RFP No. 23, which seeks documents supporting or refuting the value of FF's alleged trade secrets. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. Documents responsive to this Request may be relevant to FF's damages claims, which include a claim for a reasonable royalty. *In re MSTG, Inc.*, 675 F.3d at 1339 ("License agreements can be pertinent to the calculation of a reasonable royalty."). These documents are also likely relevant to a key element that FF must prove to succeed in this case, namely, that its alleged trade secrets have "independent economic value"

from not being generally known.  18 U.S.C. § 1839(3)(B).  Indeed, FF has directly put its value at issue in this case.  For example, FF claims that it "has developed valuable trade secrets in proprietary variable platform architecture ("VPA"), battery technology, power-train, safety features, autonomous driving, internet of vehicles technology, and proprietary software and source code."  FAC ¶ 3.  FF also alleges that "[t]he host of trade secrets that FF has developed since 2014 would be highly valuable."  *Id.*; *see also id.* ¶¶ 17–18 (allegations regarding investment of time and resources in development of electric vehicles).  Moreover, FF contends that the alleged harm "will destroy the value of FF's trade secrets."  *Id.* ¶ 32.  FF has claimed its alleged trade secrets have value and that this value is in danger.  FF may not hide the actual value— if any—by refusing to produce relevant documents in this action.  Therefore, FF should be ordered to produce the full scope of documents sought by RFP No. 23.

> **2.     FF's Reasons**
>
> [Insert]
>
> [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

**D.     FF's Response to Request for Production No. 25**

**REQUEST FOR PRODUCTION NO. 25:**

YOUR annual financial reports from 2014 until the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to the phrase "financial reports" as used in this request as vague and ambiguous. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

1

### 1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 25

2

3      FF has made no offer of production in response to RFP No. 25, which seeks

4    highly relevant financial information regarding FF's claims in this case.  As explained

5    above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and

6    confer with FF about this issue but FF had nothing to offer in response.  FF has put

7    this financial information at issue by broadly claiming that it is entitled to damages "in

8    the form of unjust enrichment, lost profits, and/or a reasonable royalty."  *See supra*

9    Resp. to Interrog. No. 5.  Similarly, FF states it "may rely on its estimates of future

10   profits, cash flows, and revenue," and "FF's loss in market share and corresponding

11   financial loss."  *Id.*  By its own statements, FF intends to rely on the same types of

12   financial information it has failed to produce, including data relating to profits,

13   revenue, and cash flow.  FF may not make broad damages claims and simultaneously

14   deny EVelozcity access to the financial information that may support or refute those

15   claims.  Accordingly, FF should be ordered to produce the full scope of documents

16   sought by RFP No. 25.

17      ### 2.    FF's Reasons

18   [Insert]

19   [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

20   *See* Yaghoubian Decl., ¶ 11.]

21      ### E.    FF's Response to Request for Production No. 35

22   **REQUEST FOR PRODUCTION NO. 35:**

23      DOCUMENTS sufficient to show YOUR costs for developing each ALLEGED

24   TRADE SECRET.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

26      FF incorporates by reference its General Objections as if fully set forth herein.

27   FF objects to the phrase "costs for developing" as vague and ambiguous.  FF further

28   objects to this request to the extent that it seeks information that is private,

confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 35

FF has made no offer of production in response to this Request, which seeks documents sufficient to show FF's costs for developing each of its alleged trade secrets.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put its development costs at issue in this case by claiming damages "in the form of unjust enrichment" and as measured by "its investment in its electric vehicle technology (in time, capital, research and development, engineering costs, and other expenditures)."  *See supra* Resp. to Interrog. No. 5.  FF has also put its development costs at issue by alleging in its FAC that "FF has invested hundreds of thousands of work hours and approximately $1 billion in developing the next generation of AI electric vehicles."  FAC ¶ 1.  FF goes on to claim that "[o]btaining some or all of FF's technologies would allow a competitor to unfairly capitalize on FF's tremendous amount of capital investment, allowing the competitor to bypass the expenditure of literally years of development time and approximately $1 billion in research and development costs."  *Id.* ¶ 3.  Moreover, in its FAC, FF attempts to rely on the purported value of the alleged trade secrets it has developed.  *See, e.g.*, *id.* ¶¶ 3, 9, 17, 23, 35, 38.  The record is clear that FF intends to rely extensively on its purported development costs.  Accordingly, FF must produce the full scope of documents responsive to RFP No. 35.

### 2. FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

### F. FF's Response to Request for Production No. 44

**<u>REQUEST FOR PRODUCTION NO. 44:</u>**

All DOCUMENTS referring to, RELATING TO, or reflecting the value of FF, including any valuations performed by or on behalf of FF.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 44:</u>**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it seeks "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "reflecting the value" and "valuations performed by or on behalf of FF" as used in this request as vague and ambiguous. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer concerning the relevance and scope of this request.

1          **1.    EVelozcity's Reasons Why FF Should be Compelled to Produce**
2          **Documents Responsive to RFP No. 44**

3          FF has made no offer of production in response to this Request, which seeks

4    documents relating to FF's value.  As explained above in EVelozcity's Introductory

5    Statement, EVelozcity attempted to meet and confer with FF about this issue but FF

6    had nothing to offer in response.  Like RFP No. 23, documents responsive to this

7    Request may be relevant to FF's damages claims, which include a claim for a

8    reasonable royalty.  *In re MSTG, Inc.*, 675 F.3d at 1339 ("License agreements can be

9    pertinent to the calculation of a reasonable royalty.").  Indeed, FF has directly put its

10   value at issue in this case.  For example, FF claims that it "has developed valuable

11   trade secrets in proprietary variable platform architecture ("VPA"), battery technology,

12   power-train, safety features, autonomous driving, internet of vehicles technology, and

13   proprietary software and source code."  FAC ¶ 3.  FF also alleges that "[t]he host of

14   trade secrets that FF has developed since 2014 would be highly valuable."  *Id.*; *see*

15   *also id.* ¶¶ 17–18 (allegations regarding investment of time and resources in

16   development of electric vehicles).  Moreover, FF contends that the alleged harm "will

17   destroy the value of FF's trade secrets."  *Id.* ¶ 32.  As above, if FF claims that it owns

18   valuable intellectual property, FF may not hide the actual value—if any—by refusing

19   to produce relevant documents in this action.  Accordingly, FF should be ordered to

20   produce the full scope of documents sought by RFP No. 44.

21         **2.    FF's Reasons**

22   [Insert]

23         [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

24   *See* Yaghoubian Decl., ¶ 11.]

25   **G.    FF's Response to Request for Production No. 45**

26

27

28

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS referring to, RELATING TO, or reflecting the value of any FF intellectual property, including patents and trade secrets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, and overbroad, including to the extent that it seeks "all" documents and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "reflecting the value" and "FF intellectual property" as used in this request as vague and ambiguous. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer concerning the relevance and scope of this request.

> **1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 45**

FF has made no offer of production in response to this Request, which seeks documents relating to FF's value. As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response. Like RFP No. 23, documents responsive to this Request may be relevant to FF's damages claims, which include a claim for a reasonable royalty. *In re MSTG, Inc.*, 675 F.3d at 1339 ("License agreements can be

pertinent to the calculation of a reasonable royalty.").  FF has directly put the value of its intellectual property at issue in this case.  For example, FF claims that it "has developed valuable trade secrets in proprietary variable platform architecture ("VPA"), battery technology, power-train, safety features, autonomous driving, internet of vehicles technology, and proprietary software and source code."  FAC ¶ 3. FF also alleges that "[t]he host of trade secrets that FF has developed since 2014 would be highly valuable."  *Id.*; *see also id.* ¶¶ 17–18 (allegations regarding investment of time and resources in development of electric vehicles).  Moreover, FF contends that the alleged harm "will destroy the value of FF's trade secrets."  *Id.* ¶ 32. As above, if FF claims it owns valuable intellectual property, FF may not hide the actual value—if any—by refusing to produce relevant documents in this action. Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 45.

> **2.    FF's Reasons**
>
> [Insert]
>
> [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

## IV.    INVESTOR AND SUPPLIER DOCUMENTS

### A.    **FF's Response to Request for Production No. 6**

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS sufficient to identify the identity of each FF investor, as well as the amount, nature, terms, and timing of such investment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks documents for "each FF investor" and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in

this Action. FF objects to the terms "investor," "nature," "terms," and "timing" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or in the public domain. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 6

FF has made no offer of production in response to RFP No. 6, which seeks documents sufficient to show FF's investors, as well as the amount, terms, and nature of investments.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put details of its investments at issue in this case by alleging, among other things, that "Krause and Kranz reported to numerous FF employees that . . . no investors would be willing to invest in FF," (FAC ¶ 19), and that "Krause and Kranz are funding EVelozcity by soliciting investments from the same investors that they met with in the fall of 2017 when working for FF" (FAC ¶ 22).  The details of FF's relationship with its investors is further relevant to the existence of FF's alleged trade secrets, because FF claims that it requires its investors "to sign confidentiality agreements before any confidential or proprietary trade secret

information is closed to them."  FAC ¶ 18.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 6.

        **2.**     **FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

     **B.**     **FF's Response to Request for Production No. 7**

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS sufficient to identify the identity of each prospective FF investor that FF contacted, as well as the amount, nature, terms, and timing of such prospective investment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks documents for "each prospective FF investor" and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF objects to the phrases "prospective FF investor," "contacted," and "amount, nature, terms, and timing of such prospective investment" as used in this request as vague and ambiguous. FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's

1    possession, custody, or control. FF further objects to this request as duplicative of

2    Defendant's other requests.

3            Subject to and without waiving any of the foregoing objections, FF will meet

4    and confer regarding the relevance and scope of this request.

5            **1.    EVelozcity's Reasons Why FF Should be Compelled to Produce
              Documents Responsive to RFP No. 7**

6

7            FF has made no offer of production in response to RFP No. 7, which seeks

8    documents sufficient to show FF's prospective investors, as well as the amount, terms,

9    nature, and timing of prospective investments.  As explained above in EVelozcity's

10   Introductory Statement, EVelozcity attempted to meet and confer with FF about this

11   issue but FF had nothing to offer in response.  FF has put details of its investments at

12   issue in this case by alleging, among other things, that "Krause and Kranz reported to

13   numerous FF employees that . . . no investors would be willing to invest in FF,"

14   (FAC ¶ 19), and that "Krause and Kranz are funding EVelozcity by soliciting

15   investments from the same investors that they met with in the fall of 2017 when

16   working for FF" (FAC ¶ 22).  The details of FF's relationship with its investors is

17   further relevant to the existence of FF's alleged trade secrets, because FF claims that it

18   requires its investors "to sign confidentiality agreements before any confidential or

19   proprietary trade secret information is closed to them."  FAC ¶ 18.  Accordingly, FF

20   should be ordered to produce the full scope of documents sought by RFP No. 7.

21           **2.    FF's Reasons**

22   [Insert]

23           [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

24   *See* Yaghoubian Decl., ¶ 11.]

25           **C.    FF's Response to Request for Production No. 28**

26   **REQUEST FOR PRODUCTION NO. 28:**

27           DOCUMENTS and THINGS sufficient to identify YOUR SUPPLIERS from

28   2014 through the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or that can more easily and efficiently be obtained from other sources. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

**1.     EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 28**

FF has made no offer of production in response to this Request, which seeks documents sufficient to show the identify of FF's suppliers.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put this information at issue by alleging, among other things, that "FF also has valuable trade secrets in its financial and business information including, but not limited to, confidential information regarding FF's costs, materials, vendors, and business plans." FAC ¶ 3; *see also id.* ¶¶ 17, 18, 25 ("vendor information"), 35 ("vendor lists"). Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 28.

**2.     FF's Reasons**



1  [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

2  *See* Yaghoubian Decl., ¶ 11.]

3       **D.    FF's Response to Request for Production No. 29**

4  **REQUEST FOR PRODUCTION NO. 29:**

5       All of YOUR Communications with SUPPLIERS.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

7       FF incorporates by reference its General Objections as if fully set forth herein.

8  FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly

9  burdensome, and not proportional to the needs of the case, including to the extent that

10 it seeks "all" communications and, therefore, requests documents unrelated to the

11 subject matter of this litigation or to any claim or defense asserted in this Action. FF

12 further objects to this request to the extent it seeks information from a timeframe not

13 relevant to this Action. FF further objects to this request to the extent that it seeks

14 information that is private, confidential, proprietary, privileged, or otherwise protected

15 from discovery. FF further objects to this request to the extent it seeks information that

16 is not relevant to any claim or defense asserted in this Action and seeks information

17 not reasonably calculated to lead to the discovery of admissible evidence. FF further

18 objects to this request to the extent that it requests documents or information not

19 within FF's possession, custody, or control, or that can more easily and efficiently be

20 obtained from other sources. FF further objects to this request as duplicative of

21 Defendant's other requests.

22           **1.    EVelozcity's Reasons Why FF Should be Compelled to Produce
23                   Documents Responsive to RFP No. 29**

24       FF has made no offer of production for this Request, which seeks

25 communications between FF and its suppliers.  As explained above in EVelozcity's

26 Introductory Statement, EVelozcity attempted to meet and confer with FF about this

27 issue but FF had nothing to offer in response.  FF has put communications with its

28 suppliers at issue by alleging, among other things, that "FF also has valuable trade

secrets in its financial and business information including, but not limited to, confidential information regarding FF's costs, materials, vendors, and business plans." FAC ¶ 3; *see also id.* ¶¶ 17, 18, 25 ("vendor information"), 35 ("vendor lists"). These communications may contain information about the nature of FF's relationship with its vendors and suppliers, including the value, duration, and secrecy of that relationship. FF may not be allowed to withhold discovery of documents that relate directly to its purported trade secrets. Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 29.

> **2.    FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

> **E.    FF's Response to Request for Production No. 32**

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS and THINGS, including presentations, provided to current investors during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent it seeks "all" documents and things and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further

objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or that can more easily and efficiently be obtained from other sources. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

### 1. EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 32

FF has made no offer of production in response to this Request, which seeks documents provided to FF's investors.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put details of its investments at issue in this case by alleging, among other things, that "Krause and Kranz reported to numerous FF employees that . . . no investors would be willing to invest in FF," (FAC ¶ 19), and that "Krause and Kranz are funding EVelozcity by soliciting investments from the same investors that they met with in the fall of 2017 when working for FF" (FAC ¶ 22).  The details of FF's relationship with its investors is further relevant to the existence of FF's alleged trade secrets, because FF claims that it requires its investors "to sign confidentiality agreements before any confidential or proprietary trade secret information is closed to them."  FAC ¶ 18.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 32.

### 2. FF's Reasons

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

### F. FF's Response to Request for Production No. 33

__REQUEST FOR PRODUCTION NO. 33:__

All Communications with investors from the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, irrelevant, unduly burdensome, and not proportional to the needs of the case, including to the extent it seeks "all" communications and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action.  FF further objects to this request to the extent it assumes facts that do not exist. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request to the extent that it requests documents or information not within FF's possession, custody, or control, or that can more easily and efficiently be obtained from other sources. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiving any of the foregoing objections, FF will meet and confer regarding the relevance and scope of this request.

> **1.      EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 33**

FF has made no offer of production in response to this Request, which seeks communications between FF and its investors.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF has put details of its investments at issue in this case by alleging, among other things, that "Krause and Kranz reported to numerous FF employees that . . . no investors would be willing to invest in FF," (FAC ¶ 19), and that "Krause and Kranz are funding EVelozcity by soliciting

1  investments from the same investors that they met with in the fall of 2017 when

2  working for FF" (FAC ¶ 22).  The details of FF's relationship with its investors is

3  further relevant to the existence of FF's alleged trade secrets, because FF claims that it

4  requires its investors "to sign confidentiality agreements before any confidential or

5  proprietary trade secret information is closed to them."  FAC ¶ 18.  Accordingly, FF

6  should be ordered to produce the full scope of documents sought by RFP No. 33.

7          **2.      FF's Reasons**

8  [Insert]

9  [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

10  *See* Yaghoubian Decl., ¶ 11.]

11  **V.     CORPORATE DOCUMENTS**

12     **A.     FF's Response to Request for Production No. 36**

13  **REQUEST FOR PRODUCTION NO. 36:**

14          DOCUMENTS sufficient to show FF's organizational structure during the

15  RELEVANT TIME PERIOD.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

17          FF incorporates by reference its General Objections as if fully set forth herein.

18  FF objects to this request as vague, ambiguous, overbroad, and irrelevant. FF objects

19  to the phrase "organizational structure" as vague and ambiguous. FF further objects to

20  this request to the extent that it seeks information that is private, confidential,

21  proprietary, privileged, or otherwise protected from discovery. FF further objects to

22  this request to the extent it seeks information that is not relevant to any claim or

23  defense asserted in this Action and seeks information not reasonably calculated to lead

24  to the discovery of admissible evidence. FF further objects to this request to the extent

25  that it requests documents or information not within FF's possession, custody, or

26  control.

27          Subject to and without waiving any of the foregoing objections, FF will meet

28  and confer concerning the relevance and scope of this request.

**Exhibit J**
**Page 157**
74

**1.    EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 36**

FF has made no offer of production in response to this Request, which seeks documents sufficient to show its organizational structure.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF's relevance objection is entirely without merit because FF has put its organizational structure at issue in this case.  For example, FF's FAC purports to rely expressly on allegations relating to Stefan Krause and Ulrich Kranz's roles as CFO and CTO, respectively.  *See, e.g.*, FAC ¶¶ 6–7.  The FAC goes on to allege that "CFO Krause and CTO Kranz demanded that FF's acting CEO Jia Yueting ("YT") step down and hand over operational control of the company to them."  *Id.* ¶ 8.  FF's allegations also purport to rely on the alleged conduct of "former FF executives" and "former FF employees (many of whom were relatively senior)."  *Id.* ¶ 9.  FF has injected its corporate structure into the heart of this dispute and must produce documents sufficient to show that structure.  Moreover, EVelozcity must be permitted to take discovery regarding the identities and roles of the witnesses at FF with relevant knowledge regarding FF's claims.  Accordingly, FF should be ordered to produce the full scope of documents sought by RFP No. 36.

**2.    FF's Reasons**

[Insert]

[FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2. *See* Yaghoubian Decl., ¶ 11.]

**B.    FF's Response to Request for Production No. 42**

**REQUEST FOR PRODUCTION NO. 42:**

One complete set of all board of directors meeting minutes for FF from inception to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

FF incorporates by reference its General Objections as if fully set forth herein. FF objects to this request as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks a complete set of "all" meeting minutes and, therefore, requests documents unrelated to the subject matter of this litigation or to any claim or defense asserted in this Action. FF further objects to this request to the extent it seeks information from a timeframe not relevant to this Action. FF further objects to this request to the extent that it seeks information that is private, confidential, proprietary, privileged, or otherwise protected from discovery. FF further objects to this request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. FF further objects to this request as duplicative of Defendant's other requests.

Subject to and without waiting any of the foregoing, FF will meet and confer regarding the relevance and scope of this request.

> **1.      EVelozcity's Reasons Why FF Should be Compelled to Produce Documents Responsive to RFP No. 42**

FF has made no offer of production in response to this Request, which seeks production of FF's board minutes.  As explained above in EVelozcity's Introductory Statement, EVelozcity attempted to meet and confer with FF about this issue but FF had nothing to offer in response.  FF's board and its decisions are at issue in this case. For example, FF's FAC alleges that "CFO Krause and CTO Kranz demanded that FF's acting CEO Jia Yueting ("YT") step down and hand over operational control of the company to them."  FAC ¶ 8.  The FAC goes on to allege that "FF did secure additional financing in the fall without YT stepping down," (*id.*) and that "Krause and Kranz's statements that FF could not obtain funding unless YT gave up control of the company proved to be false," (*id.* ¶ 20).  These decisions about funding and corporate control had to go through FF's board of directors.  Because FF has injected its board

1  of directors' decisions into this case, it must provide this relevant discovery.

2  Accordingly, FF should be ordered to produce the full scope of documents sought by

3  RFP No. 42.

4              **2.    FF's Reasons**

5     [Insert]

6        [FF did not provide its portion of the stipulation in accordance with L.R. 37-2.2.

7  *See* Yaghoubian Decl., ¶ 11.]

8   DATED:  December 3, 2018                     Respectfully submitted,

9                                               KIRKLAND & ELLIS LLP

10                              By:    /s/ *Diana Torres*
                                      Mark HolscherDiana Torres
11                                    Attorneys for Defendant
                                      EVelozcity Inc.

12
                                      QUINN EMANUEL URQUHART &
13                                    SULLIVAN, LLP

14                              By:    /s/
                                      [INSERT]
15                                    Attorneys for Plaintiff
                                      Faraday&Future Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28